Armand J. Howell, Bar Number 10029
Benjamin J. Mann, Bar Number 12588
HALLIDAY, WATKINS & MANN, P.C.
Attorneys for U.S. Bank Trust National
Association, as Trustee of the Chalet Series IV
Trust
376 East 400 South, Suite 300
Salt Lake City, UT 84111
Telephone:  801-355-2886
Fax:  801-328-9714
Email: armand@hwmlawfirm.com
File No:  UT10632

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH
### CENTRAL DIVISION

| In re: | Bankruptcy Case No. 20-25088 KRA<br>Chapter 13 |
|---|---|
| JOHN F. LAUTI AND HEATHER D. LAUTI dba EYELASH CANDY | **MOTION TO TERMINATE AUTOMATIC STAY AS TO U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES IV TRUST** |
| Debtors. | |

U.S. Bank Trust National Association, as Trustee of the Chalet Series IV Trust, hereinafter referred to as ("Secured Creditor"), hereby moves the Court pursuant to 11 U.S.C., Section 362(d), Bankruptcy Rules 4001 and 9014 and Local Rules 4001-1 and 9013-1, for an order terminating the automatic stay with respect to the following described real property (the "property") located in Davis County, State of Utah:

> Lot 18, Oakridge Manor Subdivision Plat B, according to the Official Plat thereof on file and of record in the Davis County Recorder's Office;
> Commonly known as 1069 East Arlington Way, Bountiful, UT 84010;

- 1 -

UT10632 / motion

so that it may proceed to pursue its rights and remedies under applicable law.  This motion is based on the following.

1.     That on or about September 25, 2006, Debtors executed their Note and Trust Deed, which Note and Trust Deed are in default.  Secured Creditor is the current beneficiary of the Trust Deed.  Copies of the Note, Trust Deed, Loan Modification, and Assignment of Trust Deed are attached hereto.

2.     That Debtors have not made their post-petition monthly payments as required by their plan and as of March 15, 2022, are in arrears eight (8) post-petition payments being from August 1, 2021 to March 1, 2022, in the amount of $2,057.69 each, with a suspense of $287.73, totaling $16,173.79.

3.     That Debtors have failed to provide Secured Creditor with adequate protection of its interest in the property.

4.     That Debtors have no realizable equity in the property.  The payoff as of March 15, 2022, was $354,655.40.  The value per the debtors' statements and schedules is $304,000.00.

5.     That the above allegations constitute sufficient cause pursuant to 11 U.S.C., Section 362(d) entitling Secured Creditor to an order terminating the automatic stay so that Secured Creditor may proceed to pursue its rights and remedies under applicable law.

6.     That Secured Creditor is entitled to its reasonable attorney's fees, costs and expenses for bringing this motion in accordance with its note and trust deed.

7.     With respect to Rule 4001(a)(3), the Court should allow immediate enforcement of any order for relief granted herein.

8.     Secured Creditor services the loan on the Property referenced in this Motion.  In

UT10632 / motion

the event the automatic stay in this case is modified, this case dismissed, and/or the Debtors

obtain a discharge and a foreclosure action is commenced on the mortgage property, the

foreclosure will be conducted in the name of the Secured Creditor.  Secured Creditor directly or

through an agent, has possession of the Note.  The Note is either made payable to Secured

Creditor or has been duly endorsed.

WHEREFORE, Secured Creditor moves the Court for the following relief:

1.     That the evidentiary hearing to be held within thirty (30) days of the date of this

motion, in accordance with 11 U.S.C., Section 362, be the final evidentiary hearing on this

matter;

2.     That the automatic stay pursuant to 11 U.S.C., Section 362, be modified and

terminated to permit Secured Creditor to immediately exercise its rights and remedies under

applicable state and federal law.  In the alternative, the Debtors should be ordered to provide

Secured Creditor with adequate protection of its interest in the property;

3.     For attorney's fees, costs and expenses and such further or other relief as the Court

deems appropriate;

4.     Any order based on stipulation governing the continuation and termination of the

automatic stay or any order granting relief from the automatic stay should not be amended or

altered or superseded by the confirmation order entered in this case but should be considered a

part of and integrated into the confirmation order.  Further, if the automatic stay is terminated

prior to confirmation, the automatic stay should not be reimposed by the entry of the

confirmation order;

5.     Secured Creditor seeks relief in order to, at its option, offer, provide and enter into

UT10632 / motion

any potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement.  Any such agreement shall be non-recourse unless included in a reaffirmation agreement.  Secured Creditor further requests that it be allowed to contact the debtors via telephone or written correspondence to offer such an agreement.

DATED this 18th day of March, 2022.

/s/ Armand J. Howell
Armand J. Howell
Attorney for Secured Creditor

UT10632 / motion

# DEED OF TRUST

Recording Requested By

2205880
BK 4127 PG 1264

WHEN RECORDED MAIL TO

NAME  Records Processing Services
STREET
ADDRESS  577 Lamont Rd
CITY &
STATE  Elmhurst, IL 60126

E 2205880 B 4127 P 1264-1269
RICHARD T. MAUGHAN
DAVIS COUNTY, UTAH RECORDER
9/28/2006 3:10:00 PM
FEE $20.00 Pgs: 6
DEP eCASH REC'D FOR FIRST AMERICAN TITLE

SPACE ABOVE THIS LINE FOR RECORDER'S USE

(Page 1 of 6)

# DEED OF TRUST

☐  IF THIS BOX IS CHECKED, THIS DEED OF TRUST SECURES FUTURE ADVANCES.

THIS DEED OF TRUST is made this  25TH  day of  SEPTEMBER  , 20  06  , among the Trustor(s),
JOHN F. LAUTI AND HEATHER DAWN LAUTI, HUSBAND AND WIFE AS JOINT TENANTS,
(herein
"Borrower"),  FIRST AMERICAN TITLE INSURANCE AGENCY
(herein "Trustee") and the Beneficiary,  HOUSEHOLD FINANCE CORPORATION III
a corporation organized and existing under the laws of  DELAWARE  whose address is
3521 WEST 3500 SOUTH, WILLOW WOOD SHOPPING CTR, WEST VALLEY C, UT  84119
(herein "Lender").

The following paragraph preceded by a checked box is applicable.

☒  WHEREAS, Borrower is indebted to Lender in the principal sum of $  222,887.28  ,
evidenced by Borrower's Loan Agreement dated  SEPTEMBER 25, 2006  and any extensions or renewals thereof
(including those pursuant to any Renegotiable Rate Agreement) (herein "Note"), providing for monthly installments of
principal and interest, including any adjustments to the amount of payments or the contract rate if that rate is variable,
with the balance of the indebtedness, if not sooner paid, due and payable on  SEPTEMBER 25, 2032;

☐  WHEREAS, Borrower is indebted to Lender in the principal sum of $ _____ , or so much thereof
as may be advanced pursuant to Borrower's Revolving Loan Agreement dated _____ and
extensions and renewals thereof (herein "Note"), providing for monthly installments, and interest at the rate and under
the terms specified in the Note, including any adjustments in the interest rate if that rate is variable, and providing for a
credit limit stated in the principal sum above and an initial advance of $ _____ ;

TO SECURE to Lender the repayment of the indebtedness, including future advances, evidenced by the Note,
with interest thereon at the applicable contract rate (including any adjustments to the amount of payment or the contract
rate if that rate is variable) and other charges; the payment of all other sums, with interest thereon, advance in accordance
herewith to protect the security of this Deed of Trust; and the performance of the convenants and agreements of Borrower
herein contained, Borrower, in consideration of the indebtedness herein recited and the trust herein created, irrevocably
grants and conveys to Trustee, in trust with power of sale, the following described property
located in the County of  DAVIS  State of Utah:

LOT 18, OAKRIDGE MANOR SUBDIVISION PLAT B, ACCORDING TO THE
OFFICIAL PLAT THEREOF ON FILE AND OF RECORD IN THE DAVIS
COUNTY RECORDER'S OFFICE.

TAX PARCEL NO. ████████

which has the address of  1069 E ARLINGTON WAY,  BOUNTIFUL
                         (Street)                                    (City)

Utah  84010  (herein "Property Address");
      [Zip Code]

11-11-05 DOT

ORIGINAL                                    UT008001

BK 4127 PG 1265

(Page 2 of 6)

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property".

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest (including any variations in interest resulting from changes in the Contract Rate that may be specified in the Note) on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to paragraph 3. Payments due under the Note and this Deed of Trust shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Deed of Trust is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Deed of Trust be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) electronic funds transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in paragraph 12. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each monthly payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Deed of Trust or performing the covenants and agreements secured by this Deed of Trust.

2. **Application of Payments or Proceeds.** Except as otherwise described in this paragraph or as may be required by the Note and/or applicable law, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under paragraph 3. Such payments shall be applied to each monthly payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Deed of Trust, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent monthly payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one monthly payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the monthly payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more monthly payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or miscellaneous proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the monthly payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Deed of Trust as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under paragraph 5; and (d) Mortgage Insurance premiums, if any. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Deed of Trust, as the phrase "covenant and agreement" is used in paragraph 7. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under paragraph 7 and pay such amount and Borrower shall then be obligated under paragraph 7 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with paragraph 12 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount: (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 35000), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter (herein "RESPA"); and (b) not to

11-11-05 DOT

UT008002

ORIGINAL

BK 4127 PG 1266

exceed the maximum amount a lender can require under RESPA. As used in this Deed of Trust, RESPA refers to all
requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the loan does not
qualify as a "federally related mortgage loan" under RESPA. Lender shall estimate the amount of Funds due on the
basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with
applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity
(including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender
shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge
Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items,
unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an
agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to
pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest
shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as
required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the
excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender
shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the
shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in
escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to
Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly
payments.

Upon payment in full of all sums secured by this Deed of Trust Lender shall promptly refund to Borrower any
Funds held by Lender.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations
under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust,
including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes,
assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this
Deed of Trust, and leasehold payments or ground rents, if any.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property
insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may
require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by the Borrower subject to approval by Lender;
provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a
form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender.
Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust
or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof
of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date
notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender
is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the
Property or to the sums secured by this Deed of Trust.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.**
Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of
the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of
Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's
obligations under the declaration or covenants creating or governing the condominium or planned unit development, the
by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this
Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the property,
then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including
reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage
insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to
maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with
Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the applicable Contract Rate,
shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to
other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment
thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property,
provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore
related to Lender's interest in the Property.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any
condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby
assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement
with a lien which has priority over this Deed of Trust.

10. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or
modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest
of Borrower and all other parties who are or hereafter may become secondarily liable shall not operate to release, in any
manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to

ORIGINAL

BK 4127 PG 1267

(Page 4 of 6)

commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

12. Notice. Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. Governing law; Severability. The applicable law contained in the Note shall control. Where no applicable law is contained therein, the state and local laws of the jurisdiction in which the Property is located shall apply except where such laws conflict with Federal law, in which case Federal law applies. The foregoing sentence shall not limit the applicability of Federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses," and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. Borrower's Copy. Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust, if requested, at the time of execution or after recordation hereof.

15. Rehabilitation Loan Agreement. Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. Transfer of the Property. If Borrower sells or transfers all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) a transfer by devise, descent, or by operation of law upon the death of a joint tenant, (c) the grant of any leasehold interest of three years or less not containing an option to purchase, (d) the creation of a purchase money security interest for household appliances, (e) a transfer to a relative resulting from the death of the Borrower, (f) a transfer where the spouse or children of the Borrower become an owner of the property, (g) a transfer resulting from a decree of dissolution of marriage, legal separation agreement, or from an incidental property settlement agreement, by which the spouse of the Borrower becomes an owner of the property, (h) a transfer into an inter vivos trust in which the Borrower is and remains a beneficiary and which does not relate to a transfer of rights of occupancy in the property, or (i) any other transfer. Borrower shall cause to be submitted information required by Lender to evaluate the transferee as if a new loan were being made to the transferee, Borrower will continue to be obligated under the Note and this Deed of Trust unless Lender releases Borrower in writing. If Lender does not agree to such sale or transfer, Lender may declare all of the sums secured by this Deed of Trust to be immediately due and payable. If Lender exercises such option to accelerate, Lender shall deliver or mail Borrower notice of acceleration in accordance with Paragraph 12 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed or delivered within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, or as otherwise required by law, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If the power of sale is invoked, Trustee shall execute a written notice of the occurrence of an event of default and of the election to cause the Property to be sold and shall record such notice in each county which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable

11-11-06 DOT

UT0008004

BK 4127 PG 1268

law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the property by advertising in accordance with applicable law. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, Trustee's fees, reasonable attorney's fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto or to the county clerk of the county in which the sale took place.

18. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 16 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. **Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

20. **Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

21. **Substitute Trustee.** Lender may from time to time in Lender's descretion remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

22. **Request for Notice.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address.

23. **Arbitration Rider to Note.** The Arbitration Rider attached to and made a part of the Note is hereby incorporated by reference and made a part of this Deed of Trust.

(THIS SPACE INTENTIONALLY LEFT BLANK)

11-11-05 DOT                                                                    UT008005

ORIGINAL

BK 4127 PG 1269

(Page 6 of 6)

## REQUEST FOR NOTICE OF DEFAULT
## AND FORECLOSURE UNDER SUPERIOR
## MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed and sealed this Deed of Trust.

_____ (SEAL)
John F. Lauti                         -Borrower

_____ (SEAL)
Heather Dawn Lauti AKA Heather D. Lauti   -Borrower

STATE OF UTAH, _____ Salt Lake _____ County ss:

On this    25th    day of    September    , 20 06 , personally appeared before me
John F. Lauti & Heather Dawn Lauti AKA Heather D. Lauti , the signer(s)
of the above instrument, who duly acknowledged to me that    t h e y    executed the same.

My Commission expires: Aug 13, 2007

_____
Notary Public residing at
3802 E N Little Cottonwood Cyn
Sandy UT 84092

> SUSAN DESPAIN
> Notary Public
> State of Utah
> My Comm. Expires Aug 13, 2007
> 3802 E N Little Cottonwood Cyn Sandy UT 84092

On this _____ day of _____ , 20 ___ , personally appeared before me
_____ , the signer(s)
of the above instrument, who duly acknowledged to me that ____ he ____ executed the same.

My Commission expires: _____

_____
Notary Public residing at
_____

## REQUEST FOR RECONVEYANCE

TO TRUSTEE:

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Date: _____    _____

_____    (Space Below This Line Reserved For Lender and Recorder) _____

11-11-05 DOT

UT008006

# NOTE

# LOAN AGREEMENT
### Including Truth-in-Lending Disclosure

**Lender:** (Called "We", "Us", "Our")
HOUSEHOLD FINANCE CORPORATION III
3521 WEST 3500 SOUTH
WILLOW WOOD SHOPPING CTR
WEST VALLEY C, UT 84119

**Borrowers:** (Called "You", "Your")
JOHN F. LAUTI
HEATHER D. LAUTI
1069 E ARLINGTON WAY
BOUNTIFUL, UT 84010

| Date of Loan: 09/25/2006 | Loan Number: ▮▮▮▮▮ |
| --- | --- |

In this agreement, "you", "your" mean the Borrower(s) who signs this agreement. "We", "us" and "our" refer to the Lender. This agreement covers the terms and conditions of your loan. It is important to us that you clearly understand the features of your loan. Please read this agreement carefully, and ask us any questions you may have.

### Truth-in-Lending Disclosure

| ANNUAL PERCENTAGE RATE<br><br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br><br>The dollar amount the credit will cost you. | Amount Financed<br><br>The amount of credit provided to you or on your behalf. | Total of Payments<br><br>The amount you will have paid after you have made all payments as scheduled. |
| --- | --- | --- | --- |
| 9.992% | $382,646.61 ("e") | $211,498.11 | $594,144.72 ("e") |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due ("e") |
| --- | --- | --- |
| 1 | $1,904.31 | Day 25 of each month thereafter. |
| 311 | $1,904.31 | Day 25 of each month thereafter. |

"e" means an estimate

**YOU ARE GIVING US A SECURITY INTEREST IN THE REAL PROPERTY AS DESCRIBED IN THE DEED OF TRUST AND LOCATED AT:**

1069 E ARLINGTON WAY
BOUNTIFUL, UT 84010

| Late Charge | If your monthly installment is not paid in full within 10 day(s) after it is due, you will be charged a late charge equal to the GREATER of 5% of the unpaid amount of the monthly installment or $30.00. |
| Prepayment | You may prepay your loan in full or in part at any time. If you fully prepay before the final payment due date, the amount you owe will be reduced by unearned credit insurance charges, if any. If you pay off your loan early, you may have to pay a prepayment fee and you will not be entitled to a refund of that part of the Finance Charge consisting of any prepaid finance charges. |

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and fees.

**The Settlement Statement provides your disbursements and the itemization of the Amount Financed.**

## ABOUT THE SECURITY:

| Your Obligation to Insure | You shall keep the structures located on the real property securing your loan insured against damage caused by fire and other physical hazards, name us as a loss payee and deliver to us a loss payable endorsement. If insurance covering the real property is canceled or expires while your loan is outstanding and you do not reinstate the coverage, we may obtain, at our option, hazard insurance coverage protecting our interest in the real property as outlined below. |
| Real Property Taxes and Homeowners Insurance | Homeowners Insurance covering fire and other hazards on the real property security is required, naming us as a loss payee for the term of your loan. You shall pay us on the day that monthly installments are due under this agreement, an additional sum (the "Funds") to be used to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Deed of Trust as a lien or encumbrance on the real property; (b) leasehold payments or ground rents on the real property, if any; (c) premiums for any and all insurance required by us under this agreement and the Deed of Trust ("Escrow Items"). You will pay us the Funds for Escrow Items unless we waive your obligation to pay the Funds for any or all Escrow Items. We may waive your obligation to pay us Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, you will be solely responsible for paying the amounts due for any Escrow Items directly and, if we require, you shall furnish us with receipts evidencing such payment within such time period as we may reasonably require. |
| Title Insurance | Title insurance on the real property security is required, naming us as a loss payee. You must purchase title insurance or its local equivalent protecting our lien on the real property as a condition to obtaining your loan. You may purchase title insurance from any title |

insurance provider you choose that we reasonably believe provides sufficient financial protection to us. You request such title insurance and authorize us to deduct the costs of the title insurance from your loan proceeds in order to pay the title insurance provider.

**Lender's Right to Place Hazard Insurance**

You authorize us, at our option, to obtain hazard insurance coverage on the real property in an amount not greater than the outstanding balance of principal and interest on your loan or, if known to be less, the replacement value of the real property, in the event that you fail to maintain the required hazard insurance outlined above or fail to provide adequate proof of its existence. You authorize us to charge you for the costs of this insurance. We may choose to add the insurance charges to the unpaid balance of your loan, which will accrue interest at the Contract Rate, or bill you for the annual premium on a periodic basis. The addition of the insurance charges due might increase the amount of your final monthly installment. The cost of lender-placed hazard insurance might be higher than the cost of standard insurance protecting the real property. The lender-placed insurance will not insure the contents of the real property or provide liability coverage. The insurance might not be the lowest cost coverage of its type available and you agree that we have no obligation to obtain the lowest cost coverage. We or an affiliated company might receive some benefit from the placement of this insurance and you will be charged for the full cost of the premium without reduction for any such benefit. If at any time after we have obtained this insurance, you provide adequate proof that you have subsequently purchased the required coverage, we will cancel the coverage we obtained and credit any unearned premiums to your loan.

## ABOUT YOUR LOAN REPAYMENT:

| | | | |
|---|---|---|---|
| SCHEDULED MATURITY DATE | 09/25/2032 | PREPAID FINANCE CHARGES | $11,389.17 |
| MONTHS OF CONTRACT | 312 | PRINCIPAL | $222,887.28 |
| CONTRACT RATE (per year) | 9.340% | JOINT CREDIT LIFE | $128.75 |
| AMOUNT FINANCED | $211,498.11 | | |

**Promise to Pay**

You agree to the terms of this agreement and promise to pay us the principal (Amount Financed plus prepaid finance charges consisting of Origination Fee/Points and Closing Fee, and any odd days interest reflected in your settlement statement) plus interest which is computed at a rate of 9.340% (the "Contract Rate"). You agree to pay us in monthly installments as stated in the Payments provision of this agreement. You also agree to pay us: (a) other charges as provided in this agreement; (b) credit insurance charges, if any; (c) collection costs permitted by applicable law, including reasonable attorneys' fees otherwise due under your Deed of Trust and (d) any other charges reflected in your settlement statement.

| | |
|---|---|
| **Interest** | Interest will be charged on the unpaid principal until the full amount of principal has been paid. You will pay us interest at a yearly Contract Rate of 9.340%. |
| | The interest rate required by this provision is the rate you will pay both before and after any default as described in this agreement. |
| **Payments** | **Time and Place of Payments** |
| | You will pay us principal and interest by paying your monthly installments. |
| | You will make your monthly installments to us on the same day of each month beginning on or about 10/25/2006. You will make these monthly installments every month until you have paid all of the principal and interest and any other charges described herein that you may owe under this agreement. Your monthly installments will be applied to interest before principal. If, on the Scheduled Maturity Date, 09/25/2032, you still owe amounts under this agreement, you will pay those amounts in full on that date, which amount will include interest at the then current Contract Rate or any such other rate as required by law. |
| | You will make your monthly installments at the address shown on page one or at the address shown on your monthly billing statement or at a different place that we may give you. |
| | **Amount of Monthly Installments** |
| | Your monthly installments will be in the amount of $1,904.31, plus the amount of any optional insurance you elected. |
| **Prepayment** | Subject to the prepayment fee described below, you may prepay your loan in full or in part at any time. If you fully prepay before the final payment due date, the amount you owe will be reduced by unearned credit insurance charges, if any. If you pay off your loan early, you may have to pay a prepayment fee and you will not be entitled to a refund of that part of the Finance Charge consisting of any prepaid finance charges. |
| **Prepayment Fee** | Your loan contains a prepayment fee. If you prepay the entire outstanding balance of your loan at any time within the first 24 months from the Date of Loan, 09/25/2006, you agree to pay a prepayment fee equal to 6 months interest at the Contract Rate in effect at the time of prepayment on the unpaid principal balance. No prepayment fee will be imposed: (a) if your loan is refinanced by another loan with us; (b) after the first 24 months; (c) if your loan is prepaid from the proceeds of any insurance; or (d) if we sue you. |
| **Late Charge** | If your monthly installment is not paid in full within 10 day(s) after it is due, you will be charged a late charge equal to the GREATER of 5% of the unpaid amount of the monthly installment or $30.00. |

| | |
|---|---|
| **Bad Check Charge** | You agree to pay $20.00 each time any check or payment is made on your loan by any means, including but not limited to, a check or ACH (our Authorization to Debit Account), which is returned unpaid by your bank or other financial institution for any reason. |
| **Additional Charges** | You agree to pay any amounts actually incurred by us for services rendered in connection with the opening and servicing of your loan, as allowed by law. These amounts may include fees for appraisals, title examination, title insurance or its local equivalent, fees and taxes paid to public officials in connection with recording, releasing or satisfying the Deed of Trust and other taxes as shown in the Settlement Statement incorporated herein by this reference. You also agree to pay any other amounts incurred by us in connection with the servicing of your loan including any amounts that we may (but need not) pay or that are otherwise due under the Deed of Trust, incorporated herein by this reference. |
| **Default** | If you fail to make any monthly installment after it becomes due or fail to comply with the terms of the Deed of Trust, we may require that you pay us, at once and without prior notice or demand, the unpaid balance of your loan plus accrued interest and any applicable charges in this agreement as authorized. |
| **Security Interest** | You agree to give us a security interest in the real property as described in the Deed of Trust. |

### ABOUT OUR RELATIONSHIP:

| | |
|---|---|
| **Exchange of Information** | You understand and agree that we will call you from time to time to discuss your financial needs and any loan products that may be of interest to you as may be permitted by applicable law. For more information regarding our privacy practices, please refer to our Privacy Statement, which is included with your loan documents. You agree that the Department of Motor Vehicles (or your state's equivalent of such department) may release your residence address to us, should it become necessary to locate you. |
| **Credit Bureau Reporting** | If you fail to fulfill the terms of your loan, a negative report reflecting on your credit record may be submitted to a Credit Reporting Agency. |
| **Telephone Monitoring** | You agree that we may listen to and/or record telephone calls between you and our representatives for quality assurance purposes. |
| **Insurance** | Credit insurance is optional. Any applicable insurance disclosures are included with this agreement and are incorporated herein by this reference. |
| **Alternative Dispute Resolution** | The terms of the Arbitration Rider signed by you as part of your loan transaction are incorporated herein by this reference. |

| Applicable Law | The terms and conditions of this agreement will be governed by the Mortgage Lending and Servicing Act, Title 70D, Utah Code Annotated. |
| --- | --- |
| Applicable Law | If this loan is a first mortgage, it is a federally related loan made at an agreed rate authorized by Section 501(a), Part A, Title V, Public Law 96-221, also known as Section 1735f-7(a), Title 12, United States Code. |

If any provision of this agreement is finally determined to be void or unenforceable under any law, rule, or regulation, all other provisions of this agreement will remain valid and enforceable. Our failure to enforce any provision(s) to this agreement shall not be deemed to constitute a waiver of such term(s). In order for any amendment to this agreement to be valid, it must be agreed to by you and us.

**You acknowledge that before signing this agreement, you have read and received this agreement which includes the Federal Truth-in-Lending disclosure and, as applicable, any other riders and/or disclosures incorporated herein by reference. By signing below, you agree to observe the terms and conditions of this agreement.**

As required by Utah law, you are notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

Borrower: _____    Date: 9/25/06
JOHN F. LAUTI

Borrower: _____    Date: 9/25/06
HEATHER D. LAUTI

Witness: _____

# ALLONGE TO NOTE

Account Number:         ██████████

Allonge to Note Dated:     **09/25/2006**

And Executed by:        **JOHN F LAUTI**

                       **HEATHER D LAUTI**

Property Address:       **1069 E ARLINGTON WAY**

                       **BOUNTIFUL, UT  84010-2304**

Loan Amount:          **$222,887.28**

Pay to the order of:     **U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF8
MASTER PARTICIPATION TRUST**

Without recourse:      **HOUSEHOLD FINANCE CORPORATION III, BY
CALIBER HOME LOANS, INC. AS ITS
ATTORNEY-IN-FACT**

By:                    Adan Roesner

Title:                  Vice President

# ALLONGE TO NOTE

Account Number:     ███████

Allonge to Note Dated:   **09/25/2006**

And Executed by:    **JOHN F LAUTI**

         **HEATHER D LAUTI**

Property Address:    **1069 E ARLINGTON WAY**
         **BOUNTIFUL, UT  84010-2304**

Loan Amount:     **$222,887.28**

Pay to the order of:   _____

Without recourse:   **U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF8**
         **MASTER PARTICIPATION TRUST, BY CALIBER**
         **HOME LOANS, INC., AS ITS ATTORNEY IN FACT**

By:        _Adan Roesner_____

Title:       Vice President

# ASSIGNMENT

2801541
BK 6008 PG 1481

E 2801541 B 6008 P 1481-1482
RICHARD T. MAUGHAN
DAVIS COUNTY, UTAH  RECORDER
4/30/2014 3:47:00 PM
FEE $12.00 Pgs: 2
DEP eCASH  REC'D FOR INWEST TITLE SERVICES

After Recording, Return To:
CALIBER HOME LOANS
13801 Wireless Way
Oklahoma City, OK 73134

Space Above This Line For Recorder's Use

Case No:                                                      Account No:
MERS Min#:                                              Prepared by:    Linda Perez
Parcel ID:

## NOTICE OF ASSIGNMENT OF BENEFICIAL INTEREST

The undersigned hereby gives notice that it assigned and transferred all of its rights, title, and interest under the trust deed described below, together with all of the indebtedness secured thereby, to  U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF8 MASTER PARTICIPATION TRUST whose address is 13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134 .

The trust deed was executed by  JOHN F LAUTI and HEATHER DAWN LAUTI AKA HEATHER D LAUTI as trustor, in which HOUSEHOLD FINANCE CORPORATION III was the named beneficiary, FIRST AMERICAN TITLE INSURANCE AGENCY was the named trustee, and it was filed for record 9/28/2006, with recorder's entry number 2205880, in Book 4127 , Page 1264-1269, DAVIS County, Utah.  This Notice of Assignment of Beneficial Interest affects the property located in DAVIS County, State of Utah, and is described more specifically as follows.

Legal Description:     SEE ATTACHED 'EXHIBIT A'

Date of Signature   4/22/14

County of San Diego )
                                  :SS
State of California )

HOUSEHOLD FINANCE CORPORATION III, BY
CALIBER HOME LOANS, INC. AS ITS ATTORNEY-IN-FACT

By:

Printed Name    **Adan Roesner**

Title:    **Vice President**

On ____April____ ___22___ ___2014___  before me, Angelika G. Garrow Notary Public, personally appeared, Adan Roesner , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Notary Name:  Angelika G. Garrow    .  My Commission Expires: 7-12-17

ANGELIKA G. GARROW
Commission # 2033089
Notary Public - California
San Diego County
My Comm. Expires Jul 12, 2017

2801541
BK 6008 PG 1482

EXHIBIT 'A' – LEGAL DESCRIPTION

LOT 18, OAKRIDGE MANOR SUBDIVISION PLAT B, ACCORDING TO THE OFFICIAL PLAT
THEREOF ON FILE AND OF RECORD IN THE DAVIS COUNTY RECORDER'S OFFICE.

RICHARD T. MAUGHAN
DAVIS COUNTY, UTAH  RECORDER
04/27/2015 01:41 PM
FEE $16.00  Pgs: 2
DEP RT  REC'D FOR TD SERVICE COMPAN
Y

When Recorded Mail To:
T.D. Service Company
LR Department (Cust# 673)
4000 W Metropolitan Dr., Ste. 400
Orange, CA 92868

_____
Space Above This Line For Recorder's Use

Case No:          -
Prepared by:          **Carolyn Warren**
MERS Min #:
Parcel ID:

### NOTICE OF ASSIGNMENT OF BENEFICIAL INTEREST

The undersigned hereby gives notice that it assigned and transferred all of its rights, title, and interest under the trust deed described below, together with all of the indebtedness secured thereby, to **U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF8 MASTER PARTICIPATION TRUST** whose address is **13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134** .

The trust deed was executed by **JOHN F. LAUTI and HEATHER DAWN LAUTI, HUSBAND AND WIFE AS JOINT TENANTS** as trustor, in which **HOUSEHOLD FINANCE CORPORATION III** was the named beneficiary, **FIRST AMERICAN TITLE INSURANCE AGENCY** was the named trustee, and it was filed for record 9/28/2006, with recorder's entry number 2205880, in Book 4127 , Page 1264, DAVIS County, Utah . This Notice of Assignment of Beneficial Interest affects the property located in DAVIS County, State of Utah, and is described more specifically as follows.

Legal Description:      **SEE ATTACHED 'EXHIBIT A'**

Dated this 8th day of April of 2015

County of Oklahoma )
                    :SS
State of Oklahoma )

**HOUSEHOLD FINANCE CORPORATION III, BY CALIBER HOME LOANS, INC., AS ITS ATTORNEY IN FACT**

By: _____

Printed Name      **Roy Lacey**

Title:                **Authorized Signatory**

On April 8, 2015, Roy Lacey, a(n) Authorized Signatory of **HOUSEHOLD FINANCE CORPORATION III, BY CALIBER HOME LOANS, INC., AS ITS ATTORNEY IN FACT** appeared before me and acknowledge that he/she executed the foregoing instrument.

Notary Name:    **Hailey Woosley**

My Commission Expires:      **6/1/2016**

When recorded return to :

After Recording, Return To:
Richmond Monroe Group
82 Jim Linegar LN
Branson West, MO 65737

SPS # ███████████████████

E 2905018 B 6394 P 340-342
RICHARD T. MAUGHAN
DAVIS COUNTY, UTAH RECORDER
11/16/2015 12:37:00 PM
FEE $14.00 Pgs: 3
DEP eCASH REC'D FOR HALLIDAY & WATKINS P

_Space Above This Line For Recorder's Use_

Case No:          -
Prepared by:    **Carolyn Warren**
MERS MIn #:
Parcel ID:

Control Number:          ██████
Caliber Document ID#

## NOTICE OF ASSIGNMENT OF BENEFICIAL INTEREST

The undersigned hereby gives notice that it assigned and transferred all of its rights, title, and interest under the trust deed described below, together with all of the indebtedness secured thereby, to ____**See Attached Exhibit " B "**____ whose address is _____.

The trust deed was executed by **JOHN F. LAUTI** and **HEATHER DAWN LAUTI, HUSBAND AND WIFE AS JOINT TENANTS** as trustor, in which **HOUSEHOLD FINANCE CORPORATION III** was the named beneficiary, **FIRST AMERICAN TITLE INSURANCE AGENCY** was the named trustee, and it was filed for record 9/28/2006, with recorder's entry number 2205880, in Book 4127 , Page 1264, DAVIS County, Utah. This Notice of Assignment of Beneficial Interest affects the property located in **DAVIS** County, State of Utah, and is described more specifically as follows.

Legal Description:    **SEE ATTACHED 'EXHIBIT A'**
_Property Address: 1069 E Arlington way, Bountiful, Utah 84010_

Dated this 8th day of April of 2015

County of Oklahoma )
                    :SS
State of Oklahoma )

**U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF8 MASTER PARTICIPATION TRUST, BY CALIBER HOME LOANS, INC., AS ITS ATTORNEY IN FACT**

By: _____

Printed Name        Roy Lacey

Title:              Authorized Signatory

On April 8, 2015, Roy Lacey, a(n) Authorized Signatory of U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF8 MASTER PARTICIPATION TRUST, BY CALIBER HOME LOANS, INC., AS ITS ATTORNEY IN FACT appeared before me and acknowledge that he/she executed the foregoing instrument.

Notary Name:    **Hailey Woosley**

My Commission Expires:    **6/1/2016**

HAILEY WOOSLEY
NOTARY PUBLIC
# 12005191
EXP. 06/01/16
STATE OF OKLAHOMA

LAUTI
DLTW        kasota

9

EXHIBIT A

LOT 18, OAKRIDGE MANOR SUBDIVISION PLAT B, ACCORDING TO THE
OFFICIAL PLAT THEREOF ON FILE AND OF RECORD IN THE DAVIS
COUNTY RECORDER'S OFFICE.

TAX PARCEL NO. ███████████.

**EXHIBIT B**

**Assignee:** Christiana Trust, a division of Wilmington Savings Fund Society, FSB, as indenture trustee, for
the CSMC 2014-RPL3 Trust, Mortgage-Backed Notes, Series 2014-RPL3
C/O Select Portfolio Servicing, Inc.
3815 South West Temple
Salt Lake City, UT 84115

RICHARD T. MAUGHAN
DAVIS COUNTY, UTAH  RECORDER
2/27/2018 8:25:00 AM
FEE $10.00 Pgs: 1
DEP eCASH  REC'D FOR MERIDIAN ASSET SER

**UTAH**
COUNTY OF DAVIS

PREPARED BY: SELECT PORTFOLIO SERVICING, INC.
WHEN RECORDED MAIL TO:

_____
_____
_____
_____, PH.

# ASSIGNMENT OF DEED OF TRUST

FOR VALUABLE CONSIDERATION, the receipt thereof is hereby acknowledged, **CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS INDENTURE TRUSTEE, FOR THE CSMC 2014-RPL3 TRUST, MORTGAGE-BACKED NOTES, SERIES 2014-RPL3**, located at C/O SELECT PORTFOLIO SERVICING, INC. 3217 S. DECKER LAKE DR., SALT LAKE CITY, UT 84119, Assignor, does                   hereby                   assign                   to

**MIELO INVESTORS, L.P.**
located            at       **6011 Connection Drive, Irving, Texas 75039** _____, _____, Assignee, its successors and assigns, all of Assignor's rights, title and interest accrued or to accrue under that certain Deed of Trust dated **SEPTEMBER 25, 2006** executed by **JOHN F. LAUTI AND HEATHER DAWN LAUTI, HUSBAND AND WIFE AS JOINT TENANTS**, Trustor, to **FIRST AMERICAN TITLE INSURANCE AGENCY**, Original Trustee, for the benefit of **HOUSEHOLD FINANCE CORPORATION III**, Original Beneficiary, and recorded in Book 4127 at Page 1264 as Entry No. 2205880 in the County Recorder's records for **DAVIS** County, State of **UTAH** and covering real property situated in said county described as follows:

LEGAL DESCRIPTION: LOT 18, OAKRIDGE MANOR SUBDIVISION PLAT B, ACCORDING TO THE OFFICIAL PLAT THEREOF ON FILE AND OF RECORD IN THE DAVIS COUNTY RECORDER'S OFFICE.  # 9-28-2006 ori

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed this **OCTOBER 12, 2017**.

**CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS INDENTURE TRUSTEE, FOR THE CSMC 2014-RPL3 TRUST, MORTGAGE-BACKED NOTES, SERIES 2014-RPL3, BY SELECT PORTFOLIO SERVICING, INC. ITS ATTORNEY IN FACT**

_____
**KIERSTEN BALCH, ASSISTANT VICE PRESIDENT**

STATE OF IDAHO              COUNTY OF BONNEVILLE     ) ss.

On **OCTOBER 12, 2017**, before me, **CHRISTINA ROMINE**, personally appeared **KIERSTEN BALCH** known to me to be the **ASSISTANT VICE PRESIDENT** of the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

_____
CHRISTINA ROMINE (COMMISSION EXP. 06/01/2022)
NOTARY PUBLIC

> CHRISTINA ROMINE
> NOTARY PUBLIC
> STATE OF IDAHO

RICHARD T. MAUGHAN
DAVIS COUNTY, UTAH  RECORDER
8/6/2019 12:32:00 PM
FEE $40.00 Pgs: 2
DEP eCASH  REC'D FOR MERIDIAN ASSET SERVIC

Prepared By:
Sangeetha Kulagod
SOURCEPOINT
2330 Commerce Park Drive, Suite 2
PALM BAY, FL - 32905 Phone: 8557636350
Return to:

## ASSIGNMENT OF DEED OF TRUST

Name and Address of Signor:

MTGLQ Investors, L.P.

2001 Ross Avenue Suite 2800

Dallas TX - 75201.

Name and Address of Assignee:

U.S. BANK TRUST NATIONAL ASSOCIATION, AS
TRUSTEE OF THE CHALET SERIES IV TRUST

300 DELAWARE AVE. 9TH FL.

WILMINGTON DE - 19801.

FOR VALUE RECEIVED, the receipt and sufficiency of which is hereby acknowledged, the undersigned, **MTGLQ Investors, L.P.**, "Assignor", whose address is above, does hereby grant, sell, assign, transfer and convey to **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES IV TRUST**, "Assignee," whose address is above, all interest of the undersigned Assignor in and to the following described Deed of Trust dated **09/25/2006**

**Executed by (Mortgagor (s)): JOHN F. LAUTI AND HEATHER DAWN LAUTI, HUSBAND AND WIFE AS JOINT TENANTS.**

**Original Trustee: FIRST AMERICAN TITLE INSURANCE AGENCY**

**Original Beneficiary: HOUSEHOLD FINANCE CORPORATION III**

**Filed of Record:** In Book **4127**, Page **1264**, Document/Instrument No. **2205880** in the Office of Auditor of **DAVIS** County, **UT**, on **09/28/2006**

**Property: 1069 E ARLINGTON WAY , BOUNTIFUL, UT - 84010.**

Given: to secure a certain Promissory Note in the amount of **$222,887.28** payable to Beneficiary.

Together with the note(s) and obligations therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust.

TO HAVE AND TO HOLD the same unto Assignee and unto its successors and assigns forever, subject only to the terms and conditions of the above-described Deed of Trust and Promissory Note.

Assignor is the present holder of the above-described Deed of Trust.

IN WITNESS WHEREOF, this assignment was executed by the undersigned Assignor on this the _____ JUL 1 6 2019

Legal Description : **LOT 18, OAKRIDGE MANOR SUBDIVISION PLAT B, ACCORDING TO THE OFFICIAL PLAT THEREOF ON FILE AND OF RECORD IN THE DAVIS COUNTY RECORDER'S OFFICE.**

Witness my hand and seal the day and year first above written.

MTGLQ Investors, L.P.

Erin Jemison
Title : Vice President

STATE OF  **Texas  COUNTY OF Dallas**
    This instrument was acknowledged before me on _____ JUL 1 6 2019 _____ by Erin
**Jemison, Vice President of MTGLQ Investors, L.P.**, on behalf of said corporation.

Natalie Flowers
My Commission Expires
11/29/2022
ID No. 124227602

Notary Public:        Natalie Flowers
My commission expires :  NOV 2 9 2022

No title search was performed on the subject property by the preparer. The preparer of this deed makes neither representation as to the status of the title nor property use or any zoning regulations concerning described property herein conveyed nor any matter except the validity of the form of this instrument. Information herein was provided to preparer by Grantor/Grantee and /or their agents; no boundary survey was made at the time of this conveyance.

# LOAN MODIFICATION

[Space Reserved for Recording Information]

## MODIFICATION AGREEMENT

This Modification Agreement (the "Agreement") is dated as of May 9, 2014 but effective as of the Modification Effective Date defined herein, by and between JOHN F LAUTI and HEATHER D LAUTI (collectively, the "Borrower") and Caliber Home Loans, Inc., on behalf of the current investor (the "Servicer").

RECITALS:

A. Borrower currently has a mortgage loan, account no. ▮▮▮▮▮ serviced by Servicer (the "Loan") secured by real property located at 1069 E ARLINGTON WAY BOUNTIFUL          UT 84010-2304 (the "Property"). The legal description of the Property is (if recordation of this Agreement is necessary).

B. Borrower executed and delivered the following documents, among others, related to the Loan (collectively, the "Loan Documents"):

   1)      Note dated September 25, 2006 in the original principal amount of $ 222,887.28 (the "Note"); and

   2)      Mortgage or Deed of Trust on the Property to secure, and bearing the same date as, the Note recorded in the records of DAVIS, UT.

C. As of May 9, 2014, amounts due and outstanding under the Note but not paid by Borrower total $ 264,687.89, consisting of unpaid principal of $ 208,244.97, accrued but unpaid interest of $ 48,512.59, and unpaid fees or advances due to Servicer of $   7,930.33.  A portion of the advances due to Servicer includes advances for taxes and insurance ("Ancillary" amounts) totaling $    0.00.

D. Borrower is in default under the Loan Documents, and Servicer has properly accelerated the Note or may, at Servicer's option, accelerate the Note.

E. Borrower has delivered to Servicer documentation of Borrower's current financial situation as requested by Servicer and, as an accommodation to Borrower, Servicer has offered to modify the terms of the Loan as described herein.

Borrower and Servicer (collectively, the "Parties"), agree as follows:

1. **Borrower's Representations.** Borrower hereby certifies and represents to Servicer:

   A. Borrower is experiencing a financial hardship and, as a result, (i) is in default under the Loan Documents, and (ii) does not have sufficient income or access to sufficient liquid assets to make the existing scheduled monthly mortgage payments now or in the near future;

   B. The Property has not been condemned or is not subject to condemnation proceedings;

   C. There has been no change in the ownership of the Property since Borrower signed the Loan Documents;

   D. Borrower has provided documentation as requested by Servicer including documentation for all income that Borrower receives (and understands that Borrower is not required to disclose child support or alimony unless Borrower chooses to rely on such income when requesting to qualify for the modification described in this Agreement);

   E. All documents and information Borrower has provided to Servicer in connection with this Agreement are true and correct; and

4:72

F.  If Servicer requires Borrower to obtain credit counseling in connection with the execution of this Agreement, Borrower will do so within 30 days of execution of this Agreement and provide Servicer with proof thereof.

2.  **Preconditions to Effectiveness of Agreement.** Borrower agrees to sign and return the original signed Agreement to Servicer where indicated below on or before May 24, 2014.  Upon receipt of Borrower's signed Agreement, Servicer will determine, in its sole discretion, whether Borrower's representations in Section 1 of this Agreement continue to be true and correct in all material respects. If Servicer determines that the representations continue to be true and correct, then Servicer will execute this Agreement where indicated below, and the modifications to the Loan Documents described herein will become effective on the date inserted by Servicer under its signature below (the "Modification Effective Date").  If Servicer determines that any of Borrower's representations are not true and correct, then Servicer will not be obligated or bound to execute this Agreement or to modify the Loan Documents as described herein, the Loan Documents will not be modified as described herein, this Agreement will be null and void, and Servicer will retain all rights and remedies under the Loan Documents.

3.  **Modification of the Loan Documents.** If the preconditions described in Section 2 of this Agreement have been satisfied, both Parties have signed the Agreement, then the Loan Documents are hereby modified as follows:

The new principal balance of the Note is $ 208,244.97 ("New Principal Balance").  The new total balance of the Loan, which includes unpaid principal, interest accrued but not paid, and all outstanding Servicer fees, charges and advances, will be $ 264,687.89 ("New Total Balance") (the total due as of date of this document May 9, 2014). The New Total Balance includes Servicer's deferral of unpaid principal, interest accrued but not paid, Servicer fees, charges, and/or advances in the amount of $ 56,442.92 ("Deferred Amounts").

Interest at the rate of 5% will begin to accrue on the New Principal Balance as of June 1, 2014 and through the Reduction Period Maturity Date (defined below).  You will make monthly payments of "interest only" accruing at the New Interest Rate (defined below) on the New Principal Balance beginning July 1, 2014 and continuing thereafter until the Reduction Period Maturity Date. Because these are "interest only" payments, the New Principal Balance will not be reduced.  The monthly payments will vary based upon the number of days between payment days.  In addition to this payment, Servicer may, as allowed by the loan documents and the Real Estate Settlement Procedures Act, collect deposits to an escrow account for the payment of real property taxes, insurance and other escrow items.  The new maturity date will be October 1, 2032 ("New Maturity Date").

The Deferred Amounts will be deferred to the end of the loan and will be due and payable on the New Maturity Date.  The balance of fees not deferred will remain due on the loan until paid.

Beginning on July 1, 2014 and ending at the Reduction Period Maturity Date as long as Borrower is not in default in payments due under this Agreement or other representations made in this Agreement, the new interest rate and monthly payments due through the Reduction Period Maturity Date are as follows:

| | |
|---|---|
| New Interest Rate: | 5% |
| Reduction Period Maturity Date: | June 1, 2019 |
| Monthly Reduction Period | |
|     Range of Monthly Interest Payment *: | $   867.69 |
| Monthly Escrow Payment Amount **: | $   324.42 |
| Ancillary Monthly Payment ***: | $     0.00 |
| TOTAL MONTHLY PAYMENT: | $  1,192.11 |

\* Your payment amount will vary based upon the number of days in any payment cycle. Displayed above is the range for 28 to 31 day months.

\*\* Servicer retains the right to adjust the Monthly Escrow Payment Amount during the Reduction Period as permitted by the Loan Documents and the Real Estate Settlement Procedures Act.

\*\*\* Servicer retains the right to adjust the Ancillary Monthly Payment Amount during the Reduction Period as permitted by the Loan Documents.

The terms in Section 3 of this Agreement shall supersede any provisions to the contrary in the Loan Documents, including, but not limited to, provisions for an adjustable or step interest rate. If the Loan Documents do not provide for the establishment of an escrow account for property taxes and insurance to be held and disbursed by the Servicer (referred to herein as "T&I Escrow"), then Borrower will pay Servicer the Monthly Escrow Payment Amount set forth above for Servicer to place in a T&I Escrow Account, and Servicer will pay property taxes and insurance premiums on the Property as they become due.

If Servicer makes advances for payment of taxes or insurance, accrues interest, or posts late or other fees to the Loan, each of which is permissible under the Loan Documents to add to amounts outstanding under the Note, between the date Servicer generates this Agreement and the date this Agreement is fully executed, then Servicer may adjust the New Modified Balance as necessary to account for these amounts, and will send an appropriate written notice of such adjustment to Borrower.

If Borrower delivers all payments described above and as required herein through the Reduction Period Maturity Date, and if Borrower is not otherwise in default under the Loan Documents or this Agreement at the Reduction Period Maturity Date, then upon the Reduction Period Maturity Date, Borrower will continue making payments in accordance with the interest rate and additional terms required by the Loan Documents without regard to this Agreement provided, however, that Borrower's monthly payment will adjust to an amount sufficient to fully repay the New Principal Balance over the remaining term of the loan (as may be modified herein) in substantially equal fully amortizing installments of principal and interest accruing thereon. In addition to any other amounts due under the terms of the Loan Documents, the Final Payment will include the Deferred Amounts, which will be due and owing no later than the Maturity Date of the Loan.

4. **Events of Default.** If Borrower fails to make any of the payments described in Section 3 of this Agreement within fifteen (15) days after the due date thereof, or otherwise fails to comply with any of the terms, conditions, representations or agreements set forth in this Agreement or in the Loan Documents, then such failure constitutes an event of default under this Agreement and the Loan Documents. Upon Borrower's default and the expiration of any right to cure under the Loan Documents, or as prescribed by applicable law, at Servicer's option and upon Servicer's delivery of notice to Borrower, this Agreement shall become null and void as though it had never existed, and Servicer's rights and Borrower's obligations will be determined without regard to this Agreement. Furthermore and unless federal or state law requires otherwise, Servicer will be entitled to (i) resume foreclosure activities and complete any foreclosure of the Property, and (ii) state as due under the Note an amount calculated pursuant to the Loan Documents without regard to this Agreement, though giving credit for any payments made hereunder as provided for in the Loan Documents. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.

5. **Additional Agreements.** The Parties further agree to and acknowledge each of the following:

   A. That all persons who signed the Loan Documents, or their authorized representative(s), have signed this Agreement, unless a Borrower is deceased or the Servicer has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification or forbearance that the Parties previously entered into with respect to the Loan.

C. That Borrower will comply with any agreement or obligation in the Loan Documents to make all payments of taxes, insurance premiums, assessments, refunds of advances due Servicer, impounds, and all other payments, the amount of which may change periodically over the term of the Loan.

D. That this Agreement constitutes notice that the Servicer's waiver as to payment of T&I Escrow amounts due to Servicer, if any, in the Loan Documents is hereby revoked, and that Borrower has been advised of the amount needed to fully fund the T&I Escrow Account. Unless expressly required by applicable law, Servicer shall not be required to pay Borrower any interest with respect to the T&I Escrow Account. Unless expressly prohibited by law, Borrower hereby waives the right to receive interest with respect to the T&I Escrow Account.

E. That the Loan Documents are composed of duly executed, valid, binding agreements, enforceable in accordance with their terms creating a valid and enforceable lien against the Property, and that the Parties hereby reaffirm the Loan Documents.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, Servicer and Borrower will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, Borrower agrees as follows: If all or any part of the Property or any interest in it is sold or transferred without Servicer's prior written consent, Servicer may, at its option, require immediate payment in full of all sums secured by the Loan Documents defined in Section B(1) of this Agreement. However, Servicer shall not exercise this option if federal or other applicable law or regulation prohibits the exercise of such option as of the date of such sale or transfer. If Servicer exercises this option, Servicer shall give Borrower notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed, within which Borrower must pay all sums due under the Note. If Borrower fails to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Loan Documents without further notice or demand on Borrower.

H. That, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstances, to assume the Loan. This Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer of the Property.

I. Nothing herein shall be deemed to be a waiver of any default that exists as of the date hereof, whether declared by the Servicer or not, it being expressly agreed that any such default shall continue to exist until Borrower fully performs each and every condition hereof.

J. As a material part of the consideration for Servicer entering into this Agreement, except as prohibited by applicable law, Borrower (i) releases and holds harmless any current or prior Servicer or note-holder from and against any claims, actions and defenses arising out of or relating to the Loan Documents or the servicing of the Loan (ii) represents and warrants that Borrower has no right of set-off or counterclaim or any defense to the obligations under the Loan Documents. Borrower hereby confirms that this Agreement represents the entire agreement between Borrower and Servicer with respect to the subject matter herein, and that no other prior terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning the modification of the Loan Documents that are inconsistent with the terms of this Agreement shall affect the Loan Documents or negate the operation and effect of this Agreement.

K. Any expenses incurred in connection with the servicing of the Loan, but not yet charged to the account as of the date of this Agreement, may be charged to the Loan and secured by the Mortgage after the Modification Effective Date.

L. Borrower will execute such other documents or papers as may be reasonably necessary or required by Servicer to effectuate the terms and conditions of this Agreement.

Notice to Consumers presently in Bankruptcy or who have a Bankruptcy Discharge: If you are a debtor presently subject to a proceeding in Bankruptcy Court, or if you have previously been discharged from this debt by a Federal Bankruptcy Court, this communication is not an attempt to collect a debt but is sent for informational purposes only or to satisfy certain Federal or State legal obligations.

**THIS IS AN ATTEMPT BY A DEBT COLLECTOR TO COLLECT A CONSUMER DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

In Witness Whereof, Servicer and Borrower have executed this Modification Agreement as of the dates indicated below.

Borrower Signature

Date: 5/16/14

Borrower Signature

Date: 5/16/14

Witness Signature

Witness Signature

SERVICER
Caliber Home Loans, Inc., on behalf of the
current investor

By:

5/20/14

Modification Effective Date
(Determined by Servicer)

After Recording Return To:
**Rushmore Loan Management Services LLC**
**1755 Wittington Place Ste. 400**
**Farmers Branch, TX 75234**
**1-888-504-6700**


This Document Prepared By:
**ENRIQUE ALMARAZ**
**Rushmore Loan Management Services LLC**
**15480 Laguna Canyon Road**
**Irvine, California 92618**
Phone: _____ .


_____ [Space Above This Line For Recording Data] __
Original Loan Amount: **$222,887.28**


# RESPA

## LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this **4th day of September, 2018**, between **JOHN F. LAUTI AND HEATHER DAWN LAUTI HUSBAND AND WIDE AS JOINT TENANTS** ("Borrower") and Owner, by and through **Rushmore Loan Management Services LLC, as current servicer and agent, whose address is 1755 Wittington Place Ste. 400, Farmers Branch, TX 75234** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated **September 25, 2006** and recorded in Book/Liber **4127**, Page **1264**, Instrument No: **2205880**, of the Official Records of **DAVIS County, UT** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

**1069 E ARLINGTON WAY, BOUNTIFUL, UT 84010,**
(Property Address)

the real property described being set forth as follows:


**AS SET FORTH IN THE DEED OF TRUST**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **September 4, 2018**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$312,467.90**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **5.000%**, from **September 1, 2018**. Borrower promises to make monthly payments of principal and interest of U.S. **$1,588.34**, beginning on the **1st** day of **October, 2018**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full.   The yearly rate of **5.000%** will remain in effect until principal and interest are paid in full.  If on **January 1, 2053** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a)    all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   (b)    all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

   (a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of

law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)     Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)     All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)     Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)     Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging [ ].

6. Notwithstanding anything to the contrary contained in this Agreement, if a discharge has been granted, Borrower and Lender acknowledge the effect of a discharge in bankruptcy that has been granted to Borrower prior to the execution of this Agreement and that Lender may not pursue Borrower for personal liability. However, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances. The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of Borrower's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

In Witness Whereof, the Lender and I have executed this Agreement.

_____ · (Seal)
JOHN F. LAUTI -Borrower

_____ (Seal)
HEATHER DAWN LAUTI -Borrower

_____ [Space Below This Line For Acknowledgments] _____

State of Utah)
          §
County of __Davis__)

On this __27__ day of __Sept.__, in the year 20_18_, before me, _Jennifer St John_ a notary

public, personally appeared _John F Lauti, Heather D Lauti_ proved on the basis of satisfactory

evidence to be the person(s) whose name(s) (is/are) subscribed to in this document, and

acknowledged (he/she/they) executed the same.

Witness my hand and official seal.

_____
(notary signature)



NOTARY PUBLIC
JENNIFER ST. JOHN
692018
COMMISSION EXPIRES
NOVEMBER 07, 2020
STATE OF UTAH

*(seal)*

Origination Company: **Rushmore Loan Management Services LLC**

## ERRORS AND OMISSIONS/COMPLIANCE AGREEMENT

FHA/VA Case Number:

Borrower(s):    JOHN F. LAUTI and HEATHER DAWN LAUTI

Property Address:    **1069 E ARLINGTON WAY, BOUNTIFUL, UT 84010**

Servicer:    **Rushmore Loan Management Services LLC**

The undersigned Borrower(s) for and in consideration of the above-referenced Servicer modifying the terms of your mortgage loan, agrees that if requested by your Servicer, to fully cooperate and adjust for clerical errors, any or all loan modification documentation deemed necessary or desirable in the reasonable discretion of Servicer to enable Servicer to sell, convey, seek guaranty or market said loan to any entity, including but not limited to an investor, Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Government National Mortgage Association, Department of Housing and Urban Development, or the Department of Veterans Affairs, or any Municipal Bonding Authority.

I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

The undersigned Borrower(s) agree(s) to comply with all above noted requests by the above-referenced Servicer within 15 days from date of mailing of said requests. Borrower(s) agree(s) to assume all costs including, by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to comply with correction requests in the above noted time period.

The undersigned Borrower(s) do hereby so agree and covenant in order to assure that this loan modification documentation executed this date will conform and be acceptable in the marketplace in the instance of transfer, sale or conveyance by Servicer of its interest in and to said loan modification documentation, and to assure marketable title in the said Borrower(s).

DATED this **4th** day of **September, 2018.**

_____ (Seal)
**JOHN F. LAUTI** -Borrower

_____ (Seal)
**HEATHER DAWN LAUTI** -Borrower

## INSURANCE ADDENDUM TO LOAN MODIFICATION AGREEMENT

### JOHN F. LAUTI AND HEATHER DAWN LAUTI
### 1069 E ARLINGTON WAY
### BOUNTIFUL, UT 84010

THIS INSURANCE ADDENDUM TO LOAN MODIFICATION AGREEMENT (the "Insurance Addendum") is made this **4th day of September, 2018**, and is incorporated into and shall be deemed to amend and supplement the Loan Modification Agreement (the "Modification Agreement" together, the "Agreements") entered into by the undersigned ("Borrower"), in favor of **Rushmore Loan Management Services LLC,** current servicer and agent for owner ("Lender"). The Agreements amend and supplement (1) the Mortgage, Deed of Trust or Security Deed and any applicable Riders (the "Security Agreement"), and (2) the Note bearing the same date as, and secured by, the Security Agreement.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Modification Agreement, Borrower and Lender further covenant and agree as follows:

If Borrower is obligated under the Note and Security Instrument to keep the improvements now existing or hereafter erected on the Property insured against loss by fire and/or any other hazards, including but not limited to floods or flooding, or if Borrower is obligated under the Note and Security Instrument to pay Lender for escrowed insurance premiums, and Borrower subsequently either fails to insure the Property or fails to pay insurance escrowed amounts when they become due, then Lender may at its sole discretion and without obligation exercise its rights under the Note and Security Instrument and this Agreement to purchase insurance to protect Lender's interests and rights in the Property. Borrower acknowledges and agrees that the cost of insurance coverage so obtained by Lender may significantly exceed the cost of insurance that Borrower could have obtained independently. Nevertheless, Borrower acknowledges and agrees any such amounts disbursed by Lender shall become additional debt of the Borrower payable to Lender and secured by the Security Instrument. Borrower further acknowledges and agrees that Lender is under no obligation to purchase any particular type or amount of coverage, and such coverage shall be intended to protect Lender but may or may not protect Borrower, Borrower's equity in the Property, or the contents of the Property against any risk, hazard or liability, and furthermore may provide greater or lesser coverage than was previously in effect.

The Agreements only modify the Security Agreement and Note in regard to the provisions addressed. All other terms and conditions of the Security Agreement and Note remain in full force and effect.

BY SIGNING BELOW, Lender and Borrower accept and agree to the terms and provisions contained in this Addendum.

JOHN F. LAUTI                                     **LENDER**

HEATHER DAWN LAUTI