Marji Hanson (5712)
352 South Denver Street, Ste. 240
Salt Lake City, Utah 84111
Telephone: (801) 478-0479
Facsimile:  (801) 665-1817
Attorney for Debtors

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| In re:<br><br>**JOHN F. LAUTI and<br>HEATHER D. LAUTI,**<br><br>       **Debtors.** | **DEBTORS' OBJECTION TO AMENDED PROOF OF CLAIM NO. 7 FILED BY U.S. BANK TRUST, N.A., FOR FAILURE TO COMPLY WITH FED. R. BANKR. P.  3002.1(b)**<br>*[FILED ELECTRONICALLY]*<br>Case No. 20-25088<br>Chapter 13<br>Judge Kevin R. Anderson |

The above-referenced Debtors objects Amended Proof of Claim No. 7 filed by **U.S. Bank, N.A.** (Creditor) as an improperly noticed payment change under Fed. R. Bankr. P. 3002.1(b)(1) and requests relief requests appropriate relief, including sanctions and reasonable attorney's fees pursuant to Fed. R. Bankr. P. 3002(i), and represent as follows:

**STATEMENT OF FACTS:**

1.      The Debtors filed a petition for relief under Chapter 13 of the United States on August 21, 2020.

2.      The Debtors' Chapter 13 plan was confirmed on February 4, 2021.  The Debtors' Chapter 13 plan proposes to make current monthly mortgage payments directly to Creditor.

3.     On September 23, 2020, Creditor filed Proof of Claim 7 (POC7) in this case. POC7 lists the amount of the post-petition monthly payment at $1,337.04. *See* POC7, attached hereto as Exhibit A, page 4, Part 4: Monthly Mortgage Payment.

4.     Attached to POC7 is an Annual Escrow Account Disclosure Statement Account History dated September 14, 2020.  The escrow analysis lists the Current Total Payment of $1,348.27 and the "Effective Sep 01, 2020" payment of $1,337.04. *See* POC7 Exhibit A, page 5.

5.     The Annual Escrow Account Disclosure Statement Account History indicates that the effective payment as of September 1, 2020, would be $1,337.04.

6.     Debtors' Schedule J filed with the Court was consistent with the information provided in POC7 and listed the then current monthly mortgage payment of $1,348.27.

7.     The Debtors' proposed Chapter 13 Plan filed with the Court on August 28, 2020, provided for a cure of the pre-petition mortgage payment default and was circulated to all creditors.  The Debtors' proposed Chapter 13 Plan also listed the current installment payment (including escrow) in the amount of $1,348.27.

8.     The Creditor did not object to confirmation of the proposed Chapter 13 Plan and the Court confirmed the proposed Chapter 13 Plan by Order dated February 4, 2021.

9.     The Creditor contacted the Debtors, through counsel, by email on two

separate post-petition occasions to indicate that the Debtors were late on

monthly mortgage payments. The Creditor's representative never mentioned

or referred to any change in payment amount from the either amount listed on

listed on POC7: either $1,337.04 or $1,348.27.

10.    On February 23, 2022, Creditor filed an amended proof of claim (Amended

POC7).  The information on the first three pages of Amended POC7,

including the amount of the pre-petition arrearage and the loan balance, does

not differ from the POC7.  Amended POC7 is attached hereto as Exhibit B.

11.    There appear to be changes on pages 4 and of the Amended POC7 which were

only discovered by Debtors' counsel after the Creditor filed its pending

Motion to Terminate Automatic Stay when it was discovered that the post-

petition arrearage was due to the change in the monthly payment amount as

indicated on Amended POC7.

12.    The most notable changes to Amended POC7 are: (a) the amount of the post-

petition mortgage payment was increased from $1,337.04 to $2,057.69 on

page 4, Part 4: Monthly Mortgage Payment, and (b) the Annual Escrow

Account Disclosure Statement Account History dated September 14, 2020,

appears to have been altered or typed over from the original escrow statement

attached to POC7 with an increased amount for the monthly payment

"Effective Sep 01, 2020"

13.    On March 18, 2022, Creditor filed its Motion to Terminate Automatic Stay

alleging an eight-month post-petition arrearage in the total amount of

$16,173.79.

14.    On April 4, 2022, Debtors' provided Creditor with proof of post-petition

payments of $1,348.27 and further states that the Debtors' post-petition

payments, in the payment amount listed on Page 4 and 5 of POC7 are current.

15.    In response, Creditor provided further explanation that the post-petition

mortgage arrearage referenced in the Motion to Terminate had been calculated

based on a post-petition monthly payment due in an amount equal to the

$2,057.69 listed on Amended POC7 that had been not filed in this case until

February 23, 2022.  As of May 3, 2022, the Creditor provided information

identifying the amount it deems to be in default at $13,572.23.

**ARGUMENT:**

Federal Rule of Bankruptcy Procedure 3002.1 requires a creditor to give formal

notice to a debtor and trustee of new post-petition fee, charges and payment changes.

"Rule 3002.1 ensures that debtors are informed of new post-petition obligation (such

as fees).  The rule requires formal notice to debtors and trustee, and it assures

creditors that they will not violate the automatic stay. Debtors then have the chance to

pay or contest the new obligations, which prevents lingering deficits from surfacing

after the case ends." *PHH Mortg. Corp. v. Sensenich (In re Gravel)*, 6 F.4th 503, 514

(2nd Cir. 2021).  Rule 3002.1(i) empowers the Bankruptcy Court to impose sanctions

for non-compliance.

Under Rule 3002.1(b), a mortgage creditor "shall file and serve on the debtor,
debtor's counsel, and the trustee a notice of any change in the payment amount,
including any change that results from an interest rate or escrow account adjustment,
no later than 21 days before a payment in the new amount is due. If the claim…" Fed.
R. Bankr. P. 3002.1(b).

In this case, the Creditor failed to provide formal notice of a change in the amount
of the monthly payment it expected to be paid or that such amount was different than
the payment listed in POC7.  Amended POC7 can only be interpreted as a notice of
change in payment, but a notice that is sorely ineffective. The changes to the amount
of the mortgage payment contained on pages 4 and 5 are not prominent or
conspicuous and are not likely to be discovered.  The changes to page 5 are especially
disturbing because the changes appear to be typed over an original escrow analysis
prepared in 2020. The Creditor obviously produced the altered escrow analysis years
after the date the 2020 escrow analysis had been prepared and originally attached to
POC7.

The post-petition arrearage claimed by the Creditor in its Motion to Terminate
Automatic Stay was not created by the Debtors' failure to make monthly mortgage
payments.  The post-petition default alleged by the Creditor was created by the
difference in the amount the Debtors had been put on notice to pay when the case was
filed in 2020 and the Creditor's recently discovered accounting error.

The Creditor is attempting to use Amended POC7 as a notice of payment change.
The Creditor failed to provide notice of the payment change within 21 days before a

payment in a new amount became due.  The Debtors should not be penalized because the Creditor cannot conduct its mortgage accounting operations in a manner that fully complies with Rule 3002.1.  This Creditor's failed accounting procedures should not be allowed to threaten the fresh start of Chapter 13 that will be earned by the Debtors upon completion of their Plan. Rule 3002.1 was created to exactly avoid the negative effects of ineffective notice of mortgage payment changes and especially when the negative impact of failure to provide notice is due to a secured lender's failed accounting procedures.

WHEREFORE, the Debtors object to Amended POC7 as formal notice of a payment change and request relief in the form of a sanction equal to $13,572.23 or such amount as the Creditor accepts as the current post-petition default, reasonable attorney's fees and costs in an amount not less than $2,500.00, and such further relief as the Court deems appropriate under Fed. R. Bankr P. 3002.1(i).

Dated: May 18, 2022.


    _/s/ Marji Hanson_____
    Marji Hanson,
    Attorney for Debtors

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 18, 2022, I electronically filed the

foregoing **DEBTORS' OBJECTION TO AMENDED PROOF OF CLAIM NO. 7**

**FILED BY U.S. BANK TRUST, N.A., FOR FAILURE TO COMPLY WITH**

**FED. R. BANKR. P. 3002.1(b)** with the United States Bankruptcy Court for the

District of Utah by using the CM/ECF system.

**CERTIFICATE OF SERVICE – BY NOTICE OF ELECTRONIC FILING**

**(CM/ECF)**

- **Marji Hanson**    marji.hanson@utahbklaw.com,
  marjih@yahoo.com;r51045@notify.bestcase.com
- **Bryant Thomas Hinckley**    bhinckley@agutah.gov
- **Armand J. Howell**    armand@hwmlawfirm.com,
  armand@ecf.courtdrive.com;meghan@ecf.courtdrive.com
- **Lon Jenkins tr**    ecfmail@ch13ut.org, lneebling@ch13ut.org
- **United States Trustee**    USTPRegion19.SK.ECF@usdoj.gov

I further certify that the parties of record in this case, as identified below, are

registered CM/ECF users and will be served through the CM/ECF system:

__/s/ Marji Hanson_____

**Exhibit A**

**Fill in this information to identify the case:**

Debtor 1 ____John F. Lauti____

Debtor 2 ____Heather D. Lauti____
(Spouse, if filing)

United States Bankruptcy Court for the: District of Utah

Case number ____20-25088____

Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

## Part 1:  Identify the Claim

| | |
|---|---|
| **1. Who is the current creditor?** | U.S. Bank Trust National Association, as Trustee of the Chalet Series IV Trust<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| **2. Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes.  From whom? _____ |
| **3. Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>SN Servicing Corporation<br>Name<br>323 5th Street<br>Number     Street<br>Eureka, CA 95501<br>City          State          ZIP Code<br><br>Contact phone  (800) 603-0836<br>Contact email  BKNotices@snsc.com<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br><br>__ __ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __ __ __ | **Where should payments to the creditor be sent?** (if different)<br><br>Name<br>Number     Street<br>City          State          ZIP Code<br><br>Contact phone _____<br>Contact email _____ |
| **4. Does this claim amend one already filed?** | ☑ No<br>☐ Yes.  Claim number on court claims registry (if known) _____     Filed on _____<br>MM / DD / YYYY |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes.  Who made the earlier filing? _____ |

**Part 2:**   **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  2  1  9  3 |

7. **How much is the claim?**   $ _____ 353,597.08   **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned

9. **Is all or part of the claim secured?**

☐ No

☑ Yes.   The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe:   1069 Arlington Way, Bountiful, UT 84010

**Basis for perfection:**   Note/Mortgage

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $ _____

**Amount of the claim that is secured:**   $ _____ 353,597.08

**Amount of the claim that is unsecured:**  $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $ _____ 47,731.07

**Annual Interest Rate** (when case was filed) __5.00__ %

☑ Fixed

☐ Variable

10. **Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $ _____

11. **Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | |
|---|---|---|
| | ☐ Yes. *Check one:* | **Amount entitled to priority** |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).                    $ _____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).          $ _____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).                                              $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).        $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).            $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.           $ _____

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   09/21/2020
                   MM / DD / YYYY

/s/ Michelle Ghidotti-Gonsalves
_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name         Michelle Ghidotti-Gonsalves
             First name          Middle name          Last name

Title        **Authorized Agent**

Company      Ghidotti Berger, LLP
             Identify the corporate servicer as the company if the authorized agent is a servicer.

Address      1920 Old Tustin Ave.
             Number          Street
             Santa Ana, CA  92705
             City                          State     ZIP Code

Contact phone  (949) 427-2010                    Email   bknotifications@ghidottiberger.com

---

**Mortgage Proof of Claim Attachment**  (12/15)

If you claim a secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions

| Part 1: Mortgage and Case Information | |
|---|---|
| Case number: | 20-25088 |
| Debtor 1: | John F. Lauti |
| Debtor 2: | Heather D. Lauti |
| Last 4 digits to Identify: | 2193 |
| Creditor: | US Bank Trust NA |
| Servicer: | SN Servicing Corporation |
| Fixed accrual/daily simple interest/other: | Fixed |

| Part 2: Total Debt Calculation | |
|---|---|
| Principal balance: | $311,893.93 |
| Principal Deferred balance: | |
| Interest due: | $28,142.93 |
| Fees, costs due: | $5,057.96 |
| Escrow deficiency for funds advanced: | $8,502.26 |
| Less total funds on hand: | |
| Total Debt: | $353,597.08 |

| Part 3: Arrearages as of Date of the Petition | |
|---|---|
| Principal & interest due: | $33,355.14 |
| Prepetition fees due: | $5,057.96 |
| Escrow deficiency for funds advanced: | $8,502.26 |
| Projected escrow shortage: | $815.71 |
| Less funds on hand: | |
| Total prepetition arrearage: | $47,731.07 |

| Part 4: Monthly Mortgage Payment | |
|---|---|
| Principal & interest: | $867.69 |
| Monthly escrow: | $469.35 |
| Private mortgage insurance: | |
| Total monthly payment: | $1,337.04 |

Part 5: Loan Payment History from First Date of Default

| A. Date | Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | Principal balance | M. Accrued interest balance | N. Escrow balance | O. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/1/2018 | $0.00 | $0.00 | $2,068.92 | PAYMENT DUE | 12/1/2018 | $2,068.92 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/1/2018 | $0.00 | $0.00 | $216.90 | LATE CHARGES | 12/1/2018 | $2,068.92 | $0.00 | $0.00 | $0.00 | $216.90 | $0.00 | $311,893.93 | $0.00 | $0.00 | $216.90 | $0.00 |
| 12/1/2018 | $0.00 | $0.00 | $1,596.00 | ATTY FEES | 12/1/2018 | $2,068.92 | $0.00 | $0.00 | $0.00 | $1,596.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $1,812.90 | $0.00 |
| 1/1/2019 | $0.00 | $0.00 | $2,068.92 | PAYMENT DUE | 12/1/2018 | $4,137.84 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $1,812.90 | $0.00 |
| 2/1/2019 | $0.00 | $0.00 | $2,068.92 | PAYMENT DUE | 12/1/2018 | $6,206.76 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $1,812.90 | $0.00 |
| 3/1/2019 | $0.00 | $0.00 | $2,068.92 | PAYMENT DUE | 12/1/2018 | $8,275.68 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $1,812.90 | $0.00 |
| 4/1/2019 | $0.00 | $0.00 | $2,068.92 | PAYMENT DUE | 12/1/2018 | $10,344.60 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $1,812.90 | $0.00 |
| 5/1/2019 | $0.00 | $0.00 | $2,068.92 | PAYMENT DUE | 12/1/2018 | $12,413.52 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $1,812.90 | $0.00 |
| 5/16/2019 | $0.00 | $0.00 | $2,619.50 | ATTY FEES | 12/1/2018 | $12,413.52 | $0.00 | $0.00 | $0.00 | $2,619.50 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,432.40 | $0.00 |
| 6/1/2019 | $0.00 | $0.00 | $2,068.92 | PAYMENT DUE | 12/1/2018 | $14,482.44 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,432.40 | $0.00 |
| 7/1/2019 | $0.00 | $0.00 | $2,068.92 | PAYMENT DUE | 12/1/2018 | $16,551.36 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,432.40 | $0.00 |
| 8/1/2019 | $0.00 | $0.00 | $2,068.92 | PAYMENT DUE | 12/1/2018 | $18,620.28 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,432.40 | $0.00 |
| 9/1/2019 | $0.00 | $0.00 | $2,068.92 | PAYMENT DUE | 12/1/2018 | $20,689.20 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,432.40 | $0.00 |
| 9/17/2019 | $0.00 | $0.00 | $43.38 | LATE CHARGES | 12/1/2018 | $20,689.20 | $0.00 | $0.00 | $0.00 | $43.38 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,475.78 | $0.00 |
| 10/1/2019 | $0.00 | $0.00 | $2,068.92 | PAYMENT DUE | 12/1/2018 | $22,758.12 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,475.78 | $0.00 |
| 10/17/2019 | $0.00 | $0.00 | $43.38 | LATE CHARGES | 12/1/2018 | $22,758.12 | $0.00 | $0.00 | $0.00 | $43.38 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,519.16 | $0.00 |
| 10/28/2019 | $0.00 | $0.00 | $105.00 | ATTY FEES | 12/1/2018 | $22,758.12 | $0.00 | $0.00 | $0.00 | $105.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,624.16 | $0.00 |
| 11/1/2019 | $0.00 | $0.00 | $2,068.92 | PAYMENT DUE | 12/1/2018 | $24,827.04 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,624.16 | $0.00 |
| 11/17/2019 | $0.00 | $0.00 | $43.38 | LATE CHARGES | 12/1/2018 | $24,827.04 | $0.00 | $0.00 | $0.00 | $43.38 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,667.54 | $0.00 |
| 12/1/2019 | $0.00 | $0.00 | $2,068.92 | PAYMENT DUE | 12/1/2018 | $26,895.96 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,667.54 | $0.00 |
| 12/17/2019 | $0.00 | $0.00 | $43.38 | LATE CHARGES | 12/1/2018 | $26,895.96 | $0.00 | $0.00 | $0.00 | $43.38 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,710.92 | $0.00 |
| 1/1/2020 | $0.00 | $0.00 | $2,068.92 | PAYMENT DUE | 12/1/2018 | $28,964.88 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,710.92 | $0.00 |
| 1/17/2020 | $0.00 | $0.00 | $43.38 | LATE CHARGES | 12/1/2018 | $28,964.88 | $0.00 | $0.00 | $0.00 | $43.38 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,754.30 | $0.00 |
| 2/1/2020 | $0.00 | $0.00 | $2,057.69 | PAYMENT DUE | 12/1/2018 | $31,022.57 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,754.30 | $0.00 |
| 2/17/2020 | $0.00 | $0.00 | $43.38 | LATE CHARGES | 12/1/2018 | $31,022.57 | $0.00 | $0.00 | $0.00 | $43.38 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,797.68 | $0.00 |
| 3/1/2020 | $0.00 | $0.00 | $2,057.69 | PAYMENT DUE | 12/1/2018 | $33,080.26 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,797.68 | $0.00 |
| 3/17/2020 | $0.00 | $0.00 | $43.38 | LATE CHARGES | 12/1/2018 | $33,080.26 | $0.00 | $0.00 | $0.00 | $43.38 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,841.06 | $0.00 |
| 4/1/2020 | $0.00 | $0.00 | $2,057.69 | PAYMENT DUE | 12/1/2018 | $35,137.95 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,841.06 | $0.00 |
| 4/17/2020 | $0.00 | $0.00 | $43.38 | LATE CHARGES | 12/1/2018 | $35,137.95 | $0.00 | $0.00 | $0.00 | $43.38 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,884.44 | $0.00 |
| 5/1/2020 | $0.00 | $0.00 | $2,057.69 | PAYMENT DUE | 12/1/2018 | $37,195.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,884.44 | $0.00 |
| 5/17/2020 | $0.00 | $0.00 | $43.38 | LATE CHARGES | 12/1/2018 | $37,195.64 | $0.00 | $0.00 | $0.00 | $43.38 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,927.82 | $0.00 |
| 6/1/2020 | $0.00 | $0.00 | $2,057.69 | PAYMENT DUE | 12/1/2018 | $39,253.33 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,927.82 | $0.00 |
| 6/17/2020 | $0.00 | $0.00 | $43.38 | LATE CHARGES | 12/1/2018 | $39,253.33 | $0.00 | $0.00 | $0.00 | $43.38 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,971.20 | $0.00 |
| 7/1/2020 | $0.00 | $0.00 | $2,057.69 | PAYMENT DUE | 12/1/2018 | $41,311.02 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,971.20 | $0.00 |
| 7/1/2020 | $0.00 | $0.00 | $8,502.26 | ESCROW ADVANCES | 12/1/2018 | $41,311.02 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $8,502.26 | $4,971.20 | $0.00 |
| 7/17/2020 | $0.00 | $0.00 | $43.38 | LATE CHARGES | 12/1/2018 | $41,311.02 | $0.00 | $0.00 | $0.00 | $43.38 | $0.00 | $311,893.93 | $0.00 | $8,502.26 | $5,014.58 | $0.00 |
| 8/1/2020 | $0.00 | $0.00 | $2,057.69 | PAYMENT DUE | 12/1/2018 | $43,368.71 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $8,502.26 | $5,014.58 | $0.00 |
| 8/17/2020 | $0.00 | $0.00 | $43.38 | LATE CHARGES | 12/1/2018 | $43,368.71 | $0.00 | $0.00 | $0.00 | $43.38 | $0.00 | $311,893.93 | $0.00 | $8,502.26 | $5,057.96 | $0.00 |

SN Servicing Corporation
323 FIFTH STREET
EUREKA, CA  95501
For Inquiries:  (800) 603-0836
Main Office- NMLS ID #5985, Branch Office- NMLS ID #9785

Final

Analysis Date:   September 14, 2020

JOHN F LAUTI
HEATHER D LAUTI
1069 ARLINGTON WAY
BOUNTIFUL UT  84010

Property Address:
1069E ARLINGTON WAY
BOUNTIFUL, UT  84010

## Annual Escrow Account Disclosure Statement
### Account History

This is a statement of actual activity in your escrow account from Feb 2020 to Sept 2020.  Last year's anticipated activity (payments to and from your escrow account) is next to the actual activity.

| Payment Information | Current: | Effective Sep 01, 2020: |
|---|---|---|
| Principal & Interest Pmt: | 867.69 | 867.69 |
| Escrow Payment: | 480.58 | 469.35 |
| Other Funds Payment: | 0.00 | 0.00 |
| Assistance Payment (-): | 0.00 | 0.00 |
| Reserve Acct Payment: | 0.00 | 0.00 |
| Total Payment: | $1,348.27 | $1,337.04 |

| Escrow Balance Calculation | |
|---|---|
| Due Date: | Sep 01, 2020 |
| Escrow Balance: | (7,331.68) |
| Anticipated Pmts to Escrow: | 0.00 |
| Anticipated Pmts from Escrow (-): | 0.00 |
| Anticipated Escrow Balance: | ($7,331.68) |

| Date | Payments to Escrow Anticipated | Actual | Payments From Escrow Anticipated | Actual | Description | Escrow Balance Required | Actual |
|---|---|---|---|---|---|---|---|
| | | | | | Starting Balance | 595.88 | (5,165.92) |
| Feb 2020 | 469.35 | | 270.72 | 270.72 | * Forced Place Insur | 794.51 | (5,436.64) |
| Mar 2020 | 469.35 | | 270.72 | 270.72 | * Forced Place Insur | 993.14 | (5,707.36) |
| Apr 2020 | 469.35 | | 270.72 | 270.72 | * Forced Place Insur | 1,191.77 | (5,978.08) |
| May 2020 | 469.35 | | 270.72 | 270.72 | * Forced Place Insur | 1,390.40 | (6,248.80) |
| Jun 2020 | 469.35 | | 270.72 | 270.72 | * Forced Place Insur | 1,589.03 | (6,519.52) |
| Jul 2020 | 469.35 | | 270.72 | 270.72 | * Forced Place Insur | 1,787.66 | (6,790.24) |
| Aug 2020 | 469.35 | | 270.72 | 270.72 | * Forced Place Insur | 1,986.29 | (7,060.96) |
| Sep 2020 | | | | 270.72 | * Forced Place Insur | 1,986.29 | (7,331.68) |
| | $3,285.45 | $0.00 | $1,895.04 | $2,165.76 | | | |

An asterisk (*) indicates a difference from a previous estimate either in the date or the amount.  If you want a further explanation, please call our toll-free number.

Last year, we  anticipated that payments from your account would be made during this period equaling 1,895.04.  Under Federal law, your lowest monthly balance should not have exceeded 938.70 or 1/6 of the anticipated payment from the account, unless your mortgage contract or State law specifies a lower amount.  Your mortgage contract and State law are silent on this issue.

SN Servicing Corporation
For Inquiries: (800) 603-0836
Main Office- NMLS ID #5985, Branch Office- NMLS ID #9785

Analysis Date: September 14, 2020

JOHN F LAUTI

**Annual Escrow Account Disclosure Statement**
**Projections for Coming Year**

This is an estimate of activity in your escrow account during the coming year based on payments anticipated to be made to and from your account.

| Date | Anticipated Payments | | Description | Escrow Balance | |
|------|------------|--------------|-------------|-------------|----------|
|      | To Escrow | From Escrow | | Anticipated | Required |
|      |           |             | Starting Balance | (7,331.68) | 1,986.29 |
| Sep 2020 | 469.35 | 270.72 | Forced Place Insur | (7,133.05) | 2,184.92 |
| Oct 2020 | 469.35 | 270.72 | Forced Place Insur | (6,934.42) | 2,383.55 |
| Nov 2020 | 469.35 | 2,383.55 | County Tax | (8,848.62) | 469.35 |
| Nov 2020 |        | 270.72 | Forced Place Insur | (9,119.34) | 198.63 |
| Dec 2020 | 469.35 | 270.72 | Forced Place Insur | (8,920.71) | 397.26 |
| Jan 2021 | 469.35 | 270.72 | Forced Place Insur | (8,722.08) | 595.89 |
| Feb 2021 | 469.35 | 270.72 | Forced Place Insur | (8,523.45) | 794.52 |
| Mar 2021 | 469.35 | 270.72 | Forced Place Insur | (8,324.82) | 993.15 |
| Apr 2021 | 469.35 | 270.72 | Forced Place Insur | (8,126.19) | 1,191.78 |
| May 2021 | 469.35 | 270.72 | Forced Place Insur | (7,927.56) | 1,390.41 |
| Jun 2021 | 469.35 | 270.72 | Forced Place Insur | (7,728.93) | 1,589.04 |
| Jul 2021 | 469.35 | 270.72 | Forced Place Insur | (7,530.30) | 1,787.67 |
| Aug 2021 | 469.35 | 270.72 | Forced Place Insur | (7,331.67) | 1,986.30 |
|      | $5,632.20 | $5,632.19 | | | |

(Please keep this statement for comparison with the actual activity in your account at the end of the escrow accounting computation year.) Your escrow balance contains a cushion of 198.63. A cushion is an additional amount of funds held in your escrow balance to prevent the balance from becoming overdrawn when an increase in the disbursement amount occurs. Under Federal law, your lowest monthly balance should not exceed 938.70 or 1/6 of the anticipated payment from the account, unless your mortgage contract or State law specifies a lower amount. Your mortgage contract and State law are silent on this issue.

Your ending balance from the last month of the account history (escrow balance anticipated) is (7,331.68). Your starting balance (escrow balance required) according to this analysis should be $1,986.29. This means you have a shortage of 9,317.97. This shortage may be collected from you over a period of 12 months or more unless the shortage is less than 1 month's deposit, in which case we have the additional option of requesting payment within 30 days. We have decided to do nothing.

We anticipate the total of your coming year bills to be 5,632.19. We divide that amount by the number of payments expected during the coming year to obtain your escrow payment.

| New Escrow Payment Calculation | |
|---|---|
| Unadjusted Escrow Payment | 469.35 |
| Surplus Amount: | 0.00 |
| Shortage Amount: | 0.00 |
| Rounding Adjustment Amount: | 0.00 |
| Escrow Payment: | $469.35 |

NOTICE OF RIGHT TO CANCEL PRIVATE MORTGAGE INSURANCE: If you currently pay private mortgage insurance premiums, you may have the right to cancel the insurance. In most cases, you have the right to cancel private mortgage insurance if the principal balance of your loan is 80 percent or less of the current fair market appraised value of your home, and you have a good payment history on your loan. If you want to learn whether you are eligible to cancel this insurance, please contact us at 323 Fifth Street, Eureka, Ca 95501 or 800-603-0836.

**\* Please note if you have autopay/EFT set up on your loan, it is your responsibility to make sure your payment amount is updated.  Enclosed is the EFT form that needs to be completed. Once completed, please fax to the number listed on the EFT form or return in the self-addressed envelope.**

After Recording Return To:
Rushmore Loan Management Services LLC
1755 Wittington Place Ste. 400
Farmers Branch, TX 75234
1-888-504-6700


This Document Prepared By:
ENRIQUE ALMARAZ
Rushmore Loan Management Services LLC
15480 Laguna Canyon Road
Irvine, California 92618
Phone: _____


_____ [Space Above This Line For Recording Data] ___
Original Loan Amount: $222,887.28

# RESPA

## LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

     This Loan Modification Agreement ("Agreement"), made this **4th day of September, 2018**, between **JOHN F. LAUTI AND HEATHER DAWN LAUTI HUSBAND AND WIDE AS JOINT TENANTS** ("Borrower") and **Owner, by and through Rushmore Loan Management Services LLC, as current servicer and agent, whose address is 1755 Wittington Place Ste. 400, Farmers Branch, TX 75234** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated **September 25, 2006** and recorded in Book/Liber **4127**, Page **1264**, Instrument No: **2205880**, of the Official Records of **DAVIS County, UT** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at
**1069 E ARLINGTON WAY, BOUNTIFUL, UT 84010,**
(Property Address)
the real property described being set forth as follows:


**AS SET FORTH IN THE DEED OF TRUST**

     In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **September 4, 2018**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$312,467.90**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument -
Utah                                                                      Form 3179 1/01 (rev. 4/14)
Mortgage Cadence Document Center  © 8868 08/14                                    *(page 1 of 5)*

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **5.000%**, from **September 1, 2018**. Borrower promises to make monthly payments of principal and interest of U.S. **$1,588.34**, beginning on the **1st day of October, 2018**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full.    The yearly rate of **5.000%** will remain in effect until principal and interest are paid in full.  If on **January 1, 2053** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a)    all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   (b)    all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

   (a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of

law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)  All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)  Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)  Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging [ ].

6.  Notwithstanding anything to the contrary contained in this Agreement, if a discharge has been granted, Borrower and Lender acknowledge the effect of a discharge in bankruptcy that has been granted to Borrower prior to the execution of this Agreement and that Lender may not pursue Borrower for personal liability. However, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances. The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of Borrower's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
**JOHN F. LAUTI** -Borrower

_____ (Seal)
**HEATHER DAWN LAUTI** -Borrower

_____ [Space Below This Line For Acknowledgments] _____

State of Utah)
                    §
County of __Davis_____)

On this _27_ day of _Sept.__, in the year 20_18_, before me, _Jennifer St John_ a notary

public, personally appeared _John F Lauti, Heather D Lauti_ proved on the basis of satisfactory

evidence to be the person(s) whose name(s) (is/are) subscribed to in this document, and

acknowledged (he/she/they) executed the same.

Witness my hand and official seal.

_Jennifer St John_
(notary signature)

NOTARY PUBLIC
JENNIFER ST. JOHN
682016
COMMISSION EXPIRES
NOVEMBER 07, 2020
STATE OF UTAH

*(seal)*

Origination Company: **Rushmore Loan Management Services LLC**



# ERRORS AND OMISSIONS/COMPLIANCE AGREEMENT

FHA/VA Case Number:

Borrower(s):    **JOHN F. LAUTI and HEATHER DAWN LAUTI**

Property Address:    **1069 E ARLINGTON WAY, BOUNTIFUL, UT 84010**

Servicer:    **Rushmore Loan Management Services LLC**

The undersigned Borrower(s) for and in consideration of the above-referenced Servicer modifying the terms of your mortgage loan, agrees that if requested by your Servicer, to fully cooperate and adjust for clerical errors, any or all loan modification documentation deemed necessary or desirable in the reasonable discretion of Servicer to enable Servicer to sell, convey, seek guaranty or market said loan to any entity, including but not limited to an investor, Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Government National Mortgage Association, Department of Housing and Urban Development, or the Department of Veterans Affairs, or any Municipal Bonding Authority.

I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

The undersigned Borrower(s) agree(s) to comply with all above noted requests by the above-referenced Servicer within 15 days from date of mailing of said requests. Borrower(s) agree(s) to assume all costs including, by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to comply with correction requests in the above noted time period.

The undersigned Borrower(s) do hereby so agree and covenant in order to assure that this loan modification documentation executed this date will conform and be acceptable in the marketplace in the instance of transfer, sale or conveyance by Servicer of its interest in and to said loan modification documentation, and to assure marketable title in the said Borrower(s).

DATED this **4th day of September, 2018**.

_____ (Seal)
JOHN F. LAUTI -Borrower

_____ (Seal)
HEATHER DAWN LAUTI -Borrower

## INSURANCE ADDENDUM TO LOAN MODIFICATION AGREEMENT

### JOHN F. LAUTI AND HEATHER DAWN LAUTI
### 1069 E ARLINGTON WAY
### BOUNTIFUL, UT 84010

THIS INSURANCE ADDENDUM TO LOAN MODIFICATION AGREEMENT (the "Insurance Addendum") is made this **4th day of September, 2018**, and is incorporated into and shall be deemed to amend and supplement the Loan Modification Agreement (the "Modification Agreement" together, the "Agreements") entered into by the undersigned ("Borrower"), in favor of **Rushmore Loan Management Services LLC**, current servicer and agent for owner ("Lender"). The Agreements amend and supplement (1) the Mortgage, Deed of Trust or Security Deed and any applicable Riders (the "Security Agreement"), and (2) the Note bearing the same date as, and secured by, the Security Agreement.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Modification Agreement, Borrower and Lender further covenant and agree as follows:

If Borrower is obligated under the Note and Security Instrument to keep the improvements now existing or hereafter erected on the Property insured against loss by fire and/or any other hazards, including but not limited to floods or flooding, or if Borrower is obligated under the Note and Security Instrument to pay Lender for escrowed insurance premiums, and Borrower subsequently either fails to insure the Property or fails to pay insurance escrowed amounts when they become due, then Lender may at its sole discretion and without obligation exercise its rights under the Note and Security Instrument and this Agreement to purchase insurance to protect Lender's interests and rights in the Property. Borrower acknowledges and agrees that the cost of insurance coverage so obtained by Lender may significantly exceed the cost of insurance that Borrower could have obtained independently. Nevertheless, Borrower acknowledges and agrees any such amounts disbursed by Lender shall become additional debt of the Borrower payable to Lender and secured by the Security Instrument. Borrower further acknowledges and agrees that Lender is under no obligation to purchase any particular type or amount of coverage, and such coverage shall be intended to protect Lender but may or may not protect Borrower, Borrower's equity in the Property, or the contents of the Property against any risk, hazard or liability, and furthermore may provide greater or lesser coverage than was previously in effect.

The Agreements only modify the Security Agreement and Note in regard to the provisions addressed. All other terms and conditions of the Security Agreement and Note remain in full force and effect.

BY SIGNING BELOW, Lender and Borrower accept and agree to the terms and provisions contained in this Addendum.

_____          _____
**JOHN F. LAUTI**                                    **LENDER**

_____
**HEATHER DAWN LAUTI**

[Space Reserved for Recording Information]

## MODIFICATION AGREEMENT

This Modification Agreement (the "Agreement") is dated as of May 9, 2014 but effective as of the Modification Effective Date defined herein, by and between JOHN F LAUTI and HEATHER D LAUTI (collectively, the "Borrower") and Caliber Home Loans, Inc., on behalf of the current investor (the "Servicer").

RECITALS:

A. Borrower currently has a mortgage loan, account no. 9802909706, serviced by Servicer (the "Loan") secured by real property located at 1069 E ARLINGTON WAY BOUNTIFUL         UT 84010-2304 (the "Property").  The legal description of the Property is (if recordation of this Agreement is necessary).

B. Borrower executed and delivered the following documents, among others, related to the Loan (collectively, the "Loan Documents"):
    1)    Note dated September 25, 2006 in the original principal amount of $ 222,887.28 (the "Note"); and
    2)    Mortgage or Deed of Trust on the Property to secure, and bearing the same date as, the Note recorded in the records of DAVIS, UT.

C. As of May 9, 2014, amounts due and outstanding under the Note but not paid by Borrower total $ 264,687.89, consisting of unpaid principal of $ 208,244.97, accrued but unpaid interest of $ 48,512.59, and unpaid fees or advances due to Servicer of $    7,930.33.   A portion of the advances due to Servicer includes advances for taxes and insurance ("Ancillary" amounts) totaling $      0.00.

D. Borrower is in default under the Loan Documents, and Servicer has properly accelerated the Note or may, at Servicer's option, accelerate the Note.

E. Borrower has delivered to Servicer documentation of Borrower's current financial situation as requested by Servicer and, as an accommodation to Borrower, Servicer has offered to modify the terms of the Loan as described herein.

Borrower and Servicer (collectively, the "Parties"), agree as follows:

1.   **Borrower's Representations.**  Borrower hereby certifies and represents to Servicer:

A. Borrower is experiencing a financial hardship and, as a result, (i) is in default under the Loan Documents, and (ii) does not have sufficient income or access to sufficient liquid assets to make the existing scheduled monthly mortgage payments now or in the near future;

B. The Property has not been condemned or is not subject to condemnation proceedings;

C. There has been no change in the ownership of the Property since Borrower signed the Loan Documents;

D. Borrower has provided documentation as requested by Servicer including documentation for all income that Borrower receives (and understands that Borrower is not required to disclose child support or alimony unless Borrower chooses to rely on such income when requesting to qualify for the modification described in this Agreement);

E. All documents and information Borrower has provided to Servicer in connection with this Agreement are true and correct; and

4:72

1

F.  If Servicer requires Borrower to obtain credit counseling in connection with the execution of this Agreement, Borrower will do so within 30 days of execution of this Agreement and provide Servicer with proof thereof.

2.  **Preconditions to Effectiveness of Agreement.**  Borrower agrees to sign and return the original signed Agreement to Servicer where indicated below on or before May 24, 2014.  Upon receipt of Borrower's signed Agreement, Servicer will determine, in its sole discretion, whether Borrower's representations in Section 1 of this Agreement continue to be true and correct in all material respects.  If Servicer determines that the representations continue to be true and correct, then Servicer will execute this Agreement where indicated below, and the modifications to the Loan Documents described herein will become effective on the date inserted by Servicer under its signature below (the "Modification Effective Date").  If Servicer determines that any of Borrower's representations are not true and correct, then Servicer will not be obligated or bound to execute this Agreement or to modify the Loan Documents as described herein, the Loan Documents will not be modified as described herein, this Agreement will be null and void, and Servicer will retain all rights and remedies under the Loan Documents.

3.  **Modification of the Loan Documents.** If the preconditions described in Section 2 of this Agreement have been satisfied, both Parties have signed the Agreement, then the Loan Documents are hereby modified as follows:

The new principal balance of the Note is $ 208,244.97 ("New Principal Balance").  The new total balance of the Loan, which includes unpaid principal, interest accrued but not paid, and all outstanding Servicer fees, charges and advances, will be $ 264,687.89 ("New Total Balance") (the total due as of date of this document May 9, 2014). The New Total Balance includes Servicer's deferral of unpaid principal, interest accrued but not paid, Servicer fees, charges, and/or advances in the amount of $ 56,442.92 ("Deferred Amounts").

Interest at the rate of 5% will begin to accrue on the New Principal Balance as of June 1, 2014 and through the Reduction Period Maturity Date (defined below).  You will make monthly payments of "interest only" accruing at the New Interest Rate (defined below) on the New Principal Balance beginning July 1, 2014 and continuing thereafter until the Reduction Period Maturity Date.  Because these are "interest only" payments, the New Principal Balance will not be reduced.  The monthly payments will vary based upon the number of days between payment days.  In addition to this payment, Servicer may, as allowed by the loan documents and the Real Estate Settlement Procedures Act, collect deposits to an escrow account for the payment of real property taxes, insurance and other escrow items.  The new maturity date will be October 1, 2032 ("New Maturity Date").

The Deferred Amounts will be deferred to the end of the loan and will be due and payable on the New Maturity Date.  The balance of fees not deferred will remain due on the loan until paid.

Beginning on July 1, 2014 and ending at the Reduction Period Maturity Date as long as Borrower is not in default in payments due under this Agreement or other representations made in this Agreement, the new interest rate and monthly payments due through the Reduction Period Maturity Date are as follows:

| | |
|---|---|
| New Interest Rate: | 5% |
| Reduction Period Maturity Date: | June 1, 2019 |
| Monthly Reduction Period | |
| Range of Monthly Interest Payment *: | $   867.69 |
| Monthly Escrow Payment Amount **: | $   324.42 |
| Ancillary Monthly Payment ***: | $     0.00 |
| TOTAL MONTHLY PAYMENT: | $  1,192.11 |

\* Your payment amount will vary based upon the number of days in any payment cycle. Displayed above is the range for 28 to 31 day months.

\*\* Servicer retains the right to adjust the Monthly Escrow Payment Amount during the Reduction Period as permitted by the Loan Documents and the Real Estate Settlement Procedures Act.

\*\*\* Servicer retains the right to adjust the Ancillary Monthly Payment Amount during the Reduction Period as permitted by the Loan Documents.

The terms in Section 3 of this Agreement shall supersede any provisions to the contrary in the Loan Documents, including, but not limited to, provisions for an adjustable or step interest rate. If the Loan Documents do not provide for the establishment of an escrow account for property taxes and insurance to be held and disbursed by the Servicer (referred to herein as "T&I Escrow"), then Borrower will pay Servicer the Monthly Escrow Payment Amount set forth above for Servicer to place in a T&I Escrow Account, and Servicer will pay property taxes and insurance premiums on the Property as they become due.

If Servicer makes advances for payment of taxes or insurance, accrues interest, or posts late or other fees to the Loan, each of which is permissible under the Loan Documents to add to amounts outstanding under the Note, between the date Servicer generates this Agreement and the date this Agreement is fully executed, then Servicer may adjust the New Modified Balance as necessary to account for these amounts, and will send an appropriate written notice of such adjustment to Borrower.

If Borrower delivers all payments described above and as required herein through the Reduction Period Maturity Date, and if Borrower is not otherwise in default under the Loan Documents or this Agreement at the Reduction Period Maturity Date, then upon the Reduction Period Maturity Date, Borrower will continue making payments in accordance with the interest rate and additional terms required by the Loan Documents without regard to this Agreement provided, however, that Borrower's monthly payment will adjust to an amount sufficient to fully repay the New Principal Balance over the remaining term of the loan (as may be modified herein) in substantially equal fully amortizing installments of principal and interest accruing thereon. In addition to any other amounts due under the terms of the Loan Documents, the Final Payment will include the Deferred Amounts, which will be due and owing no later than the Maturity Date of the Loan.

4.  **Events of Default.** If Borrower fails to make any of the payments described in Section 3 of this Agreement within fifteen (15) days after the due date thereof, or otherwise fails to comply with any of the terms, conditions, representations or agreements set forth in this Agreement or in the Loan Documents, then such failure constitutes an event of default under this Agreement and the Loan Documents. Upon Borrower's default and the expiration of any right to cure under the Loan Documents, or as prescribed by applicable law, at Servicer's option and upon Servicer's delivery of notice to Borrower, this Agreement shall become null and void as though it had never existed, and Servicer's rights and Borrower's obligations will be determined without regard to this Agreement. Furthermore and unless federal or state law requires otherwise, Servicer will be entitled to (i) resume foreclosure activities and complete any foreclosure of the Property, and (ii) state as due under the Note an amount calculated pursuant to the Loan Documents without regard to this Agreement, though giving credit for any payments made hereunder as provided for in the Loan Documents. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.

5.  **Additional Agreements.** The Parties further agree to and acknowledge each of the following:

    A.  That all persons who signed the Loan Documents, or their authorized representative(s), have signed this Agreement, unless a Borrower is deceased or the Servicer has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification or forbearance that the Parties previously entered into with respect to the Loan.

C.  That Borrower will comply with any agreement or obligation in the Loan Documents to make all payments of taxes, insurance premiums, assessments, refunds of advances due Servicer, impounds, and all other payments, the amount of which may change periodically over the term of the Loan.

D.  That this Agreement constitutes notice that the Servicer's waiver as to payment of T&I Escrow amounts due to Servicer, if any, in the Loan Documents is hereby revoked, and that Borrower has been advised of the amount needed to fully fund the T&I Escrow Account.  Unless expressly required by applicable law, Servicer shall not be required to pay Borrower any interest with respect to the T&I Escrow Account.  Unless expressly prohibited by law, Borrower hereby waives the right to receive interest with respect to the T&I Escrow Account.

E.  That the Loan Documents are composed of duly executed, valid, binding agreements, enforceable in accordance with their terms creating a valid and enforceable lien against the Property, and that the Parties hereby reaffirm the Loan Documents.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, Servicer and Borrower will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, Borrower agrees as follows:  If all or any part of the Property or any interest in it is sold or transferred without Servicer's prior written consent, Servicer may, at its option, require immediate payment in full of all sums secured by the Loan Documents defined in Section B(1) of this Agreement.  However, Servicer shall not exercise this option if federal or other applicable law or regulation prohibits the exercise of such option as of the date of such sale or transfer.  If Servicer exercises this option, Servicer shall give Borrower notice of acceleration.  The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed, within which Borrower must pay all sums due under the Note.  If Borrower fails to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Loan Documents without further notice or demand on Borrower.

H.  That, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstances, to assume the Loan.  This Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer of the Property.

I.  Nothing herein shall be deemed to be a waiver of any default that exists as of the date hereof, whether declared by the Servicer or not, it being expressly agreed that any such default shall continue to exist until Borrower fully performs each and every condition hereof.

J.  As a material part of the consideration for Servicer entering into this Agreement, except as prohibited by applicable law, Borrower (i) releases and holds harmless any current or prior Servicer or note-holder from and against any claims, actions and defenses arising out of or relating to the Loan Documents or the servicing of the Loan (ii) represents and warrants that Borrower has no right of set-off or counterclaim or any defense to the obligations under the Loan Documents.  Borrower hereby confirms that this Agreement represents the entire agreement between Borrower and Servicer with respect to the subject matter herein, and that no other prior terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning the modification of the Loan Documents that are inconsistent with the terms of this Agreement shall affect the Loan Documents or negate the operation and effect of this Agreement.

K.  Any expenses incurred in connection with the servicing of the Loan, but not yet charged to the account as of the date of this Agreement, may be charged to the Loan and secured by the Mortgage after the Modification Effective Date.

L.  Borrower will execute such other documents or papers as may be reasonably necessary or required by Servicer to effectuate the terms and conditions of this Agreement.

Notice to Consumers presently in Bankruptcy or who have a Bankruptcy Discharge: If you are a debtor presently subject to a proceeding in Bankruptcy Court, or if you have previously been discharged from this debt by a Federal Bankruptcy Court, this communication is not an attempt to collect a debt but is sent for informational purposes only or to satisfy certain Federal or State legal obligations.

**THIS IS AN ATTEMPT BY A DEBT COLLECTOR TO COLLECT A CONSUMER DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

In Witness Whereof, Servicer and Borrower have executed this Modification Agreement as of the dates indicated below.

_____    _____
Borrower Signature    Witness Signature

Date: _____5/16/14_____

_____    _____
Borrower Signature    Witness Signature

Date: _____5/16/14_____


SERVICER
Caliber Home Loans, Inc., on behalf of the current investor

By: _____

_____
Modification Effective Date
(Determined by Servicer)

# LOAN AGREEMENT
## Including Truth-in-Lending Disclosure

| Lender: (Called "We", "Us", "Our") |
| --- |
| HOUSEHOLD FINANCE CORPORATION III |
| 3521 WEST 3500 SOUTH |
| WILLOW WOOD SHOPPING CTR |
| WEST VALLEY C, UT 84119 |
| **Borrowers:** (Called "You", "Your") |
| JOHN F. LAUTI |
| HEATHER D. LAUTI |
| 1069 E ARLINGTON WAY |
| BOUNTIFUL, UT 84010 |
| **Date of Loan:** 09/25/2006 |

In this agreement, "you", "your" mean the Borrower(s) who signs this agreement. "We", "us" and "our" refer to the Lender. This agreement covers the terms and conditions of your loan. It is important to us that you clearly understand the features of your loan. Please read this agreement carefully, and ask us any questions you may have.

## Truth-in-Lending Disclosure

| ANNUAL PERCENTAGE RATE<br><br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br><br>The dollar amount the credit will cost you. | Amount Financed<br><br>The amount of credit provided to you or on your behalf. | Total of Payments<br><br>The amount you will have paid after you have made all payments as scheduled. |
| --- | --- | --- | --- |
| 9.992% | $382,646.61 ("e") | $211,498.11 | $594,144.72 ("e") |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due ("e") |
| --- | --- | --- |
| 1 | $1,904.31 | Day 25 of each month thereafter. |
| 311 | $1,904.31 | Day 25 of each month thereafter. |

"e" means an estimate

**YOU ARE GIVING US A SECURITY INTEREST IN THE REAL PROPERTY AS DESCRIBED IN THE DEED OF TRUST AND LOCATED AT:**

1069 E ARLINGTON WAY
BOUNTIFUL, UT 84010

| Late Charge | If your monthly installment is not paid in full within 10 day(s) after it is due, you will be charged a late charge equal to the GREATER of 5% of the unpaid amount of the monthly installment or $30.00. |
| Prepayment | You may prepay your loan in full or in part at any time. If you fully prepay before the final payment due date, the amount you owe will be reduced by unearned credit insurance charges, if any. If you pay off your loan early, you may have to pay a prepayment fee and you will not be entitled to a refund of that part of the Finance Charge consisting of any prepaid finance charges. |

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and fees.

---

**The Settlement Statement provides your disbursements and the itemization of the Amount Financed.**

---

### ABOUT THE SECURITY:

| Your Obligation to Insure | You shall keep the structures located on the real property securing your loan insured against damage caused by fire and other physical hazards, name us as a loss payee and deliver to us a loss payable endorsement. If insurance covering the real property is canceled or expires while your loan is outstanding and you do not reinstate the coverage, we may obtain, at our option, hazard insurance coverage protecting our interest in the real property as outlined below. |
| Real Property Taxes and Homeowners Insurance | Homeowners Insurance covering fire and other hazards on the real property security is required, naming us as a loss payee for the term of your loan. You shall pay us on the day that monthly installments are due under this agreement, an additional sum (the "Funds") to be used to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Deed of Trust as a lien or encumbrance on the real property; (b) leasehold payments or ground rents on the real property, if any; (c) premiums for any and all insurance required by us under this agreement and the Deed of Trust ("Escrow Items"). You will pay us the Funds for Escrow Items unless we waive your obligation to pay the Funds for any or all Escrow Items. We may waive your obligation to pay us Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, you will be solely responsible for paying the amounts due for any Escrow Items directly and, if we require, you shall furnish us with receipts evidencing such payment within such time period as we may reasonably require. |
| Title Insurance | Title insurance on the real property security is required, naming us as a loss payee. You must purchase title insurance or its local equivalent protecting our lien on the real property as a condition to obtaining your loan. You may purchase title insurance from any title |

insurance provider you choose that we reasonably believe provides sufficient financial protection to us. You request such title insurance and authorize us to deduct the costs of the title insurance from your loan proceeds in order to pay the title insurance provider.

**Lender's Right to Place Hazard Insurance**

You authorize us, at our option, to obtain hazard insurance coverage on the real property in an amount not greater than the outstanding balance of principal and interest on your loan or, if known to be less, the replacement value of the real property, in the event that you fail to maintain the required hazard insurance outlined above or fail to provide adequate proof of its existence. You authorize us to charge you for the costs of this insurance. We may choose to add the insurance charges to the unpaid balance of your loan, which will accrue interest at the Contract Rate, or bill you for the annual premium on a periodic basis. The addition of the insurance charges due might increase the amount of your final monthly installment. The cost of lender-placed hazard insurance might be higher than the cost of standard insurance protecting the real property. The lender-placed insurance will not insure the contents of the real property or provide liability coverage. The insurance might not be the lowest cost coverage of its type available and you agree that we have no obligation to obtain the lowest cost coverage. We or an affiliated company might receive some benefit from the placement of this insurance and you will be charged for the full cost of the premium without reduction for any such benefit. If at any time after we have obtained this insurance, you provide adequate proof that you have subsequently purchased the required coverage, we will cancel the coverage we obtained and credit any unearned premiums to your loan.

## ABOUT YOUR LOAN REPAYMENT:

| | | | |
|---|---|---|---|
| SCHEDULED MATURITY DATE | 09/25/2032 | PREPAID FINANCE CHARGES | $11,389.17 |
| MONTHS OF CONTRACT | 312 | PRINCIPAL | $222,887.28 |
| CONTRACT RATE (per year) | 9.340% | JOINT CREDIT LIFE | $128.75 |
| AMOUNT FINANCED | $211,498.11 | | |

**Promise to Pay**

You agree to the terms of this agreement and promise to pay us the principal (Amount Financed plus prepaid finance charges consisting of Origination Fee/Points and Closing Fee, and any odd days interest reflected in your settlement statement) plus interest which is computed at a rate of 9.340% (the "Contract Rate"). You agree to pay us in monthly installments as stated in the Payments provision of this agreement. You also agree to pay us: (a) other charges as provided in this agreement; (b) credit insurance charges, if any; (c) collection costs permitted by applicable law, including reasonable attorneys' fees otherwise due under your Deed of Trust and (d) any other charges reflected in your settlement statement.

| | |
|---|---|
| **Interest** | Interest will be charged on the unpaid principal until the full amount of principal has been paid. You will pay us interest at a yearly Contract Rate of 9.340%. |
| | The interest rate required by this provision is the rate you will pay both before and after any default as described in this agreement. |
| **Payments** | **Time and Place of Payments** |
| | You will pay us principal and interest by paying your monthly installments. |
| | You will make your monthly installments to us on the same day of each month beginning on or about 10/25/2006. You will make these monthly installments every month until you have paid all of the principal and interest and any other charges described herein that you may owe under this agreement. Your monthly installments will be applied to interest before principal. If, on the Scheduled Maturity Date, 09/25/2032, you still owe amounts under this agreement, you will pay those amounts in full on that date, which amount will include interest at the then current Contract Rate or any such other rate as required by law. |
| | You will make your monthly installments at the address shown on page one or at the address shown on your monthly billing statement or at a different place that we may give you. |
| | **Amount of Monthly Installments** |
| | Your monthly installments will be in the amount of $1,904.31, plus the amount of any optional insurance you elected. |
| **Prepayment** | Subject to the prepayment fee described below, you may prepay your loan in full or in part at any time. If you fully prepay before the final payment due date, the amount you owe will be reduced by unearned credit insurance charges, if any. If you pay off your loan early, you may have to pay a prepayment fee and you will not be entitled to a refund of that part of the Finance Charge consisting of any prepaid finance charges. |
| **Prepayment Fee** | Your loan contains a prepayment fee. If you prepay the entire outstanding balance of your loan at any time within the first 24 months from the Date of Loan, 09/25/2006, you agree to pay a prepayment fee equal to 6 months interest at the Contract Rate in effect at the time of prepayment on the unpaid principal balance. No prepayment fee will be imposed: (a) if your loan is refinanced by another loan with us; (b) after the first 24 months; (c) if your loan is prepaid from the proceeds of any insurance; or (d) if we sue you. |
| **Late Charge** | If your monthly installment is not paid in full within 10 day(s) after it is due, you will be charged a late charge equal to the GREATER of 5% of the unpaid amount of the monthly installment or $30.00. |

| | |
|---|---|
| **Bad Check Charge** | You agree to pay $20.00 each time any check or payment is made on your loan by any means, including but not limited to, a check or ACH (our Authorization to Debit Account), which is returned unpaid by your bank or other financial institution for any reason. |
| **Additional Charges** | You agree to pay any amounts actually incurred by us for services rendered in connection with the opening and servicing of your loan, as allowed by law. These amounts may include fees for appraisals, title examination, title insurance or its local equivalent, fees and taxes paid to public officials in connection with recording, releasing or satisfying the Deed of Trust and other taxes as shown in the Settlement Statement incorporated herein by this reference. You also agree to pay any other amounts incurred by us in connection with the servicing of your loan including any amounts that we may (but need not) pay or that are otherwise due under the Deed of Trust, incorporated herein by this reference. |
| **Default** | If you fail to make any monthly installment after it becomes due or fail to comply with the terms of the Deed of Trust, we may require that you pay us, at once and without prior notice or demand, the unpaid balance of your loan plus accrued interest and any applicable charges in this agreement as authorized. |
| **Security Interest** | You agree to give us a security interest in the real property as described in the Deed of Trust. |

## ABOUT OUR RELATIONSHIP:

| | |
|---|---|
| **Exchange of Information** | You understand and agree that we will call you from time to time to discuss your financial needs and any loan products that may be of interest to you as may be permitted by applicable law. For more information regarding our privacy practices, please refer to our Privacy Statement, which is included with your loan documents. You agree that the Department of Motor Vehicles (or your state's equivalent of such department) may release your residence address to us, should it become necessary to locate you. |
| **Credit Bureau Reporting** | If you fail to fulfill the terms of your loan, a negative report reflecting on your credit record may be submitted to a Credit Reporting Agency. |
| **Telephone Monitoring** | You agree that we may listen to and/or record telephone calls between you and our representatives for quality assurance purposes. |
| **Insurance** | Credit insurance is optional. Any applicable insurance disclosures are included with this agreement and are incorporated herein by this reference. |
| **Alternative Dispute Resolution** | The terms of the Arbitration Rider signed by you as part of your loan transaction are incorporated herein by this reference. |

| Applicable Law | The terms and conditions of this agreement will be governed by the Mortgage Lending and Servicing Act, Title 70D, Utah Code Annotated. |
|---|---|
| Applicable Law | If this loan is a first mortgage, it is a federally related loan made at an agreed rate authorized by Section 501(a), Part A, Title V, Public Law 96-221, also known as Section 1735f-7(a), Title 12, United States Code. |

If any provision of this agreement is finally determined to be void or unenforceable under any law, rule, or regulation, all other provisions of this agreement will remain valid and enforceable. Our failure to enforce any provision(s) to this agreement shall not be deemed to constitute a waiver of such term(s). In order for any amendment to this agreement to be valid, it must be agreed to by you and us.

**You acknowledge that before signing this agreement, you have read and received this agreement which includes the Federal Truth-in-Lending disclosure and, as applicable, any other riders and/or disclosures incorporated herein by reference. By signing below, you agree to observe the terms and conditions of this agreement.**

As required by Utah law, you are notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

Borrower: _____   Date: 9/25/06
JOHN F. LAUTI

Borrower: _____   Date: 9/25/06
HEATHER D. LAUTI

Witness: _____

# ALLONGE TO NOTE

Account Number:

Allonge to Note Dated:      **09/25/2006**

And Executed by:      **JOHN F LAUTI**

**HEATHER D LAUTI**

Property Address:      **1069 E ARLINGTON WAY**

**BOUNTIFUL, UT  84010-2304**

Loan Amount:      **$222,887.28**

Pay to the order of:      **U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF8
MASTER PARTICIPATION TRUST**

Without recourse:      **HOUSEHOLD FINANCE CORPORATION III, BY
CALIBER HOME LOANS, INC. AS ITS
ATTORNEY-IN-FACT**

By:      Adan Roesner
Title:      Vice President

# ALLONGE TO NOTE

Account Number:

Allonge to Note Dated:      **09/25/2006**

And Executed by:            **JOHN F LAUTI**

                            **HEATHER D LAUTI**

Property Address:           **1069 E ARLINGTON WAY**
                            **BOUNTIFUL, UT  84010-2304**

Loan Amount:                **$222,887.28**

Pay to the order of:        _____


Without recourse:           **U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF8**
                            **MASTER PARTICIPATION TRUST, BY CALIBER**
                            **HOME LOANS, INC., AS ITS ATTORNEY IN FACT**


By:                         _Adan Roesner_
Title:                      Vice President

RICHARD T. MAUGHAN
DAVIS COUNTY, UTAH  RECORDER
4/4/2016 12:49:00 PM
FEE $10.00 Pgs: 1
DEP eCASH  REC'D FOR HALLIDAY & WATKINS P (

When recorded mail to:
Halliday, Watkins & Mann, P.C.
376 East 400 South, Suite 300
Salt Lake City, UT 84111

_____

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SUBSTITUTION OF TRUSTEE

WHEREAS, John F. Lauti and Heather Dawn Lauti was the original Trustor(s), First American Title Insurance Agency was the original Trustee, and Household Finance Corporation III was the original Beneficiary under that certain Deed of Trust dated 09/25/2006 and recorded on September 28, 2006 as Entry Number 2205880, in Book 4127, at Page 1264-1269 of the official records of the Recorder of Davis County, Utah, and

WHEREAS, the Deed of Trust encumbers real property more particularly described as:

Lot 18, OAKRIDGE MANOR SUBDIVISION PLAT B, according to the Official Plat thereof on file and of record in the Davis County Recorder`s Office.

NOW THEREFORE, the undersigned hereby substitutes Paul M. Halliday, Jr., 376 East 400 South, Suite 300, Salt Lake City, UT 84111 as Successor Trustee under said Deed of Trust. The undersigned beneficiary hereby ratifies and confirms all actions taken on its behalf by the Substitute Trustee prior to the recording of this instrument.

BENEFICIARY

Christiana Trust, a division of Wilmington Savings Fund Society, FSB, as indenture trustee, for the CSMC 2014-RPL3 Trust, Mortgage-Backed Notes, Series 2014-RPL3, by Select Portfolio Servicing, Inc., as attorney-in-fact

By: _____  3·31·16

Name: _____ Patrick Riquelme
Title: _____ Document Control Officer
Select Portfolio Servicing, Inc.
Date: 03/31/2016

STATE OF UTAH          )
COUNTY OF SALT LAKE    )

On this __31__ day of __March__, in the year 20__16__, before me _____ Erin Webster _____, a notary public, personally appeared Patrick Riquelme  Personally Known , a
Doc. Control Officer _____ of Select Portfolio Servicing, Inc., proved on the basis of satisfactory evidence to be the person whose name is subscribed to this instrument, and acknowledged that he/she executed the same. Witness my hand and official seal.

_____
Notary Public

ERIN WEBSTER
Notary Public  State of Utah
My Commission Expires on:
August 22, 2017
Comm. Number: 669589

1

UT001

RETURN TO:
David B. Boyce
2115 Dallin St.

B 4734 P 1243
RICHARD T. MAUGHAN
DAVIS COUNTY, UTAH RECORDER
3/17/2009 3:11:00 PM
FEE $10.00 Pgs: 1
DEP eCASH  REC'D FOR INWEST TITLE SERVICES

## SUBSTITUTION OF TRUSTEE

DAVID B. BOYCE, a member of the Utah State Bar, located at 2115 Dallin St., SLC, UT 84109, is hereby appointed Successor Trustee under the Trust Deed executed by John F. Lauti and Heather Dawn Lauti, as Trustors, in which Household Finance Corporation III is named the original Beneficiary, and First American Title Insurance Agency as Trustee, and recorded on September 28, 2006, with recorder's Entry No. 2205880, Davis County, Utah, covering real property described as follows:

LOT 18, OAKRIDGE MANOR SUBDIVISION PLAT B, according to the official plat thereof on file and of record in the Davis County Recorder's Office.

The undersigned Beneficiary hereby ratifies and confirms all actions taken on its behalf by the Successor Trustee prior to the recording of this instrument.

Household Finance Corporation III

_____    Dated ___3-16-09___

By: Bethany Hood
Its: **Attorney in Fact**

STATE OF Minnesota        )
County of Dakota          )ss.

On _3-16-09_ before me, ___Ashley Olson___, Notary Public, personally appeared ___Bethany Hood___, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of this State that the foregoing paragraph is true and correct.

Witness my hand and official seal

_____
Notary Signature

Ashley Elizabeth Olson
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2014

WHEN RECORDED MAIL TO

<sub>NAME</sub> ⌐ Records Processing Services ⌐

<sub>STREET ADDRESS</sub>  577 Lamont Rd

<sub>CITY & STATE</sub>  Elmhurst, IL 60126 ⌐

SPACE ABOVE THIS LINE FOR RECORDER'S USE

(Page 1 of 6)

## DEED OF TRUST

☐ IF THIS BOX IS CHECKED, THIS DEED OF TRUST SECURES FUTURE ADVANCES.

THIS DEED OF TRUST is made this __25TH__ day of __SEPTEMBER__ , 20 __06__ , among the Trustor(s),
__JOHN F. LAUTI AND HEATHER DAWN LAUTI, HUSBAND AND WIFE AS JOINT TENANTS.__
(herein
"Borrower"), __FIRST AMERICAN TITLE INSURANCE AGENCY__
(herein "Trustee") and the Beneficiary, __HOUSEHOLD FINANCE CORPORATION III__ ,
a corporation organized and existing under the laws of __DELAWARE__ whose address is
__3621 WEST 3500 SOUTH, WILLOW WOOD SHOPPING CTR, WEST VALLEY C, UT  84119__
(herein "Lender").

The following paragraph preceded by a checked box is applicable.

☐ x ☐ WHEREAS, Borrower is indebted to Lender in the principal sum of $ __222,887.28__ ,
evidenced by Borrower's Loan Agreement dated __SEPTEMBER 25, 2006__ and any extensions or renewals thereof
(including those pursuant to any Renegotiable Rate Agreement) (herein "Note"), providing for monthly installments of
principal and interest, including any adjustments to the amount of payments or the contract rate if that rate is variable,
with the balance of the indebtedness, if not sooner paid, due and payable on __SEPTEMBER 25, 2032__;

☐ WHEREAS, Borrower is indebted to Lender in the principal sum of $ _____ , or so much thereof
as may be advanced pursuant to Borrower's Revolving Loan Agreement dated _____ and
extensions and renewals thereof (herein "Note"), providing for monthly installments, and interest at the rate and under
the terms specified in the Note, including any adjustments in the interest rate if that rate is variable, and providing for a
credit limit stated in the principal sum above and an initial advance of $ _____;

TO SECURE to Lender the repayment of the indebtedness, including future advances, evidenced by the Note,
with interest thereon at the applicable contract rate (including any adjustments to the amount of payment or the contract
rate if that rate is variable) and other charges; the payment of all other sums, with interest thereon, advance in accordance
herewith to protect the security of this Deed of Trust; and the performance of the convenants and agreements of Borrower
herein contained, Borrower, in consideration of the indebtedness herein recited and the trust herein created, irrevocably
grants and conveys to Trustee, in trust with power of sale, the following described property
located in the County of __DAVIS__ State of Utah:

LOT 18, OAKRIDGE MANOR SUBDIVISION PLAT B, ACCORDING TO THE
OFFICIAL PLAT THEREOF ON FILE AND OF RECORD IN THE DAVIS
COUNTY RECORDER'S OFFICE.

which has the address of __1069 E ARLINGTON WAY,__                              __BOUNTIFUL__
                                        (Street)                                              (City)

Utah __84010__                (herein "Property Address");
        (Zip Code)

11-11-05 DOT

WHEN RECORDED MAIL TO :

┌ Records Processing Services ┐
  577 Lamont Rd
  Elmhurst, IL 60126
└                            ┘

RICHARD T. MAUGHAN
DAVIS COUNTY, UTAH RECORDER
9/28/2006 3:10:00 PM
FEE $20.00 Pgs: 6
DEP eCASH REC'D FOR FIRST AMERICAN TITLE

(Page 1 of 6)

# DEED OF TRUST

☐ **IF THIS BOX IS CHECKED, THIS DEED OF TRUST SECURES FUTURE ADVANCES.**

THIS DEED OF TRUST is made this __25TH__ day of __SEPTEMBER__, 20 __06__, among the Trustor(s),
__JOHN F. LAUTI AND HEATHER DAWN LAUTI. HUSBAND AND WIFE AS JOINT TENANTS.__ (herein
"Borrower"), __FIRST AMERICAN TITLE INSURANCE AGENCY__
(herein "Trustee") and the Beneficiary, __HOUSEHOLD FINANCE CORPORATION III__ whose address is
a corporation organized and existing under the laws of __DELAWARE__
__3621 WEST 3600 SOUTH, WILLOW WOOD SHOPPING CTR, WEST VALLEY C, UT   84119__
(herein "Lender").

The following paragraph preceded by a checked box is applicable.

☒ WHEREAS, Borrower is indebted to Lender in the principal sum of $ __222,887.28__
evidenced by Borrower's Loan Agreement dated __SEPTEMBER 25, 2006__ and any extensions or renewals thereof
(including those pursuant to any Renegotiable Rate Agreement) (herein "Note"), providing for monthly installments of
principal and interest, including any adjustments to the amount of payments or the contract rate if that rate is variable,
with the balance of the indebtedness, if not sooner paid, due and payable on __SEPTEMBER 25, 2032__;

☐ WHEREAS, Borrower is indebted to Lender in the principal sum of $ _____, or so much thereof
as may be advanced pursuant to Borrower's Revolving Loan Agreement dated _____ and
extensions and renewals thereof (herein "Note"), providing for monthly installments, and interest at the rate and under
the terms specified in the Note, including any adjustments in the interest rate if that rate is variable, and providing for a
credit limit stated in the principal sum above and an initial advance of $ _____;

TO SECURE to Lender the repayment of the indebtedness, including future advances, evidenced by the Note,
with interest thereon at the applicable contract rate (including any adjustments to the amount of payment or the contract
rate if that rate is variable) and other charges; the payment of all other sums, with interest thereon, advance in accordance
herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower
herein contained, Borrower, in consideration of the indebtedness herein recited and the trust herein created, irrevocably
grants and conveys to Trustee, in trust with power of sale, the following described property
located in the County of __DAVIS__ State of Utah:

LOT 18, OAKRIDGE MANOR SUBDIVISION PLAT B, ACCORDING TO THE
OFFICIAL PLAT THEREOF ON FILE AND OF RECORD IN THE DAVIS
COUNTY RECORDER'S OFFICE.

which has the address of __1089 E ARLINGTON WAY,__                              __BOUNTIFUL__
                                    (Street)                                        (City)

Utah ____ 84010 ____              (herein "Property Address");

'11-11-08 DOT

(Page 2 of 6)

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property".

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest (including any variations in interest resulting from changes in the Contract Rate that may be specified in the Note) on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to paragraph 3. Payments due under the Note and this Deed of Trust shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Deed of Trust is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Deed of Trust be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) electronic funds transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in paragraph 12. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each monthly payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Deed of Trust or performing the covenants and agreements secured by this Deed of Trust.

**2. Application of Payments or Proceeds.** Except as otherwise described in this paragraph or as may be required by the Note and/or applicable law, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under paragraph 3. Such payments shall be applied to each monthly payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Deed of Trust, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent monthly payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one monthly payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the monthly payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more monthly payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or miscellaneous proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the monthly payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Deed of Trust as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under paragraph 5; and (d) Mortgage Insurance premiums, if any. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Deed of Trust, as the phrase "covenant and agreement" is used in paragraph 7. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under paragraph 7 and pay such amount and Borrower shall then be obligated under paragraph 7 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with paragraph 12 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount: (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 35000), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter (herein "RESPA"); and (b) not to

11-11-05 DOT

exceed the maximum amount a lender can require under RESPA. As used in this Deed of Trust, RESPA refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the loan does not qualify as a "federally related mortgage loan" under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Deed of Trust Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by the Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the applicable Contract Rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower and all other parties who are or hereafter may become secondarily liable shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to

11-11-05 DOT

commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The applicable law contained in the Note shall control. Where no applicable law is contained therein, the state and local laws of the jurisdiction in which the Property is located shall apply except where such laws conflict with Federal law, in which case Federal law applies. The foregoing sentence shall not limit the applicability of Federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses," and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust, if requested, at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property.** If Borrower sells or transfers all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) a transfer by devise, descent, or by operation of law upon the death of a joint tenant, (c) the grant of any leasehold interest of three years or less not containing an option to purchase, (d) the creation of a purchase money security interest for household appliances, (e) a transfer to a relative resulting from the death of the Borrower, (f) a transfer where the spouse or children of the Borrower become an owner of the property, (g) a transfer resulting from a decree of dissolution of marriage, legal separation agreement, or from an incidental property settlement agreement, by which the spouse of the Borrower becomes an owner of the property, (h) a transfer into an inter vivos trust in which the Borrower is and remains a beneficiary and which does not relate to a transfer of rights of occupancy in the property, or (i) any other transfer. Borrower shall cause to be submitted information required by Lender to evaluate the transferee as if a new loan were being made to the transferee. Borrower will continue to be obligated under the Note and this Deed of Trust unless Lender releases Borrower in writing. If Lender does not agree to such sale or transfer, Lender may declare all of the sums secured by this Deed of Trust to be immediately due and payable. If Lender exercises such option to accelerate, Lender shall deliver or mail Borrower notice of acceleration in accordance with Paragraph 12 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed or delivered within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies.** Except as provided in paragraph 16 hereof, or as otherwise required by law, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If the power of sale is invoked, Trustee shall execute a written notice of the occurrence of an event of default and of the election to cause the Property to be sold and shall record such notice in each county which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable

11-11-05 DOT

law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the property by advertising in accordance with applicable law. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, Trustee's fees, reasonable attorney's fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto or to the county clerk of the county in which the sale took place.

18. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 16 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. Assignment of Rents; Appointment of Receiver; Lender in Possession. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

20. Reconveyance. Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

21. Substitute Trustee. Lender may from time to time in Lender's discretion remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

22. Request for Notice. Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address.

23. Arbitration Rider to Note. The Arbitration Rider attached to and made a part of the Note is hereby incorporated by reference and made a part of this Deed of Trust.

(THIS SPACE INTENTIONALLY LEFT BLANK)

## REQUEST FOR NOTICE OF DEFAULT
## AND FORECLOSURE UNDER SUPERIOR
## MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

**IN WITNESS WHEREOF,** Borrower has executed and sealed this Deed of Trust.

_____ (SEAL)
John F. Lauti                                        -Borrower

_____ (SEAL)
Heather Dawn Lauti AKA Heather D. Lauti-Borrower

STATE OF UTAH, ___Salt Lake_____ County ss:

On this ___25th___ day of ___September_____, 20 _06_, personally appeared before me ___John F. Lauti & Heather Dawn Lauti AKA Heather D. Lauti___, the signer(s) of the above instrument, who duly acknowledged to me that ___t hey___ executed the same.

My Commission expires: Aug 13, 2007

_____
Notary Public residing at:
3802 E N Little Cottonwood Cyn
Sandy UT 84092

SUSAN DESPAIN
Notary Public
State of Utah
My Comm. Expires Aug 13, 2007
3802 E N Little Cottonwood Cyn Sandy UT 84092

On this _____ day of _____, 20 ____, personally appeared before me _____, the signer(s) of the above instrument, who duly acknowledged to me that _____ he _____ executed the same.

My Commission expires:

_____
Notary Public residing at:

_____


## REQUEST FOR RECONVEYANCE

TO TRUSTEE:

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate not held by you under this Deed of Trust to the person or persons legally entitled thereto.

Date: _____     _____


_____ **(Space Below This Line Reserved For Lender and Recorder)** _____


11-11-05 DOT

# AMORTIZATION SCHEDULE

---

**Name:**     **JOHN F. LAUTI**
              **HEATHER D. LAUTI**

**Address:**   **1069 E ARLINGTON WAY**
               **BOUNTIFUL, UT 84010**

---

**Principal: $222887.28**

**Term: 312 Months**

**Date: 09/25/2006**                        **APR: * 9.992%**

**Payment without Insurance: $1904.31**     **Origination Fee/Points: $11138.58**

**Payment with Insurance: $2033.06**

---

This information is for illustration purposes only and is not intended to be a binding commitment.

The amortization schedule is based on the loan payment and excludes any credit insurance premiums.

The amortization schedule assumes that you will make all your payments monthly so that we receive them on or before your scheduled due date. If your payments are not received on the scheduled due date, this schedule will be changed. The amortization schedule excludes taxes, homeowner's insurance, and assumes a monthly payment option.

* The APR (annual percentage rate) listed includes the following assumptions: the costs of the loan, all prepaid finance charges including fees/points and interest divided by the contract term of the loan. The contract term of your loan is the number of years your loan is for.

09/25/2006 12:53                        Page 1 of 2

## AMORTIZATION SCHEDULE

**Name:**     JOHN F. LAUTI
              HEATHER D. LAUTI

**Principal: $222887.28**                      **Term: 312 Months**

**Contract Rate: 9.340%**                      **Loan Date: 09/25/2006**

**APR: * 9.992%**                              **Origination Fee/Points: $11138.58**

**Payment without Insurance: $1904.31**        **Payment with Insurance: $2033.06**

| Year | Contract Rate | Payment without Insurance | Principal | Interest | New Balance |
|------|------|------|------|------|------|
| 1 | 9.340 | 22851.72 | 2123.42 | 20728.30 | 220763.86 |
| 2 | 9.340 | 22851.72 | 2330.47 | 20521.25 | 218433.39 |
| 3 | 9.340 | 22851.72 | 2557.69 | 20294.03 | 215875.70 |
| 4 | 9.340 | 22851.72 | 2807.08 | 20044.64 | 213068.62 |
| 5 | 9.340 | 22851.72 | 3080.78 | 19770.94 | 209987.84 |
| 6 | 9.340 | 22851.72 | 3381.16 | 19470.56 | 206606.68 |
| 7 | 9.340 | 22851.72 | 3710.85 | 19140.87 | 202895.83 |
| 8 | 9.340 | 22851.72 | 4072.66 | 18779.06 | 198823.17 |
| 9 | 9.340 | 22851.72 | 4469.77 | 18381.95 | 194353.40 |
| 10 | 9.340 | 22851.72 | 4905.58 | 17946.14 | 189447.82 |
| 11 | 9.340 | 22851.72 | 5383.90 | 17467.82 | 184063.92 |
| 12 | 9.340 | 22851.72 | 5908.85 | 16942.87 | 178155.07 |
| 13 | 9.340 | 22851.72 | 6484.99 | 16366.73 | 171670.08 |
| 14 | 9.340 | 22851.72 | 7117.30 | 15734.42 | 164552.78 |
| 15 | 9.340 | 22851.72 | 7811.26 | 15040.46 | 156741.52 |
| 16 | 9.340 | 22851.72 | 8572.89 | 14278.83 | 148168.63 |
| 17 | 9.340 | 22851.72 | 9408.78 | 13442.94 | 138759.85 |
| 18 | 9.340 | 22851.72 | 10326.17 | 12525.55 | 128433.68 |
| 19 | 9.340 | 22851.72 | 11333.01 | 11518.71 | 117100.67 |
| 20 | 9.340 | 22851.72 | 12438.03 | 10413.69 | 104662.64 |
| 21 | 9.340 | 22851.72 | 13650.78 | 9200.94 | 91011.86 |
| 22 | 9.340 | 22851.72 | 14981.78 | 7869.94 | 76030.08 |
| 23 | 9.340 | 22851.72 | 16442.57 | 6409.15 | 59587.51 |
| 24 | 9.340 | 22851.72 | 18045.78 | 4805.94 | 41541.73 |
| 25 | 9.340 | 22851.72 | 19805.32 | 3046.40 | 21736.41 |
| 26 | 9.340 | 22851.72 | 21736.41 | 1115.31 | 0.00 |
| **Totals** | | 594144.72 | 222887.28 | 371257.44 | |

When recorded return to :
After Recording, Return To: Richmond Monroe Group
82 Jim Linegar LN
Branson West, MO. 65737

RICHARD T. MAUGHAN
DAVIS COUNTY, UTAH RECORDER
11/16/2015 12:37:00 PM
FEE $14.00 Pgs: 3
DEP eCASH REC'D FOR HALLIDAY & WATKINS P

---

Space Above This Line For Recorder's Use

Case No:        -                    Control Number:
Prepared by:    **Carolyn Warren**    Caliber Document ID#
MERS MIn #:
Parcel ID:

## NOTICE OF ASSIGNMENT OF BENEFICIAL INTEREST

The undersigned hereby gives notice that it assigned and transferred all of its rights, title, and interest under the trust deed described below, together with all of the indebtedness secured thereby, to **See Attached Exhibit " B "** whose address is _____.

The trust deed was executed by **JOHN F. LAUTI and HEATHER DAWN LAUTI, HUSBAND AND WIFE AS JOINT TENANTS** as trustor, in which **HOUSEHOLD FINANCE CORPORATION III** was the named beneficiary, **FIRST AMERICAN TITLE INSURANCE AGENCY** was the named trustee, and it was filed for record 9/28/2006, with recorder's entry number **2205880**, in Book **4127** , Page **1264, DAVIS** County, Utah. This Notice of Assignment of Beneficial Interest affects the property located in **DAVIS** County, State of Utah, and is described more specifically as follows.

Legal Description:    **SEE ATTACHED 'EXHIBIT A'**
*Property Address : 1069 E Arlington Way, Bountiful, Utah 84010*

Dated this **8th day of April of 2015**

County of Oklahoma )
                    :SS
State of Oklahoma )

**U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF8 MASTER PARTICIPATION TRUST, BY CALIBER HOME LOANS, INC., AS ITS ATTORNEY IN FACT**

By: _____

Printed Name    **Roy Lacey**

Title:          **Authorized Signatory**

On **April 8, 2015, Roy Lacey, a(n) Authorized Signatory** of U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF8 MASTER PARTICIPATION TRUST, BY CALIBER HOME LOANS, INC., AS ITS ATTORNEY IN FACT appeared before me and acknowledge that he/she executed the foregoing instrument.



Notary Name:    **Hailey Woodley**

My Commission Expires:    **6/1/2016**

## EXHIBIT A

LOT 18, OAKRIDGE MANOR SUBDIVISION PLAT B, ACCORDING TO THE
OFFICIAL PLAT THEREOF ON FILE AND OF RECORD IN THE DAVIS
COUNTY RECORDER'S OFFICE.

**EXHIBIT B**

Assignee: Christiana Trust, a division of Wilmington Savings Fund Society, FSB, as indenture trustee, for
the CSMC 2014-RPL3 Trust, Mortgage-Backed Notes, Series 2014-RPL3
C/O Select Portfolio Servicing, Inc.
3815 South West Temple
Salt Lake City, UT 84115

RICHARD T. MAUGHAN
DAVIS COUNTY, UTAH RECORDER
04/27/2015 01:41 PM
FEE $16.00 Pgs: 2
DEP RT REC'D FOR TD SERVICE COMPAN
Y

When Recorded Mail To:
T.D. Service Company
LR Department (Cust# 673)
4000 W Metropolitan Dr., Ste. 400
Orange, CA 92868

_____

Space Above This Line For Recorder's Use

Case No:          -
Prepared by:       Carolyn Warren
MERS MIn #:
Parcel ID:

## NOTICE OF ASSIGNMENT OF BENEFICIAL INTEREST

The undersigned hereby gives notice that it assigned and transferred all of its rights, title, and interest under the trust deed described below, together with all of the indebtedness secured thereby, to **U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF8 MASTER PARTICIPATION TRUST** whose address is **13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134** .

The trust deed was executed by **JOHN F. LAUTI and HEATHER DAWN LAUTI, HUSBAND AND WIFE AS JOINT TENANTS** as trustor, in which **HOUSEHOLD FINANCE CORPORATION III** was the named beneficiary, **FIRST AMERICAN TITLE INSURANCE AGENCY** was the named trustee, and it was filed for record 9/28/2006, with recorder's entry number 2205880, in Book **4127** , Page **1264**, DAVIS County, Utah. This Notice of Assignment of Beneficial Interest affects the property located in DAVIS County, State of Utah, and is described more specifically as follows.

Legal Description:      **SEE ATTACHED 'EXHIBIT A'**

Dated this 8th day of April of 2015

County of Oklahoma )
                                :SS
State of Oklahoma )

HOUSEHOLD FINANCE CORPORATION III, BY CALIBER HOME LOANS, INC., AS ITS ATTORNEY IN FACT

By: _____

Printed Name        **Roy Lacey**

Title:                **Authorized Signatory**

On **April 8, 2015**, Roy Lacey, a(n) **Authorized Signatory** of **HOUSEHOLD FINANCE CORPORATION III, BY CALIBER HOME LOANS, INC., AS ITS ATTORNEY IN FACT** appeared before me and acknowledge that he/she executed the foregoing instrument.

Notary Name:    Hailey Woosley                My Commission Expires:        **6/1/2016**

EXHIBIT A

LOT 18, OAKRIDGE MANOR SUBDIVISION PLAT B, ACCORDING TO THE
OFFICIAL PLAT THEREOF ON FILE AND OF RECORD IN THE DAVIS
COUNTY RECORDER'S OFFICE.

Recording Requested By:
RICHMOND MONROE GROUP

When Recorded Return To:

RICHMOND MONROE GROUP
PO BOX 458
KIMBERLING CITY, MO 65686

---

### CORPORATE ASSIGNMENT OF DEED OF TRUST
#### "LAUTI"

**INVESTOR #: V01**
Assignment Prepared on: November 16th, 2015.

Assignor: U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF8 MASTER PARTICIPATION TRUST, BY CALIBER
HOME LOANS, INC., AS ITS ATTORNEY IN FACT at CALIBER HOME LOANS, INC. 13801 WIRELESS WAY,
OKLAHOMA CITY, OK 73134.
Assignee: CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS INDENTURE
TRUSTEE, FOR THE CSMC 2014-RPL3 TRUST, MORTGAGE-BACKED NOTES, SERIES 2014-RPL3  at C/O
SELECT PORTFOLIO SERVICING, INC. 3815 SOUTH WEST TEMPLE, SALT LAKE CITY, UT  84115.

Executed By: JOHN F. LAUTI AND HEATHER DAWN LAUTI HUSBAND AND WIFE AS JOINT TENANTS  To:
HOUSEHOLD FINANCE CORPORATION III
Date of Deed of Trust: 09/25/2006 Recorded:  09/28/2006  in Book/Reel/Liber: 4127 Page/Folio: 1264 as Instrument
No.: 2205880  In Davis County , State of Utah.

Assessor's/Tax ID No. 05-052-0018

Property Address:  1069 E ARLINGTON WAY, BOUNTIFUL, UT  84010

Legal:  LOT 18, OAKRIDGE MANOR SUBDIVISION PLAT B, ACCORDING TO THE OFFICIAL PLAT THEREOF ON
FILE AND OF RECORD IN THE DAVIS COUNTY RECORDER'S OFFICE.

TAX PARCEL NO. 05-052-0018

   KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and
other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is
hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust
having an original principal sum of $222,887.28 with interest, secured thereby, together with all moneys now owing
or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee,
the Assignor's interest under the Deed of Trust.

   TO HAVE AND TO HOLD the said Deed of Trust, and also the said property unto the said Assignee forever,
subject to the terms contained in said Deed of Trust.  IN WITNESS WHEREOF, the assignor has executed these
presents the day and year first above written:

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF8 MASTER PARTICIPATION TRUST, BY CALIBER HOME
LOANS, INC., AS ITS ATTORNEY IN FACT
On ___11/18/2015___

By: _____
    Stoner Wade, Authorized Signatory


STATE OF __Oklahoma____
COUNTY OF __Oklahoma____

On __11/18/2015__, before me, _____, a Notary Public in and for __Oklahoma____ in
the State of __Oklahoma____, personally appeared Stoner Wade, ___Authorized Signatory___, U.S. BANK
TRUST, N.A., AS TRUSTEE FOR LSF8 MASTER PARTICIPATION TRUST, BY CALIBER HOME LOANS, INC., AS
ITS ATTORNEY IN FACT, personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Notary Expires 6/1/16

HAILEY WOOSLEY
NOTARY
# 12005181
EXP. 06/01/16
PUBLIC
STATE OF OKLAHOMA

(This area for notarial seal)

**BILL KOCH**

RICHARD T. MAUGHAN
DAVIS COUNTY, UTAH RECORDER
2/27/2018 8:25:00 AM
FEE $10.00 Pgs: 1
DEP eCASH  REC'D FOR MERIDIAN ASSET SER

**UTAH**
COUNTY OF **DAVIS**

PREPARED BY: SELECT PORTFOLIO SERVICING, INC.
WHEN RECORDED MAIL TO:

_____
_____
_____
_____, PH.

## ASSIGNMENT OF DEED OF TRUST

FOR VALUABLE CONSIDERATION, the receipt thereof is hereby acknowledged, **CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS INDENTURE TRUSTEE, FOR THE CSMC 2014-RPL3 TRUST, MORTGAGE-BACKED NOTES, SERIES 2014-RPL3**, located at **C/O SELECT PORTFOLIO SERVICING, INC. 3217 S. DECKER LAKE DR., SALT LAKE CITY, UT 84119**, Assignor, does                          hereby                          assign                          to **MIGLO INVESTORS, L.P.** _____, located                         at _____
**6011 Connection Drive, Irving, Texas 75039** , _____, _____, Assignee, its successors and assigns, all of Assignor's rights, title and interest accrued or to accrue under that certain Deed of Trust dated **SEPTEMBER 25, 2006** executed by **JOHN F. LAUTI AND HEATHER DAWN LAUTI, HUSBAND AND WIFE AS JOINT TENANTS**, Trustor, to **FIRST AMERICAN TITLE INSURANCE AGENCY**, Original Trustee, for the benefit of **HOUSEHOLD FINANCE CORPORATION III**, Original Beneficiary, and recorded in Book 4127 at Page 1264 as Entry No. 2205880 in the County Recorder's records for **DAVIS** County, State of **UTAH** and covering real property situated in said county described as follows:

LEGAL DESCRIPTION: LOT 18, OAKRIDGE MANOR SUBDIVISION PLAT B, ACCORDING TO THE OFFICIAL PLAT THEREOF ON FILE AND OF RECORD IN THE DAVIS COUNTY RECORDER'S OFFICE.  # 9-28-2006 #1
IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed this **OCTOBER 12, 2017.**
**CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS INDENTURE TRUSTEE, FOR THE CSMC 2014-RPL3 TRUST, MORTGAGE-BACKED NOTES, SERIES 2014-RPL3, BY SELECT PORTFOLIO SERVICING, INC. ITS ATTORNEY IN FACT**

_Kiersten Balch_
**KIERSTEN BALCH, ASSISTANT VICE PRESIDENT**

STATE OF **IDAHO**              COUNTY OF **BONNEVILLE**     ) ss.

On **OCTOBER 12, 2017**, before me, **CHRISTINA ROMINE**, personally appeared **KIERSTEN BALCH** known to me to be the **ASSISTANT VICE PRESIDENT** of the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

_Christina Romine_
CHRISTINA ROMINE (COMMISSION EXP. 06/01/2022)
NOTARY PUBLIC

```
CHRISTINA ROMINE
NOTARY PUBLIC
STATE OF IDAHO
```

Page 1 of 1

RICHARD T. MAUGHAN
DAVIS COUNTY, UTAH  RECORDER
8/6/2019 12:32:00 PM
FEE $40.00 Pgs: 2
DEP eCASH  REC'D FOR MERIDIAN ASSET SERVIC

Prepared By:
Sangeetha Kulagod
SOURCEPOINT
2330 Commerce Park Drive, Suite 2
PALM BAY, FL - 32905 Phone: 8557636350
Return to:

# ASSIGNMENT OF DEED OF TRUST

| Name and Address of Assignor: | Name and Address of Assignee: |
|---|---|
| MTGLQ Investors, L.P. | U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES IV TRUST |
| 2001 Ross Avenue Suite 2800 | 300 DELAWARE AVE. 9TH FL. |
| Dallas TX - 75201. | WILMINGTON DE - 19801. |

FOR VALUE RECEIVED, the receipt and sufficiency of which is hereby acknowledged, the undersigned, **MTGLQ Investors, L.P.**, "Assignor", whose address is above, does hereby grant, sell, assign, transfer and convey to **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES IV TRUST**, "Assignee," whose address is above, all interest of the undersigned Assignor in and to the following described Deed of Trust dated **09/25/2006**

**Executed by (Mortgagor (s)): JOHN F. LAUTI AND HEATHER DAWN LAUTI, HUSBAND AND WIFE AS JOINT TENANTS.**

**Original Trustee: FIRST AMERICAN TITLE INSURANCE AGENCY**

**Original Beneficiary: HOUSEHOLD FINANCE CORPORATION III**

**Filed of Record:** In Book **4127**, Page **1264**, Document/Instrument No. **2205880** in the Office of  Auditor of **DAVIS** County, **UT**, on 09/28/2006

**Property: 1069 E ARLINGTON WAY , BOUNTIFUL, UT - 84010.**

**Given:** to secure a certain Promissory Note in the amount of  **$222,887.28** payable to Beneficiary.

Together with the note(s) and obligations therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust.

TO HAVE AND TO HOLD the same unto Assignee and unto its successors and assigns forever, subject only to the terms and conditions of the above-described Deed of Trust and Promissory Note.

Assignor is the present holder of the above-described Deed of Trust.

IN WITNESS WHEREOF, this assignment was executed by the undersigned Assignor on this the _____ JUL 1 6 2019

Legal Description : **LOT 18, OAKRIDGE MANOR SUBDIVISION PLAT B, ACCORDING TO THE OFFICIAL PLAT THEREOF ON FILE AND OF RECORD IN THE DAVIS COUNTY RECORDER'S OFFICE.**

Witness my hand and seal the day and year first above written.                    MTGLQ Investors, L.P.

Erin Jemison
Title : Vice President

STATE OF  **Texas  COUNTY OF Dallas**
        This instrument was acknowledged before me on _____JUL 1 6 2019_____ by **Erin Jemison, Vice President** of **MTGLQ Investors, L.P.**, on behalf of said corporation.

Natalie Flowers
My Commission Expires
11/29/2022
ID No. 124227602

Notary Public:            Natalie Flowers
My commission expires :    NOV 2 9 2022

No title search was performed on the subject property by the preparer.  The preparer of this deed makes neither representation as to the status of the title nor property use or any zoning regulations concerning described property herein conveyed nor any matter except the validity of the form of this instrument.  Information herein was provided to preparer by Grantor/Grantee and /or their agents; no boundary survey was made at the time of this conveyance.

## **CERTIFICATE OF SERVICE**

On September 21, 2020, I served the foregoing documents described as Proof of Claim on the following individuals by electronic means through the Court's ECF program:

Lon Jenkins tr ecfmail@ch13ut.org, lneebling@ch13ut.org
Marji Hanson marji.hanson@utahbklaw.com, marjih@yahoo.com;r51045@notify.bestcase.com
United States Trustee USTPRegion19.SK.ECF@usdoj.gov


     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

                              /s/ Lauren Simonton
                              Lauren Simonton




     On September 21, 2020, I served the foregoing documents described as Proof of Claim on the following individuals by depositing true copies thereof in the United States mail at Santa Ana, California enclosed in a sealed envelope, with postage paid, addressed as follows:


| DEBTOR | JOINT DEBTOR |
|---|---|
| John F. Lauti | Heather D. Lauti |
| 1069 Arlington Way | 1069 Arlington Way |
| Bountiful, UT 84010 | Bountiful, UT 84010 |


     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

                              /s/ Lauren Simonton
                              Lauren Simonton

Fill in this information to identify the case:

Debtor 1 ___John F. Lauti___

Debtor 2 ___Heather D. Lauti___
(Spouse, if filing)

United States Bankruptcy Court for the: District of Utah

Case number ___20-25088___

**Exhibit B**

Official Form 410    **Amended**

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

| Part 1: | Identify the Claim |
|---|---|

| | | |
|---|---|---|
| 1. Who is the current creditor? | U.S. Bank Trust National Association, as Trustee of the Chalet Series IV Trust | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor _____ | |
| 2. Has this claim been acquired from someone else? | ☑ No | |
| | ☐ Yes. From whom? _____ | |
| 3. Where should notices and payments to the creditor be sent? | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | SN Servicing Corporation | |
| | Name | Name |
| | 323 5th Street | |
| | Number     Street | Number     Street |
| | Eureka, CA 95501 | |
| | City                State          ZIP Code | City                State          ZIP Code |
| | Contact phone (800) 603-0836 | Contact phone _____ |
| | Contact email BKNotices@snsc.com | Contact email _____ |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |
| | _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |
| 4. Does this claim amend one already filed? | ☐ No | |
| | ☑ Yes.  Claim number on court claims registry (if known) _7___ | Filed on 09/23/2020 |
| | | MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No | |
| | ☐ Yes.  Who made the earlier filing? _____ | |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
| --- | --- |

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:   2   1   9   3

---

**7. How much is the claim?**

$ _____ 353,597.08  **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned

---

**9. Is all or part of the claim secured?**

☐ No

☑ Yes.   The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe:   1069 Arlington Way, Bountiful, UT 84010

**Basis for perfection:**   Note/Mortgage

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ _____

**Amount of the claim that is secured:** $ _____ 353,597.08

**Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ _____ 47,731.07

**Annual Interest Rate** (when case was filed) ___ 5.00 %

☑ Fixed

☐ Variable

---

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

---

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

---

Official Form 410    **Proof of Claim**    page 2

| | | Amount entitled to priority |
|---|---|---|
| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No | |
| | ☐ Yes. *Check one:* | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

**Part 3:   Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   02/23/2022
                   MM / DD / YYYY

/s/ Michelle Ghidotti-Gonsalves
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Michelle Ghidotti-Gonsalves |
|---|---|
| | First name                    Middle name                    Last name |
| Title | Authorized Agent |
| Company | Ghidotti Berger, LLP |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 1920 Old Tustin Ave. |
| | Number          Street |
| | Santa Ana, CA  92705 |
| | City                                          State          ZIP Code |
| Contact phone | (949) 427-2010                    Email   bknotifications@ghidottiberger.com |

(12/15)

# Mortgage Proof of Claim Attachment

If you claim a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

## Part 1: Mortgage and Case Information

| | |
|---|---|
| Case number: | 20-25088 |
| Debtor 1: | John F. Lauti |
| Debtor 2: | Heather D. Lauti |
| Last 4 digits to identify: | 2193 |
| Creditor: | US Bank Trust NA |
| Servicer: | SN Servicing Corporation |
| Fixed accrual/daily simple interest/other: | Fixed |

## Part 2: Total Debt Calculation

| | |
|---|---|
| Principal balance: | $311,893.93 |
| Principal Deferred balance: | |
| Interest due: | $28,142.93 |
| Fees, costs due: | $5,057.96 |
| Escrow deficiency for funds advanced: | |
| Less total funds on hand: | $8,502.26 |
| Total Debt: | $353,597.08 |

## Part 3: Arrearages as of Date of the Petition

| | |
|---|---|
| Principal & Interest due: | $33,355.14 |
| Prepetition fees due: | $5,057.96 |
| Escrow deficiency for funds advanced: | |
| Projected escrow shortage: | $8,502.26 |
| Less funds on hand: | $815.71 |
| Total prepetition arrearage: | $47,731.07 |

## Part 4: Monthly Mortgage Payment

| | |
|---|---|
| Principal & interest: | $1,588.34 |
| Monthly escrow: | $469.35 |
| Private mortgage insurance: | |
| Total monthly payment: | $2,057.69 |

## Part 5: Loan Payment History from First Date of Default

Account Activity: How Funds Were Received / After Amount Received or Incurred

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/1/2018 | $2,068.92 | $0.00 | $0.00 | PAYMENT DUE | 12/1/2018 | $2,068.92 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/1/2018 | $0.00 | $0.00 | $216.50 | LATE CHARGES | 12/1/2018 | $2,068.92 | $0.00 | $0.00 | $0.00 | $216.50 | $0.00 | $311,893.93 | $0.00 | $0.00 | $216.50 | $0.00 |
| 12/1/2018 | $0.00 | $0.00 | $1,596.00 | ATTY FEES | 12/1/2018 | $2,068.92 | $0.00 | $0.00 | $0.00 | $1,596.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $1,812.50 | $0.00 |
| 1/1/2019 | $2,068.92 | $0.00 | $0.00 | PAYMENT DUE | 12/1/2018 | $4,137.84 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $1,812.50 | $0.00 |
| 2/1/2019 | $2,068.92 | $0.00 | $0.00 | PAYMENT DUE | 12/1/2018 | $6,206.76 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $1,812.50 | $0.00 |
| 3/1/2019 | $2,068.92 | $0.00 | $0.00 | PAYMENT DUE | 12/1/2018 | $8,275.68 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $1,812.50 | $0.00 |
| 4/1/2019 | $2,068.92 | $0.00 | $0.00 | PAYMENT DUE | 12/1/2018 | $10,344.60 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $1,812.50 | $0.00 |
| 5/1/2019 | $2,068.92 | $0.00 | $0.00 | PAYMENT DUE | 12/1/2018 | $12,413.52 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $1,812.50 | $0.00 |
| 5/16/2019 | $0.00 | $0.00 | $2,619.50 | ATTY FEES | 12/1/2018 | $14,482.44 | $0.00 | $0.00 | $0.00 | $2,619.50 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,432.40 | $0.00 |
| 6/1/2019 | $2,068.92 | $0.00 | $0.00 | PAYMENT DUE | 12/1/2018 | $16,551.36 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,432.40 | $0.00 |
| 7/1/2019 | $2,068.92 | $0.00 | $0.00 | PAYMENT DUE | 12/1/2018 | $18,620.28 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,432.40 | $0.00 |
| 8/1/2019 | $2,068.92 | $0.00 | $0.00 | PAYMENT DUE | 12/1/2018 | $20,689.20 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,432.40 | $0.00 |
| 9/1/2019 | $2,068.92 | $0.00 | $0.00 | PAYMENT DUE | 12/1/2018 | $20,689.20 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,432.40 | $0.00 |
| 9/17/2019 | $0.00 | $0.00 | $43.38 | LATE CHARGES | 12/1/2018 | $22,758.12 | $0.00 | $0.00 | $0.00 | $43.38 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,475.78 | $0.00 |
| 10/1/2019 | $2,068.92 | $0.00 | $0.00 | PAYMENT DUE | 12/1/2018 | $22,758.12 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,475.78 | $0.00 |
| 10/17/2019 | $0.00 | $0.00 | $43.38 | LATE CHARGES | 12/1/2018 | $22,758.12 | $0.00 | $0.00 | $0.00 | $43.38 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,519.16 | $0.00 |
| 10/28/2019 | $0.00 | $0.00 | $105.00 | ATTY FEES | 12/1/2018 | $24,827.04 | $0.00 | $0.00 | $0.00 | $105.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,624.16 | $0.00 |
| 11/1/2019 | $2,068.92 | $0.00 | $0.00 | PAYMENT DUE | 12/1/2018 | $24,827.04 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,624.16 | $0.00 |
| 11/17/2019 | $0.00 | $0.00 | $43.38 | LATE CHARGES | 12/1/2018 | $26,895.96 | $0.00 | $0.00 | $0.00 | $43.38 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,667.54 | $0.00 |
| 12/1/2019 | $2,068.92 | $0.00 | $0.00 | PAYMENT DUE | 12/1/2018 | $26,895.96 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,667.54 | $0.00 |
| 12/17/2019 | $0.00 | $0.00 | $43.38 | LATE CHARGES | 12/1/2018 | $28,964.88 | $0.00 | $0.00 | $0.00 | $43.38 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,710.92 | $0.00 |
| 1/1/2020 | $2,068.92 | $0.00 | $0.00 | PAYMENT DUE | 12/1/2018 | $28,964.88 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,710.92 | $0.00 |
| 1/17/2020 | $0.00 | $0.00 | $43.38 | LATE CHARGES | 12/1/2018 | $31,022.57 | $0.00 | $0.00 | $0.00 | $43.38 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,754.30 | $0.00 |
| 2/1/2020 | $2,057.69 | $0.00 | $0.00 | PAYMENT DUE | 12/1/2018 | $31,022.57 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,754.30 | $0.00 |
| 2/17/2020 | $0.00 | $0.00 | $43.38 | LATE CHARGES | 12/1/2018 | $33,080.26 | $0.00 | $0.00 | $0.00 | $43.38 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,797.68 | $0.00 |
| 3/1/2020 | $2,057.69 | $0.00 | $0.00 | PAYMENT DUE | 12/1/2018 | $33,080.26 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,797.68 | $0.00 |
| 3/17/2020 | $0.00 | $0.00 | $43.38 | LATE CHARGES | 12/1/2018 | $35,137.95 | $0.00 | $0.00 | $0.00 | $43.38 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,841.06 | $0.00 |
| 4/1/2020 | $2,057.69 | $0.00 | $0.00 | PAYMENT DUE | 12/1/2018 | $35,137.95 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,841.06 | $0.00 |
| 4/17/2020 | $0.00 | $0.00 | $43.38 | LATE CHARGES | 12/1/2018 | $37,195.64 | $0.00 | $0.00 | $0.00 | $43.38 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,884.44 | $0.00 |
| 5/1/2020 | $2,057.69 | $0.00 | $0.00 | PAYMENT DUE | 12/1/2018 | $37,195.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,884.44 | $0.00 |
| 5/17/2020 | $0.00 | $0.00 | $43.38 | LATE CHARGES | 12/1/2018 | $39,253.33 | $0.00 | $0.00 | $0.00 | $43.38 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,927.82 | $0.00 |
| 6/1/2020 | $2,057.69 | $0.00 | $0.00 | PAYMENT DUE | 12/1/2018 | $39,253.33 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,927.82 | $0.00 |
| 6/17/2020 | $0.00 | $0.00 | $43.38 | LATE CHARGES | 12/1/2018 | $41,311.02 | $0.00 | $0.00 | $0.00 | $43.38 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,971.20 | $0.00 |
| 7/1/2020 | $2,057.69 | $0.00 | $0.00 | PAYMENT DUE | 12/1/2018 | $41,311.02 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $0.00 | $4,971.20 | $0.00 |
| 7/1/2020 | $0.00 | $0.00 | $8,502.26 | ESCROW ADVANCES | 12/1/2018 | $41,311.02 | $0.00 | $0.00 | $8,502.26 | $0.00 | $0.00 | $311,893.93 | $0.00 | $8,502.26 | $4,971.20 | $0.00 |
| 7/17/2020 | $0.00 | $0.00 | $43.38 | LATE CHARGES | 12/1/2018 | $43,368.71 | $0.00 | $0.00 | $0.00 | $43.38 | $0.00 | $311,893.93 | $0.00 | $8,502.26 | $5,014.58 | $0.00 |
| 8/1/2020 | $2,057.69 | $0.00 | $0.00 | PAYMENT DUE | 12/1/2018 | $43,368.71 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $311,893.93 | $0.00 | $8,502.26 | $5,014.58 | $0.00 |
| 8/17/2020 | $0.00 | $0.00 | $43.38 | LATE CHARGES | 12/1/2018 | $43,368.71 | $0.00 | $0.00 | $0.00 | $43.38 | $0.00 | $311,893.93 | $0.00 | $8,502.26 | $5,057.96 | $0.00 |

SN Servicing Corporation                                    Final
323 FIFTH STREET
EUREKA, CA  95501
For Inquiries:  (800) 603-0836
Main Office- NMLS ID #5985, Branch Office- NMLS ID #9785

Analysis Date:   September 14, 2020

JOHN F LAUTI                                                   Loan:
HEATHER D LAUTI
1069 ARLINGTON WAY                           Property Address:
BOUNTIFUL UT  84010                           1069E ARLINGTON WAY
                                              BOUNTIFUL, UT  84010

### Annual Escrow Account Disclosure Statement
### Account History

This is a statement of actual activity in your escrow account from Feb 2020 to Sept 2020.  Last year's anticipated activity (payments to and from your escrow account) is next to the actual activity.

| Payment Information | Current: | Effective Sep 01, 2020: |
|---|---|---|
| Principal & Interest Pmt: | 867.69 | $1,588.34 |
| Escrow Payment: | 480.58 | 469.35 |
| Other Funds Payment: | 0.00 | 0.00 |
| Assistance Payment (-): | 0.00 | 0.00 |
| Reserve Acct Payment: | 0.00 | 0.00 |
| Total Payment: | $1,348.27 | $ 2,057.69 |

| Escrow Balance Calculation | |
|---|---|
| Due Date: | Sep 01, 2020 |
| Escrow Balance: | (7,331.68) |
| Anticipated Pmts to Escrow: | 0.00 |
| Anticipated Pmts from Escrow (-): | 0.00 |
| Anticipated Escrow Balance: | ($7,331.68) |

|  | Payments to Escrow | | Payments From Escrow | | | Escrow Balance | |
|---|---|---|---|---|---|---|---|
| Date | Anticipated | Actual | Anticipated | Actual | Description | Required | Actual |
|  |  |  |  |  | Starting Balance | 595.88 | (5,165.92) |
| Feb 2020 | 469.35 |  | 270.72 | 270.72 | * Forced Place Insur | 794.51 | (5,436.64) |
| Mar 2020 | 469.35 |  | 270.72 | 270.72 | * Forced Place Insur | 993.14 | (5,707.36) |
| Apr 2020 | 469.35 |  | 270.72 | 270.72 | * Forced Place Insur | 1,191.77 | (5,978.08) |
| May 2020 | 469.35 |  | 270.72 | 270.72 | * Forced Place Insur | 1,390.40 | (6,248.80) |
| Jun 2020 | 469.35 |  | 270.72 | 270.72 | * Forced Place Insur | 1,589.03 | (6,519.52) |
| Jul 2020 | 469.35 |  | 270.72 | 270.72 | * Forced Place Insur | 1,787.66 | (6,790.24) |
| Aug 2020 | 469.35 |  | 270.72 | 270.72 | * Forced Place Insur | 1,986.29 | (7,060.96) |
| Sep 2020 |  |  |  | 270.72 | * Forced Place Insur | 1,986.29 | (7,331.68) |
|  | $3,285.45 | $0.00 | $1,895.04 | $2,165.76 |  |  |  |

An asterisk (*) indicates a difference from a previous estimate either in the date or the amount.  If you want a further explanation, please call our toll-free number.

Last year, we anticipated that payments from your account would be made during this period equaling 1,895.04.  Under Federal law, your lowest monthly balance should not have exceeded 938.70 or 1/6 of the anticipated payment from the account, unless your mortgage contract or State law specifies a lower amount.  Your mortgage contract and State law are silent on this issue.

SN Servicing Corporation                    Final
For Inquiries: (800) 603-0836
Main Office- NMLS ID #5985, Branch Office- NMLS ID #9785

Analysis Date:. September 14, 2020

JOHN F LAUTI                                          Loan:

## Annual Escrow Account Disclosure Statement
### Projections for Coming Year

This is an estimate of activity in your escrow account during the coming year based on payments anticipated to be made to and from your account.

| Date | Anticipated Payments To Escrow | From Escrow | Description | Escrow Balance Anticipated | Required |
|------|------|------|------|------|------|
|  |  |  | Starting Balance | (7,331.68) | 1,986.29 |
| Sep 2020 | 469.35 | 270.72 | Forced Place Insur | (7,133.05) | 2,184.92 |
| Oct 2020 | 469.35 | 270.72 | Forced Place Insur | (6,934.42) | 2,383.55 |
| Nov 2020 | 469.35 | 2,383.55 | County Tax | (8,848.62) | 469.35 |
| Nov 2020 |  | 270.72 | Forced Place Insur | (9,119.34) | 198.63 |
| Dec 2020 | 469.35 | 270.72 | Forced Place Insur | (8,920.71) | 397.26 |
| Jan 2021 | 469.35 | 270.72 | Forced Place Insur | (8,722.08) | 595.89 |
| Feb 2021 | 469.35 | 270.72 | Forced Place Insur | (8,523.45) | 794.52 |
| Mar 2021 | 469.35 | 270.72 | Forced Place Insur | (8,324.82) | 993.15 |
| Apr 2021 | 469.35 | 270.72 | Forced Place Insur | (8,126.19) | 1,191.78 |
| May 2021 | 469.35 | 270.72 | Forced Place Insur | (7,927.56) | 1,390.41 |
| Jun 2021 | 469.35 | 270.72 | Forced Place Insur | (7,728.93) | 1,589.04 |
| Jul 2021 | 469.35 | 270.72 | Forced Place Insur | (7,530.30) | 1,787.67 |
| Aug 2021 | 469.35 | 270.72 | Forced Place Insur | (7,331.67) | 1,986.30 |
|  | $5,632.20 | $5,632.19 |  |  |  |

(Please keep this statement for comparison with the actual activity in your account at the end of the escrow accounting computation year.)
Your escrow balance contains a cushion of 198.63. A cushion is an additional amount of funds held in your escrow balance to prevent the balance from becoming overdrawn when an increase in the disbursement amount occurs. Under Federal law, your lowest monthly balance should not exceed 938.70 or 1/6 of the anticipated payment from the account, unless your mortgage contract or State law specifies a lower amount. Your mortgage contract and State law are silent on this issue.

Your ending balance from the last month of the account history (escrow balance anticipated) is (7,331.68). Your starting balance (escrow balance required) according to this analysis should be $1,986.29. This means you have a shortage of 9,317.97. This shortage may be collected from you over a period of 12 months or more unless the shortage is less than 1 month's deposit, in which case we have the additional option of requesting payment within 30 days. We have decided to do nothing.

We anticipate the total of your coming year bills to be 5,632.19. We divide that amount by the number of payments expected during the coming year to obtain your escrow payment.

| New Escrow Payment Calculation | |
|---|---|
| Unadjusted Escrow Payment | 469.35 |
| Surplus Amount: | 0.00 |
| Shortage Amount: | 0.00 |
| Rounding Adjustment Amount: | 0.00 |
| Escrow Payment: | $469.35 |

NOTICE OF RIGHT TO CANCEL PRIVATE MORTGAGE INSURANCE: If you currently pay private mortgage insurance premiums, you may have the right to cancel the insurance. In most cases, you have the right to cancel private mortgage insurance if the principal balance of your loan is 80 percent or less of the current fair market appraised value of your home, and you have a good payment history on your loan. If you want to learn whether you are eligible to cancel this insurance, please contact us at 323 Fifth Street, Eureka, Ca 95501 or 800-603-0836.

**\* Please note if you have autopay/EFT set up on your loan, it is your responsibility to make sure your payment amount is updated. Enclosed is the EFT form that needs to be completed. Once completed, please fax to the number listed on the EFT form or return in the self-addressed envelope.**

After Recording Return To:
Rushmore Loan Management Services LLC
1755 Wittington Place Ste. 400
Farmers Branch, TX 75234
1-888-504-6700

This Document Prepared By:
ENRIQUE ALMARAZ
Rushmore Loan Management Services LLC
15480 Laguna Canyon Road
Irvine, California 92618
Phone: _____

_____ [Space Above This Line For Recording Data] ___
Original Loan Amount: $222,887.28

# RESPA

## LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this **4th day of September, 2018**, between **JOHN F. LAUTI AND HEATHER DAWN LAUTI HUSBAND AND WIDE AS JOINT TENANTS** ("Borrower") and **Owner, by and through Rushmore Loan Management Services LLC, as current servicer and agent, whose address is 1755 Wittington Place Ste. 400, Farmers Branch, TX 75234** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated **September 25, 2006** and recorded in Book/Liber **4127**, Page **1264**, Instrument No: **2205880**, of the Official Records of **DAVIS County, UT** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at
**1069 E ARLINGTON WAY, BOUNTIFUL, UT 84010,**
(Property Address)
the real property described being set forth as follows:

### AS SET FORTH IN THE DEED OF TRUST

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **September 4, 2018**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$312,467.90**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument - Utah
Mortgage Cadence Document Center © 8868 08/14

Form 3179 1/01 (rev. 4/14)

*(page 1 of 5)*

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **5.000%**, from **September 1, 2018**. Borrower promises to make monthly payments of principal and interest of U.S. **$1,588.34**, beginning on the  **1st** day of **October, 2018**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full.   The yearly rate of **5.000%** will remain in effect until principal and interest are paid in full.  If on **January 1, 2053** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   (b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

   (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of

law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)     Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)     All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)     Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)     Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging [ ].

6.  Notwithstanding anything to the contrary contained in this Agreement, if a discharge has been granted, Borrower and Lender acknowledge the effect of a discharge in bankruptcy that has been granted to Borrower prior to the execution of this Agreement and that Lender may not pursue Borrower for personal liability. However, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances. The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of Borrower's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
**JOHN F. LAUTI** -Borrower

_____ (Seal)
**HEATHER DAWN LAUTI** -Borrower

_____ [Space Below This Line For Acknowledgments] _____

State of Utah)
          §
County of _____Davis_____ )

On this __27__ day of __Sept.__ , in the year 20_18_ , before me, _Jennifer St John_ a notary public, personally appeared _John F Lauti, Heather D Lauti_ proved on the basis of satisfactory evidence to be the person(s) whose name(s) (is/are) subscribed to in this document, and acknowledged (he/she/they) executed the same.

Witness my hand and official seal.

_(notary signature)_

NOTARY PUBLIC
JENNIFER ST. JOHN
692016
COMMISSION EXPIRES
NOVEMBER 07, 2020
STATE OF UTAH

*(seal)*

Origination Company: **Rushmore Loan Management Services LLC**

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument -
Utah
Mortgage Cadence Document Center  © 8868 08/14

Form 3179 1/01 (rev. 4/14)

*(page 4 of 5)*



## ERRORS AND OMISSIONS/COMPLIANCE AGREEMENT

FHA/VA Case Number:

Borrower(s):     **JOHN F. LAUTI and HEATHER DAWN LAUTI**

Property Address:     **1069 E ARLINGTON WAY, BOUNTIFUL, UT 84010**

Servicer:     **Rushmore Loan Management Services LLC**

The undersigned Borrower(s) for and in consideration of the above-referenced Servicer modifying the terms of your mortgage loan, agrees that if requested by your Servicer, to fully cooperate and adjust for clerical errors, any or all loan modification documentation deemed necessary or desirable in the reasonable discretion of Servicer to enable Servicer to sell, convey, seek guaranty or market said loan to any entity, including but not limited to an investor, Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Government National Mortgage Association, Department of Housing and Urban Development, or the Department of Veterans Affairs, or any Municipal Bonding Authority.

I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

The undersigned Borrower(s) agree(s) to comply with all above noted requests by the above-referenced Servicer within 15 days from date of mailing of said requests. Borrower(s) agree(s) to assume all costs including, by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to comply with correction requests in the above noted time period.

The undersigned Borrower(s) do hereby so agree and covenant in order to assure that this loan modification documentation executed this date will conform and be acceptable in the marketplace in the instance of transfer, sale or conveyance by Servicer of its interest in and to said loan modification documentation, and to assure marketable title in the said Borrower(s).

DATED this **4th** day of **September, 2018**.

_____     (Seal)
**JOHN F. LAUTI** -Borrower

_____     (Seal)
**HEATHER DAWN LAUTI** -Borrower

## INSURANCE ADDENDUM TO LOAN MODIFICATION AGREEMENT

### JOHN F. LAUTI AND HEATHER DAWN LAUTI
### 1069 E ARLINGTON WAY
### BOUNTIFUL, UT 84010

THIS INSURANCE ADDENDUM TO LOAN MODIFICATION AGREEMENT (the "Insurance Addendum") is made this **4th day of September, 2018**, and is incorporated into and shall be deemed to amend and supplement the Loan Modification Agreement (the "Modification Agreement" together, the "Agreements") entered into by the undersigned ("Borrower"), in favor of **Rushmore Loan Management Services LLC,** current servicer and agent for owner ("Lender"). The Agreements amend and supplement (1) the Mortgage, Deed of Trust or Security Deed and any applicable Riders (the "Security Agreement"), and (2) the Note bearing the same date as, and secured by, the Security Agreement.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Modification Agreement, Borrower and Lender further covenant and agree as follows:

If Borrower is obligated under the Note and Security Instrument to keep the improvements now existing or hereafter erected on the Property insured against loss by fire and/or any other hazards, including but not limited to floods or flooding, or if Borrower is obligated under the Note and Security Instrument to pay Lender for escrowed insurance premiums, and Borrower subsequently either fails to insure the Property or fails to pay insurance escrowed amounts when they become due, then Lender may at its sole discretion and without obligation exercise its rights under the Note and Security Instrument and this Agreement to purchase insurance to protect Lender's interests and rights in the Property. Borrower acknowledges and agrees that the cost of insurance coverage so obtained by Lender may significantly exceed the cost of insurance that Borrower could have obtained independently. Nevertheless, Borrower acknowledges and agrees any such amounts disbursed by Lender shall become additional debt of the Borrower payable to Lender and secured by the Security Instrument. Borrower further acknowledges and agrees that Lender is under no obligation to purchase any particular type or amount of coverage, and such coverage shall be intended to protect Lender but may or may not protect Borrower, Borrower's equity in the Property, or the contents of the Property against any risk, hazard or liability, and furthermore may provide greater or lesser coverage than was previously in effect.

The Agreements only modify the Security Agreement and Note in regard to the provisions addressed. All other terms and conditions of the Security Agreement and Note remain in full force and effect.

BY SIGNING BELOW, Lender and Borrower accept and agree to the terms and provisions contained in this Addendum.

_____          _____
JOHN F. LAUTI                                                    LENDER

_____
HEATHER DAWN LAUTI

[Space Reserved for Recording Information]

**MODIFICATION AGREEMENT**

This Modification Agreement (the "Agreement") is dated as of May 9, 2014 but effective as of the Modification Effective Date defined herein, by and between JOHN F LAUTI and HEATHER D LAUTI (collectively, the "Borrower") and Caliber Home Loans, Inc., on behalf of the current investor (the "Servicer").

RECITALS:

A. Borrower currently has a mortgage loan, account no. 9802909706, serviced by Servicer (the "Loan") secured by real property located at 1069 E ARLINGTON WAY BOUNTIFUL         UT 84010-2304 (the "Property"). The legal description of the Property is (if recordation of this Agreement is necessary).

B. Borrower executed and delivered the following documents, among others, related to the Loan (collectively, the "Loan Documents"):
   1)    Note dated September 25, 2006 in the original principal amount of $ 222,887.28 (the "Note"); and
   2)    Mortgage or Deed of Trust on the Property to secure, and bearing the same date as, the Note recorded in the records of DAVIS, UT.

C. As of May 9, 2014, amounts due and outstanding under the Note but not paid by Borrower total $ 264,687.89, consisting of unpaid principal of $ 208,244.97, accrued but unpaid interest of $ 48,512.59, and unpaid fees or advances due to Servicer of $   7,930.33.  A portion of the advances due to Servicer includes advances for taxes and insurance ("Ancillary" amounts) totaling $    0.00.

D. Borrower is in default under the Loan Documents, and Servicer has properly accelerated the Note or may, at Servicer's option, accelerate the Note.

E. Borrower has delivered to Servicer documentation of Borrower's current financial situation as requested by Servicer and, as an accommodation to Borrower, Servicer has offered to modify the terms of the Loan as described herein.

Borrower and Servicer (collectively, the "Parties"), agree as follows:

1.  **Borrower's Representations.** Borrower hereby certifies and represents to Servicer:

A. Borrower is experiencing a financial hardship and, as a result, (i) is in default under the Loan Documents, and (ii) does not have sufficient income or access to sufficient liquid assets to make the existing scheduled monthly mortgage payments now or in the near future;

B. The Property has not been condemned or is not subject to condemnation proceedings;

C. There has been no change in the ownership of the Property since Borrower signed the Loan Documents;

D. Borrower has provided documentation as requested by Servicer including documentation for all income that Borrower receives (and understands that Borrower is not required to disclose child support or alimony unless Borrower chooses to rely on such income when requesting to qualify for the modification described in this Agreement);

E. All documents and information Borrower has provided to Servicer in connection with this Agreement are true and correct; and

4:72

1

F.   If Servicer requires Borrower to obtain credit counseling in connection with the execution of this Agreement, Borrower will do so within 30 days of execution of this Agreement and provide Servicer with proof thereof.

2.   **Preconditions to Effectiveness of Agreement.**  Borrower agrees to sign and return the original signed Agreement to Servicer where indicated below on or before May 24, 2014.  Upon receipt of Borrower's signed Agreement, Servicer will determine, in its sole discretion, whether Borrower's representations in Section 1 of this Agreement continue to be true and correct in all material respects.  If Servicer determines that the representations continue to be true and correct, then Servicer will execute this Agreement where indicated below, and the modifications to the Loan Documents described herein will become effective on the date inserted by Servicer under its signature below (the "Modification Effective Date").  If Servicer determines that any of Borrower's representations are not true and correct, then Servicer will not be obligated or bound to execute this Agreement or to modify the Loan Documents as described herein, the Loan Documents will not be modified as described herein, this Agreement will be null and void, and Servicer will retain all rights and remedies under the Loan Documents.

3.   **Modification of the Loan Documents.**  If the preconditions described in Section 2 of this Agreement have been satisfied, both Parties have signed the Agreement, then the Loan Documents are hereby modified as follows:

The new principal balance of the Note is $ 208,244.97 ("New Principal Balance").  The new total balance of the Loan, which includes unpaid principal, interest accrued but not paid, and all outstanding Servicer fees, charges and advances, will be $ 264,687.89 ("New Total Balance") (the total due as of date of this document May 9, 2014). The New Total Balance includes Servicer's deferral of unpaid principal, interest accrued but not paid, Servicer fees, charges, and/or advances in the amount of  $ 56,442.92 ("Deferred Amounts").

Interest at the rate of 5% will begin to accrue on the New Principal Balance as of June 1, 2014 and through the Reduction Period Maturity Date (defined below).  You will make monthly payments of "interest only" accruing at the New Interest Rate (defined below) on the New Principal Balance beginning July 1, 2014 and continuing thereafter until the Reduction Period Maturity Date.  Because these are "interest only" payments, the New Principal Balance will not be reduced.  The monthly payments will vary based upon the number of days between payment days.  In addition to this payment, Servicer may, as allowed by the loan documents and the Real Estate Settlement Procedures Act, collect deposits to an escrow account for the payment of real property taxes, insurance and other escrow items.  The new maturity date will be October 1, 2032 ("New Maturity Date").

The Deferred Amounts will be deferred to the end of the loan and will be due and payable on the New Maturity Date.  The balance of fees not deferred will remain due on the loan until paid.

Beginning on July 1, 2014 and ending at the Reduction Period Maturity Date as long as Borrower is not in default in payments due under this Agreement or other representations made in this Agreement, the new interest rate and monthly payments due through the Reduction Period Maturity Date are as follows:

| | |
|---|---|
| New Interest Rate: | 5% |
| Reduction Period Maturity Date: | June 1, 2019 |
| Monthly Reduction Period | |
|    Range of Monthly Interest Payment *: | $   867.69 |
| Monthly Escrow Payment Amount **: | $   324.42 |
| Ancillary Monthly Payment ***: | $     0.00 |
| TOTAL MONTHLY PAYMENT: | $  1,192.11 |

\* Your payment amount will vary based upon the number of days in any payment cycle. Displayed above is the range for 28 to 31 day months.

\*\* Servicer retains the right to adjust the Monthly Escrow Payment Amount during the Reduction Period as permitted by the Loan Documents and the Real Estate Settlement Procedures Act.

\*\*\* Servicer retains the right to adjust the Ancillary Monthly Payment Amount during the Reduction Period as permitted by the Loan Documents.

The terms in Section 3 of this Agreement shall supersede any provisions to the contrary in the Loan Documents, including, but not limited to, provisions for an adjustable or step interest rate. If the Loan Documents do not provide for the establishment of an escrow account for property taxes and insurance to be held and disbursed by the Servicer (referred to herein as "T&I Escrow"), then Borrower will pay Servicer the Monthly Escrow Payment Amount set forth above for Servicer to place in a T&I Escrow Account, and Servicer will pay property taxes and insurance premiums on the Property as they become due.

If Servicer makes advances for payment of taxes or insurance, accrues interest, or posts late or other fees to the Loan, each of which is permissible under the Loan Documents to add to amounts outstanding under the Note, between the date Servicer generates this Agreement and the date this Agreement is fully executed, then Servicer may adjust the New Modified Balance as necessary to account for these amounts, and will send an appropriate written notice of such adjustment to Borrower.

If Borrower delivers all payments described above and as required herein through the Reduction Period Maturity Date, and if Borrower is not otherwise in default under the Loan Documents or this Agreement at the Reduction Period Maturity Date, then upon the Reduction Period Maturity Date, Borrower will continue making payments in accordance with the interest rate and additional terms required by the Loan Documents without regard to this Agreement provided, however, that Borrower's monthly payment will adjust to an amount sufficient to fully repay the New Principal Balance over the remaining term of the loan (as may be modified herein) in substantially equal fully amortizing installments of principal and interest accruing thereon. In addition to any other amounts due under the terms of the Loan Documents, the Final Payment will include the Deferred Amounts, which will be due and owing no later than the Maturity Date of the Loan.

4. **Events of Default.** If Borrower fails to make any of the payments described in Section 3 of this Agreement within fifteen (15) days after the due date thereof, or otherwise fails to comply with any of the terms, conditions, representations or agreements set forth in this Agreement or in the Loan Documents, then such failure constitutes an event of default under this Agreement and the Loan Documents. Upon Borrower's default and the expiration of any right to cure under the Loan Documents, or as prescribed by applicable law, at Servicer's option and upon Servicer's delivery of notice to Borrower, this Agreement shall become null and void as though it had never existed, and Servicer's rights and Borrower's obligations will be determined without regard to this Agreement. Furthermore and unless federal or state law requires otherwise, Servicer will be entitled to (i) resume foreclosure activities and complete any foreclosure of the Property, and (ii) state as due under the Note an amount calculated pursuant to the Loan Documents without regard to this Agreement, though giving credit for any payments made hereunder as provided for in the Loan Documents. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.

5. **Additional Agreements.** The Parties further agree to and acknowledge each of the following:

A. That all persons who signed the Loan Documents, or their authorized representative(s), have signed this Agreement, unless a Borrower is deceased or the Servicer has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification or forbearance that the Parties previously entered into with respect to the Loan.

C. That Borrower will comply with any agreement or obligation in the Loan Documents to make all payments of taxes, insurance premiums, assessments, refunds of advances due Servicer, impounds, and all other payments, the amount of which may change periodically over the term of the Loan.

D. That this Agreement constitutes notice that the Servicer's waiver as to payment of T&I Escrow amounts due to Servicer, if any, in the Loan Documents is hereby revoked, and that Borrower has been advised of the amount needed to fully fund the T&I Escrow Account. Unless expressly required by applicable law, Servicer shall not be required to pay Borrower any interest with respect to the T&I Escrow Account. Unless expressly prohibited by law, Borrower hereby waives the right to receive interest with respect to the T&I Escrow Account.

E. That the Loan Documents are composed of duly executed, valid, binding agreements, enforceable in accordance with their terms creating a valid and enforceable lien against the Property, and that the Parties hereby reaffirm the Loan Documents.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, Servicer and Borrower will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, Borrower agrees as follows: If all or any part of the Property or any interest in it is sold or transferred without Servicer's prior written consent, Servicer may, at its option, require immediate payment in full of all sums secured by the Loan Documents defined in Section B(1) of this Agreement. However, Servicer shall not exercise this option if federal or other applicable law or regulation prohibits the exercise of such option as of the date of such sale or transfer. If Servicer exercises this option, Servicer shall give Borrower notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed, within which Borrower must pay all sums due under the Note. If Borrower fails to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Loan Documents without further notice or demand on Borrower.

H. That, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstances, to assume the Loan. This Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer of the Property.

I. Nothing herein shall be deemed to be a waiver of any default that exists as of the date hereof, whether declared by the Servicer or not, it being expressly agreed that any such default shall continue to exist until Borrower fully performs each and every condition hereof.

J. As a material part of the consideration for Servicer entering into this Agreement, except as prohibited by applicable law, Borrower (i) releases and holds harmless any current or prior Servicer or note-holder from and against any claims, actions and defenses arising out of or relating to the Loan Documents or the servicing of the Loan (ii) represents and warrants that Borrower has no right of set-off or counterclaim or any defense to the obligations under the Loan Documents. Borrower hereby confirms that this Agreement represents the entire agreement between Borrower and Servicer with respect to the subject matter herein, and that no other prior terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning the modification of the Loan Documents that are inconsistent with the terms of this Agreement shall affect the Loan Documents or negate the operation and effect of this Agreement.

K. Any expenses incurred in connection with the servicing of the Loan, but not yet charged to the account as of the date of this Agreement, may be charged to the Loan and secured by the Mortgage after the Modification Effective Date.

L. Borrower will execute such other documents or papers as may be reasonably necessary or required by Servicer to effectuate the terms and conditions of this Agreement.

Notice to Consumers presently in Bankruptcy or who have a Bankruptcy Discharge: If you are a debtor presently subject to a proceeding in Bankruptcy Court, or if you have previously been discharged from this debt by a Federal Bankruptcy Court, this communication is not an attempt to collect a debt but is sent for informational purposes only or to satisfy certain Federal or State legal obligations.

**THIS IS AN ATTEMPT BY A DEBT COLLECTOR TO COLLECT A CONSUMER DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

In Witness Whereof, Servicer and Borrower have executed this Modification Agreement as of the dates indicated below.

Borrower Signature

Date: 5/16/14

Witness Signature

Borrower Signature

Date: 5/16/14

Witness Signature

SERVICER
Caliber Home Loans, Inc., on behalf of the current investor

By:

Modification Effective Date
(Determined by Servicer)

4:72                                                                                                                     5

RICHARD T. MAUGHAN
DAVIS COUNTY, UTAH  RECORDER
4/4/2016 12:49:00 PM
FEE $10.00  Pgs: 1
DEP eCASH  REC'D FOR HALLIDAY & WATKINS P O

When recorded mail to:
Halliday, Watkins & Mann, P.C.
376 East 400 South, Suite 300
Salt Lake City, UT 84111

_____

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SUBSTITUTION OF TRUSTEE

WHEREAS, John F. Lauti and Heather Dawn Lauti was the original Trustor(s), First American Title Insurance Agency was the original Trustee, and Household Finance Corporation III was the original Beneficiary under that certain Deed of Trust dated 09/25/2006 and recorded on September 28, 2006 as Entry Number 2205880, in Book 4127, at Page 1264-1269 of the official records of the Recorder of Davis County, Utah, and

WHEREAS, the Deed of Trust encumbers real property more particularly described as:

Lot 18, OAKRIDGE MANOR SUBDIVISION PLAT B, according to the Official Plat thereof on file and of record in the Davis County Recorder's Office.

NOW THEREFORE, the undersigned hereby substitutes Paul M. Halliday, Jr., 376 East 400 South, Suite 300, Salt Lake City, UT 84111 as Successor Trustee under said Deed of Trust. The undersigned beneficiary hereby ratifies and confirms all actions taken on its behalf by the Substitute Trustee prior to the recording of this instrument.

BENEFICIARY

Christiana Trust, a division of Wilmington Savings Fund Society, FSB, as indenture trustee, for the CSMC 2014-RPL3 Trust, Mortgage-Backed Notes, Series 2014-RPL3, by Select Portfolio Servicing, Inc., as attorney-in-fact
By: _Quuuwu_____ 3·31·16
Name: _____Patrick Riquelme_____
Title: _____Document Control Officer_____
Select Portfolio Servicing, Inc.
Date: _03/31/2016_____

STATE OF UTAH        )
COUNTY OF SALT LAKE  )
On this _31_ day of _March_, in the year 20_16_, before me ___Erin Webster___, a
notary public, personally appeared _Patrick Riquelme_    Personally Known , a
_Doc. Control Officer_____ of Select Portfolio Servicing, Inc., proved on the basis of satisfactory

evidence to be the person whose name is subscribed to this instrument, and acknowledged that he/she executed the same. Witness my hand and official seal.

_Notary Public_

ERIN WEBSTER
Notary Public  State of Utah
My Commission Expires on:
August 22, 2017
Comm. Number: 669589

1

RETURN TO:
David B. Boyce
2115 Dallin St.

B 4734 P 1243
RICHARD T. MAUGHAN
DAVIS COUNTY, UTAH RECORDER
3/17/2009 3:11:00 PM
FEE $10.00 Pgs: 1
DEP eCASH  REC'D FOR INVEST TITLE SERVICES

## SUBSTITUTION OF TRUSTEE

DAVID B. BOYCE, a member of the Utah State Bar, located at 2115 Dallin St., SLC, UT 84109, is hereby appointed Successor Trustee under the Trust Deed executed by John F. Lauti and Heather Dawn Lauti, as Trustors, in which Household Finance Corporation III is named the original Beneficiary, and First American Title Insurance Agency as Trustee, and recorded on September 28, 2006, with recorder's Entry No. 2205880, Davis County, Utah, covering real property described as follows:

LOT 18, OAKRIDGE MANOR SUBDIVISION PLAT B, according to the official plat thereof on file and of record in the Davis County Recorder's Office.

The undersigned Beneficiary hereby ratifies and confirms all actions taken on its behalf by the Successor Trustee prior to the recording of this instrument.

Household Finance Corporation III

_____     Dated ___3-16-09___

By: Bethany Hood
Its: **Attorney in Fact**

STATE OF  Minnesota        )
County of  Dakota          )ss.

On _3-16-09_ before me, __Ashley Olson__, Notary Public, personally appeared _____Bethany Hood_____, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of this State that the foregoing paragraph is true and correct.

Witness my hand and official seal

_____
Notary Signature

Ashley Elizabeth Olson
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2014

WHEN RECORDED MAIL TO

NAME   Records Processing Services

STREET ADDRESS   577 Lamont Rd

CITY & STATE   Elmhurst, IL 60126

SPACE ABOVE THIS LINE FOR RECORDER'S USE

(Page 1 of 6)

## DEED OF TRUST

☐   IF THIS BOX IS CHECKED, THIS DEED OF TRUST SECURES FUTURE ADVANCES.

THIS DEED OF TRUST is made this 25TH day of SEPTEMBER , 20 06 , among the Trustor(s), JOHN F. LAUTI AND HEATHER DAWN LAUTI, HUSBAND AND WIFE AS JOINT TENANTS.

(herein "Borrower"), FIRST AMERICAN TITLE INSURANCE AGENCY (herein "Trustee") and the Beneficiary, HOUSEHOLD FINANCE CORPORATION III , a corporation organized and existing under the laws of DELAWARE whose address is 3621 WEST 3500 SOUTH, WILLOW WOOD SHOPPING CTR, WEST VALLEY CT, UT 84119 (herein "Lender").

The following paragraph preceded by a checked box is applicable.

☒   WHEREAS, Borrower is indebted to Lender in the principal sum of $ 222,887.28 , evidenced by Borrower's Loan Agreement dated SEPTEMBER 25, 2006 and any extensions or renewals thereof (including those pursuant to any Renegotiable Rate Agreement) (herein "Note"), providing for monthly installments of principal and interest, including any adjustments to the amount of payments or the contract rate if that rate is variable, with the balance of the indebtedness, if not sooner paid, due and payable on SEPTEMBER 25, 2032;

☐   WHEREAS, Borrower is indebted to Lender in the principal sum of $ , or so much thereof as may be advanced pursuant to Borrower's Revolving Loan Agreement dated and extensions and renewals thereof (herein "Note"), providing for monthly installments, and interest at the rate and under the terms specified in the Note, including any adjustments in the interest rate if that rate is variable, and providing for a credit limit stated in the principal sum above and an initial advance of $ ;

TO SECURE to Lender the repayment of the indebtedness, including future advances, evidenced by the Note, with interest thereon at the applicable contract rate (including any adjustments to the amount of payment or the contract rate if that rate is variable) and other charges; the payment of all other sums, with interest thereon, advance in accordance herewith to protect the security of this Deed of Trust; and the performance of the convenants and agreements of Borrower herein contained, Borrower, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys to Trustee, in trust with power of sale, the following described property located in the County of DAVIS State of Utah:

LOT 18, OAKRIDGE MANOR SUBDIVISION PLAT B, ACCORDING TO THE OFFICIAL PLAT THEREOF ON FILE AND OF RECORD IN THE DAVIS COUNTY RECORDER'S OFFICE.

which has the address of 1069 E ARLINGTON WAY,       BOUNTIFUL
(Street)       (City)

Utah   84010   (herein "Property Address");
(Zip Code)

11-11-05 DOT

E 4127 P 1264-1269
RICHARD T. MAUGHAN
DAVIS COUNTY, UTAH RECORDER
9/28/2006 3:10:00 PM
FEE $20.00 Pgs: 6
DEP eCASH REC'D FOR FIRST AMERICAN TITLE

WHEN RECORDED MAIL TO :

NAME ⌐ Records Processing Services
STREET ADDRESS  577 Lamont Rd
CITY & STATE  Elmhurst, IL 60126

(Page 1 of 6)

# DEED OF TRUST

918103

☐ **IF THIS BOX IS CHECKED, THIS DEED OF TRUST SECURES FUTURE ADVANCES.**

THIS DEED OF TRUST is made this __25TH__ day of __SEPTEMBER__ , 20 __06__, among the Trustor(s),
JOHN F. LAUTI AND HEATHER DAWN LAUTI, HUSBAND AND WIFE AS JOINT TENANTS. (herein
"Borrower"),    FIRST AMERICAN TITLE INSURANCE AGENCY
(herein "Trustee") and the Beneficiary, HOUSEHOLD FINANCE CORPORATION III   whose address is
a corporation organized and existing under the laws of   DELAWARE
3621 WEST 3500 SOUTH, WILLOW WOOD SHOPPING CTR, WEST VALLEY C, UT  84119
(herein "Lender").

The following paragraph preceded by a checked box is applicable.

☒ WHEREAS, Borrower is indebted to Lender in the principal sum of $ __222,887.28__
evidenced by Borrower's Loan Agreement dated __SEPTEMBER 25, 2006__ and any extensions or renewals thereof
(including those pursuant to any Renegotiable Rate Agreement) (herein "Note"), providing for monthly installments of
principal and interest, including any adjustments to the amount of payments or the contract rate if that rate is variable,
with the balance of the indebtedness, if not sooner paid, due and payable on __SEPTEMBER 25, 2032__;

☐ WHEREAS, Borrower is indebted to Lender in the principal sum of $ _____, or so much thereof
as may be advanced pursuant to Borrower's Revolving Loan Agreement dated _____ and
extensions and renewals thereof (herein "Note"), providing for monthly installments, and interest at the rate and under
the terms specified in the Note, including any adjustments in the interest rate if that rate is variable, and providing for a
credit limit stated in the principal sum above and an initial advance of $ _____ ;

TO SECURE to Lender the repayment of the indebtedness, including future advances, evidenced by the Note,
with interest thereon at the applicable contract rate (including any adjustments to the amount of payment or the contract
rate if that rate is variable) and other charges; the payment of all other sums, with interest thereon, advance in accordance
herewith to protect the security of this Deed of Trust; and the performance of the convenants and agreements of Borrower
herein contained, Borrower, in consideration of the indebtedness herein recited and the trust herein created, irrevocably
grants and conveys to Trustee, in trust with power of sale, the following described property
located in the County of __DAVIS__    State of Utah:

LOT 18, OAKRIDGE MANOR SUBDIVISION PLAT B, ACCORDING TO THE
OFFICIAL PLAT THEREOF ON FILE AND OF RECORD IN THE DAVIS
COUNTY RECORDER'S OFFICE.

which has the address of __1089 E ARLINGTON WAY,__                   __BOUNTIFUL__
(Street)                                    (City)

Utah ____84010____                  (herein "Property Address");

11-11-05 DOT

(Page 2 of 6)

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property".

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest (including any variations in interest resulting from changes in the Contract Rate that may be specified in the Note) on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to paragraph 3. Payments due under the Note and this Deed of Trust shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Deed of Trust is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Deed of Trust be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) electronic funds transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in paragraph 12. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each monthly payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Deed of Trust or performing the covenants and agreements secured by this Deed of Trust.

**2. Application of Payments or Proceeds.** Except as otherwise described in this paragraph or as may be required by the Note and/or applicable law, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under paragraph 3. Such payments shall be applied to each monthly payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Deed of Trust, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent monthly payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one monthly payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the monthly payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more monthly payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or miscellaneous proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the monthly payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Deed of Trust as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under paragraph 5; and (d) Mortgage Insurance premiums, if any. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Deed of Trust, as the phrase "covenant and agreement" is used in paragraph 7. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under paragraph 7 and pay such amount and Borrower shall then be obligated under paragraph 7 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with paragraph 12 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount: (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 35000), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter (herein "RESPA"); and (b) not to

11-11-05 DOT

exceed the maximum amount a lender can require under RESPA. As used in this Deed of Trust, RESPA refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the loan does not qualify as a "federally related mortgage loan" under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Deed of Trust Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by the Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the applicable Contract Rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower and all other parties who are or hereafter may become secondarily liable shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to

commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The applicable law contained in the Note shall control. Where no applicable law is contained therein, the state and local laws of the jurisdiction in which the Property is located shall apply except where such laws conflict with Federal law, in which case Federal law applies. The foregoing sentence shall not limit the applicability of Federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses," and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust, if requested, at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property.** If Borrower sells or transfers all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) a transfer by devise, descent, or by operation of law upon the death of a joint tenant, (c) the grant of any leasehold interest of three years or less not containing an option to purchase, (d) the creation of a purchase money security interest for household appliances, (e) a transfer to a relative resulting from the death of the Borrower, (f) a transfer where the spouse or children of the Borrower become an owner of the property, (g) a transfer resulting from a decree of dissolution of marriage, legal separation agreement, or from an incidental property settlement agreement, by which the spouse of the Borrower becomes an owner of the property, (h) a transfer into an inter vivos trust in which the Borrower is and remains a beneficiary and which does not relate to a transfer of rights of occupancy in the property, or (i) any other transfer. Borrower shall cause to be submitted information required by Lender to evaluate the transferee as if a new loan were being made to the transferee. Borrower will continue to be obligated under the Note and this Deed of Trust unless Lender releases Borrower in writing. If Lender does not agree to such sale or transfer, Lender may declare all of the sums secured by this Deed of Trust to be immediately due and payable. If Lender exercises such option to accelerate, Lender shall deliver or mail Borrower notice of acceleration in accordance with Paragraph 12 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed or delivered within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies.** Except as provided in paragraph 16 hereof, or as otherwise required by law, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If the power of sale is invoked, Trustee shall execute a written notice of the occurrence of an event of default and of the election to cause the Property to be sold and shall record such notice in each county which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable

11-11-05 DOT

law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the property by advertising in accordance with applicable law. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, Trustee's fees, reasonable attorney's fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto or to the county clerk of the county in which the sale took place.

18. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 16 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. Assignment of Rents; Appointment of Receiver; Lender in Possession. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

20. Reconveyance. Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

21. Substitute Trustee. Lender may from time to time in Lender's discretion remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

22. Request for Notice. Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address.

23. Arbitration Rider to Note. The Arbitration Rider attached to and made a part of the Note is hereby incorporated by reference and made a part of this Deed of Trust.

(THIS SPACE INTENTIONALLY LEFT BLANK)

11-11-05  DOT

## REQUEST FOR NOTICE OF DEFAULT
## AND FORECLOSURE UNDER SUPERIOR
## MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

**IN WITNESS WHEREOF,** Borrower has executed and sealed this Deed of Trust.

_____ (SEAL)
John F. Lauti                    -Borrower

_____ (SEAL)
Heather Dawn Lauti AKA Heather D. Lauti -Borrower

STATE OF UTAH, ____Salt Lake_____ County ss:

On this ___25th___ day of ___September_____, 20_06_, personally appeared before me ___John F. Lauti & Heather Dawn Lauti AKA Heather D. Lauti___, the signer(s) of the above instrument, who duly acknowledged to me that ___t hey___ executed the same.

My Commission expires: Aug 13, 2007

_____
Notary Public residing at:
3802 E N Little Cottonwood Cyn
Sandy UT 84092

SUSAN DESPAIN
Notary Public
State of Utah
My Comm. Expires Aug 13, 2007
3802 E N Little Cottonwood Cyn Sandy UT 84092

On this _____ day of _____, 20___, personally appeared before me _____, the signer(s) of the above instrument, who duly acknowledged to me that ___he___ executed the same.

My Commission expires:

_____
Notary Public residing at:

_____

## REQUEST FOR RECONVEYANCE

TO TRUSTEE:

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate not held by you under this Deed of Trust to the person or persons legally entitled thereto.

Date: _____    _____

_____ **(Space Below This Line Reserved For Lender and Recorder)** _____

# AMORTIZATION SCHEDULE

**Name:**      **JOHN F. LAUTI**
              **HEATHER D. LAUTI**

**Address:**   **1069 E ARLINGTON WAY**
              **BOUNTIFUL, UT 84010**

**Principal: $222887.28**

**Term: 312 Months**

**Date: 09/25/2006**                           **APR: * 9.992%**

**Payment without Insurance: $1904.31**        **Origination Fee/Points: $11138.58**

**Payment with Insurance: $2033.06**

This information is for illustration purposes only and is not intended to be a binding commitment.

The amortization schedule is based on the loan payment and excludes any credit insurance premiums.

The amortization schedule assumes that you will make all your payments monthly so that we receive them on or before your scheduled due date. If your payments are not received on the scheduled due date, this schedule will be changed. The amortization schedule excludes taxes, homeowner's insurance, and assumes a monthly payment option.

* The APR (annual percentage rate) listed includes the following assumptions: the costs of the loan, all prepaid finance charges including fees/points and interest divided by the contract term of the loan. The contract term of your loan is the number of years your loan is for.

09/25/2006 12:53                    Page 1 of 2

# AMORTIZATION SCHEDULE

**Name:**   JOHN F. LAUTI
             HEATHER D. LAUTI

**Principal: $222887.28**

**Contract Rate: 9.340%**

**APR: * 9.992%**

**Payment without Insurance: $1904.31**

**Term: 312 Months**

**Loan Date: 09/25/2006**

**Origination Fee/Points: $11138.58**

**Payment with Insurance: $2033.06**

| Year | Contract Rate | Payment without Insurance | Principal | Interest | New Balance |
|------|------|------|------|------|------|
| 1 | 9.340 | 22851.72 | 2123.42 | 20728.30 | 220763.86 |
| 2 | 9.340 | 22851.72 | 2330.47 | 20521.25 | 218433.39 |
| 3 | 9.340 | 22851.72 | 2557.69 | 20294.03 | 215875.70 |
| 4 | 9.340 | 22851.72 | 2807.08 | 20044.64 | 213068.62 |
| 5 | 9.340 | 22851.72 | 3080.78 | 19770.94 | 209987.84 |
| 6 | 9.340 | 22851.72 | 3381.16 | 19470.56 | 206606.68 |
| 7 | 9.340 | 22851.72 | 3710.85 | 19140.87 | 202895.83 |
| 8 | 9.340 | 22851.72 | 4072.66 | 18779.06 | 198823.17 |
| 9 | 9.340 | 22851.72 | 4469.77 | 18381.95 | 194353.40 |
| 10 | 9.340 | 22851.72 | 4905.58 | 17946.14 | 189447.82 |
| 11 | 9.340 | 22851.72 | 5383.90 | 17467.82 | 184063.92 |
| 12 | 9.340 | 22851.72 | 5908.85 | 16942.87 | 178155.07 |
| 13 | 9.340 | 22851.72 | 6484.99 | 16366.73 | 171670.08 |
| 14 | 9.340 | 22851.72 | 7117.30 | 15734.42 | 164552.78 |
| 15 | 9.340 | 22851.72 | 7811.26 | 15040.46 | 156741.52 |
| 16 | 9.340 | 22851.72 | 8572.89 | 14278.83 | 148168.63 |
| 17 | 9.340 | 22851.72 | 9408.78 | 13442.94 | 138759.85 |
| 18 | 9.340 | 22851.72 | 10326.17 | 12525.55 | 128433.68 |
| 19 | 9.340 | 22851.72 | 11333.01 | 11518.71 | 117100.67 |
| 20 | 9.340 | 22851.72 | 12438.03 | 10413.69 | 104662.64 |
| 21 | 9.340 | 22851.72 | 13650.78 | 9200.94 | 91011.86 |
| 22 | 9.340 | 22851.72 | 14981.78 | 7869.94 | 76030.08 |
| 23 | 9.340 | 22851.72 | 16442.57 | 6409.15 | 59587.51 |
| 24 | 9.340 | 22851.72 | 18045.78 | 4805.94 | 41541.73 |
| 25 | 9.340 | 22851.72 | 19805.32 | 3046.40 | 21736.41 |
| 26 | 9.340 | 22851.72 | 21736.41 | 1115.31 | 0.00 |
| **Totals** | | 594144.72 | 222887.28 | 371257.44 | |

09/25/2006 12:53                    Page 2 of 2

After Recording, Return To:

When recorded return to :
**Richmond Monroe Group**
82 Jim Linegar LN
Branson West, MO. 65737

RICHARD T. MAUGHAN
DAVIS COUNTY, UTAH RECORDER
11/16/2015 12:37:00 PM
FEE $14.00 Pgs: 3
DEP eCASH  REC'D FOR HALLIDAY & WATKINS P

---

Space Above This Line For Recorder's Use

Case No:             -                    Control Number:

Prepared by:         **Carolyn Warren**   Caliber Document ID#

MERS MIn #:

Parcel ID:

## NOTICE OF ASSIGNMENT OF BENEFICIAL INTEREST

The undersigned hereby gives notice that it assigned and transferred all of its rights, title, and interest under the trust deed described below, together with all of the indebtedness secured thereby, to _**See Attached Exhibit " B "**_ whose address is _____ .

The trust deed was executed by **JOHN F. LAUTI and HEATHER DAWN LAUTI, HUSBAND AND WIFE AS JOINT TENANTS** as trustor, in which **HOUSEHOLD FINANCE CORPORATION III** was the named beneficiary, **FIRST AMERICAN TITLE INSURANCE AGENCY** was the named trustee, and it was filed for record 9/28/2006, with recorder's entry number **2205880**, in Book **4127** , Page **1264, DAVIS** County, Utah. This Notice of Assignment of Beneficial Interest affects the property located in **DAVIS** County, State of Utah, and is described more specifically as follows.

Legal Description:    **SEE ATTACHED 'EXHIBIT A'**
*Property Address : 1069 E Arlington Way, Bountiful, Utah 84010*

Dated this **8th** day of **April** of **2015**

County of  Oklahoma )

                        :SS

State of Oklahoma )

**U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF8 MASTER PARTICIPATION TRUST, BY CALIBER HOME LOANS, INC., AS ITS ATTORNEY IN FACT**

By:

Printed Name    **Roy Lacey**

Title:          **Authorized Signatory**

On **April 8, 2015, Roy Lacey, a(n) Authorized Signatory** of **U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF8 MASTER PARTICIPATION TRUST, BY CALIBER HOME LOANS, INC., AS ITS ATTORNEY IN FACT** appeared before me and acknowledge that he/she executed the foregoing instrument.

Notary Name:    **Hailey Woodley**          My Commission Expires:    **6/1/2016**



## EXHIBIT A

LOT 18, OAKRIDGE MANOR SUBDIVISION PLAT B, ACCORDING TO THE
OFFICIAL PLAT THEREOF ON FILE AND OF RECORD IN THE DAVIS
COUNTY RECORDER'S OFFICE.

**EXHIBIT B**

Assignee: Christiana Trust, a division of Wilmington Savings Fund Society, FSB, as indenture trustee, for the CSMC 2014-RPL3 Trust, Mortgage-Backed Notes, Series 2014-RPL3
C/O Select Portfolio Servicing, Inc.
3815 South West Temple
Salt Lake City, UT 84115

RICHARD T. MAUGHAN
DAVIS COUNTY, UTAH RECORDER
04/27/2015 01:41 PM
FEE $16.00 Pgs: 2
DEP RT REC'D FOR TD SERVICE COMPAN
Y

When Recorded Mail To:
T.D. Service Company
LR Department (Cust# 673)
4000 W Metropolitan Dr., Ste. 400
Orange, CA 92868

_____
Space Above This Line For Recorder's Use

Case No:              -
Prepared by:          Carolyn Warren
MERS MIn #:
Parcel ID:

### NOTICE OF ASSIGNMENT OF BENEFICIAL INTEREST

The undersigned hereby gives notice that it assigned and transferred all of its rights, title, and interest under the trust deed described below, together with all of the indebtedness secured thereby, to **U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF8 MASTER PARTICIPATION TRUST** whose address is **13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134** .

The trust deed was executed by **JOHN F. LAUTI and HEATHER DAWN LAUTI, HUSBAND AND WIFE AS JOINT TENANTS** as trustor, in which **HOUSEHOLD FINANCE CORPORATION III** was the named beneficiary, **FIRST AMERICAN TITLE INSURANCE AGENCY** was the named trustee, and it was filed for record 9/28/2006, with recorder's entry number **2205880**, in Book **4127** , Page **1264**, DAVIS County, Utah. This Notice of Assignment of Beneficial Interest affects the property located in **DAVIS** County, State of Utah, and is described more specifically as follows.

Legal Description:     **SEE ATTACHED 'EXHIBIT A'**

Dated this 8th day of April of 2015

County of Oklahoma )
                     :SS
State of Oklahoma )

HOUSEHOLD FINANCE CORPORATION III, BY CALIBER HOME LOANS, INC., AS ITS ATTORNEY IN FACT

By: _____

Printed Name      **Roy Lacey**

Title:            **Authorized Signatory**

On April 8, 2015, Roy Lacey, a(n) **Authorized Signatory** of **HOUSEHOLD FINANCE CORPORATION III, BY CALIBER HOME LOANS, INC., AS ITS ATTORNEY IN FACT** appeared before me and acknowledge that he/she executed the foregoing instrument.

Notary Name:   Hailey Woosley

My Commission Expires:     **6/1/2016**

EXHIBIT A

LOT 18, OAKRIDGE MANOR SUBDIVISION PLAT B, ACCORDING TO THE
OFFICIAL PLAT THEREOF ON FILE AND OF RECORD IN THE DAVIS
COUNTY RECORDER'S OFFICE.

Recording Requested By:
RICHMOND MONROE GROUP

When Recorded Return To:

RICHMOND MONROE GROUP
PO BOX 458
KIMBERLING CITY, MO 65686

## CORPORATE ASSIGNMENT OF DEED OF TRUST
### "LAUTI"

**INVESTOR #: V01**
Assignment Prepared on: November 16th, 2015.

Assignor: U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF8 MASTER PARTICIPATION TRUST, BY CALIBER
HOME LOANS, INC., AS ITS ATTORNEY IN FACT at CALIBER HOME LOANS, INC. 13801 WIRELESS WAY,
OKLAHOMA CITY, OK 73134.
Assignee: CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS INDENTURE
TRUSTEE, FOR THE CSMC 2014-RPL3 TRUST, MORTGAGE-BACKED NOTES, SERIES 2014-RPL3  at C/O
SELECT PORTFOLIO SERVICING, INC. 3815 SOUTH WEST TEMPLE, SALT LAKE CITY, UT  84115.

Executed By: JOHN F. LAUTI AND HEATHER DAWN LAUTI HUSBAND AND WIFE AS JOINT TENANTS  To:
HOUSEHOLD FINANCE CORPORATION III
Date of Deed of Trust:  09/25/2006 Recorded:  09/28/2006  in Book/Reel/Liber: 4127 Page/Folio: 1264 as Instrument
No.: 2205880  In Davis County , State of Utah.

Assessor's/Tax ID No. 05-052-0018

Property Address:  1069 E ARLINGTON WAY, BOUNTIFUL, UT  84010

Legal:  LOT 18, OAKRIDGE MANOR SUBDIVISION PLAT B, ACCORDING TO THE OFFICIAL PLAT THEREOF ON
FILE AND OF RECORD IN THE DAVIS COUNTY RECORDER'S OFFICE.

TAX PARCEL NO. 05-052-0018

  KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and
other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is
hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust
having an original principal sum of $222,887.28 with interest, secured thereby, together with all moneys now owing
or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee,
the Assignor's interest under the Deed of Trust.

  TO HAVE AND TO HOLD the said Deed of Trust, and also the said property unto the said Assignee forever,
subject to the terms contained in said Deed of Trust. IN WITNESS WHEREOF, the assignor has executed these
presents the day and year first above written:

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF8 MASTER PARTICIPATION TRUST, BY CALIBER HOME
LOANS, INC., AS ITS ATTORNEY IN FACT
On ___11/18/2015___

By: _____
Stoner Wade, Authorized Signatory


STATE OF __Oklahoma____
COUNTY OF __Oklahoma____

On __11/18/2015__, before me, _____, a Notary Public in and for __Oklahoma____ in
the State of __Oklahoma____, personally appeared Stoner Wade, ___Authorized Signatory___, U.S. BANK
TRUST, N.A., AS TRUSTEE FOR LSF8 MASTER PARTICIPATION TRUST, BY CALIBER HOME LOANS, INC., AS
ITS ATTORNEY IN FACT, personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Notary Expires: 6/1/16

HANLEY WOOSLEY
NOTARY
# 12005161
EXP. 06/01/16
STATE OF OKLAHOMA
PUBLIC

(This area for notarial seal)

**BILL KOCH**

RICHARD T. MAUGHAN
DAVIS COUNTY, UTAH RECORDER
2/27/2018 8:25:00 AM
FEE $10.00 Pgs: 1
DEP eCASH REC'D FOR MERIDIAN ASSET SER

**UTAH**
COUNTY OF DAVIS

PREPARED BY: SELECT PORTFOLIO SERVICING, INC.
WHEN RECORDED MAIL TO:

_____
_____
_____
_____, PH.
_____

# ASSIGNMENT OF DEED OF TRUST

FOR VALUABLE CONSIDERATION, the receipt thereof is hereby acknowledged, **CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS INDENTURE TRUSTEE, FOR THE CSMC 2014-RPL3 TRUST, MORTGAGE-BACKED NOTES, SERIES 2014-RPL3**, located at C/O SELECT PORTFOLIO SERVICING, INC. 3217 S. DECKER LAKE DR., SALT LAKE CITY, UT 84119, Assignor, does hereby assign to **MTGLQ INVESTORS, L.P.** located at **6011 Connection Drive, Irving, Texas 75039**, _____, Assignee, its successors and assigns, all of Assignor's rights, title and interest accrued or to accrue under that certain Deed of Trust dated **SEPTEMBER 25, 2006** executed by **JOHN F. LAUTI AND HEATHER DAWN LAUTI, HUSBAND AND WIFE AS JOINT TENANTS**, Trustor, to **FIRST AMERICAN TITLE INSURANCE AGENCY**, Original Trustee, for the benefit of **HOUSEHOLD FINANCE CORPORATION III**, Original Beneficiary and recorded in Book 4127 at Page 1264 as Entry No. 2205880 in the County Recorder's records for **DAVIS** County, State of **UTAH** and covering real property situated in said county described as follows:

LEGAL DESCRIPTION: LOT 18, OAKRIDGE MANOR SUBDIVISION PLAT B, ACCORDING TO THE OFFICIAL PLAT THEREOF ON FILE AND OF RECORD IN THE DAVIS COUNTY RECORDER'S OFFICE. # 9-28-2006 ##

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed this **OCTOBER 12, 2017**.

**CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS INDENTURE TRUSTEE, FOR THE CSMC 2014-RPL3 TRUST, MORTGAGE-BACKED NOTES, SERIES 2014-RPL3, BY SELECT PORTFOLIO SERVICING, INC. ITS ATTORNEY IN FACT**

KIERSTEN BALCH, ASSISTANT VICE PRESIDENT

STATE OF IDAHO          COUNTY OF BONNEVILLE     ) ss.

On **OCTOBER 12, 2017**, before me, **CHRISTINA ROMINE**, personally appeared **KIERSTEN BALCH** known to me to be the **ASSISTANT VICE PRESIDENT** of the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

CHRISTINA ROMINE (COMMISSION EXP. 06/01/2022)
NOTARY PUBLIC

CHRISTINA ROMINE
NOTARY PUBLIC
STATE OF IDAHO

RICHARD T. MAUGHAN
DAVIS COUNTY, UTAH  RECORDER
8/6/2019 12:32:00 PM
FEE $40.00 Pgs: 2
DEP eCASH  REC'D FOR MERIDIAN ASSET SERVIC

**Prepared By:**
**Sangeetha Kulagod**
**SOURCEPOINT**
**2330 Commerce Park Drive, Suite 2**
**PALM BAY, FL - 32905 Phone: 8557636350**
**Return to:**

## ASSIGNMENT OF DEED OF TRUST

| **Name and Address of Assignor:** | **Name and Address of Assignee:** |
|---|---|
| MTGLQ Investors, L.P. | U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES IV TRUST |
| 2001 Ross Avenue Suite 2800 | 300 DELAWARE AVE. 9TH FL. |
| Dallas TX - 75201. | WILMINGTON DE - 19801. |

   FOR VALUE RECEIVED, the receipt and sufficiency of which is hereby acknowledged, the undersigned, **MTGLQ Investors, L.P.**, "Assignor", whose address is above, does hereby grant, sell, assign, transfer and convey to **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES IV TRUST**, "Assignee," whose address is above, all interest of the undersigned Assignor in and to the following described Deed of Trust dated **09/25/2006**

**Executed by (Mortgagor (s)): JOHN F. LAUTI AND HEATHER DAWN LAUTI, HUSBAND AND WIFE AS JOINT TENANTS.**

**Original Trustee: FIRST AMERICAN TITLE INSURANCE AGENCY**

**Original Beneficiary: HOUSEHOLD FINANCE CORPORATION III**

**Filed of Record:In Book 4127, Page 1264, Document/Instrument No. 2205880 in the Office of Auditor of DAVIS County, UT, on 09/28/2006**

**Property: 1069 E ARLINGTON WAY , BOUNTIFUL, UT - 84010.**

**Given:** to secure a certain Promissory Note in the amount of **$222,887.28** payable to Beneficiary.

Together with the note(s) and obligations therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust.

TO HAVE AND TO HOLD the same unto Assignee and unto its successors and assigns forever, subject only to the terms and conditions of the above-described Deed of Trust and Promissory Note.

Assignor is the present holder of the above-described Deed of Trust.

IN WITNESS WHEREOF, this assignment was executed by the undersigned Assignor on this the _____   JUL 1 6 2019

Legal Description : **LOT 18, OAKRIDGE MANOR SUBDIVISION PLAT B, ACCORDING TO THE OFFICIAL PLAT THEREOF
ON FILE AND OF RECORD IN THE DAVIS COUNTY RECORDER'S OFFICE.**

Witness my hand and seal the day and year first above written.                    MTGLQ Investors, L.P.

Erin Jemison
Title : Vice President

STATE OF   **Texas  COUNTY OF Dallas**
      This instrument was acknowledged before me on _____ **JUL 1 6 2019** _____ by **Erin
Jemison, Vice President** of **MTGLQ Investors, L.P.**, on behalf of said corporation.

Natalie Flowers
My Commission Expires
11/29/2022
ID No. 124227602

Notary Public:          Natalie Flowers
My commission expires :   **NOV 2 9 2022**

No title search was performed on the subject property by the preparer.  The preparer of this deed makes neither representation
as to the status of the title nor property use or any zoning regulations concerning described property herein conveyed nor any
matter except the validity of the form of this instrument.  Information herein was provided to preparer by Grantor/Grantee and
/or their agents; no boundary survey was made at the time of this conveyance.

## **CERTIFICATE OF SERVICE**

On February 23, 2022, I served the foregoing documents described as Amended Proof of Claim on the following individuals by electronic means through the Court's ECF program:

Lon Jenkins tr ecfmail@ch13ut.org, lneebling@ch13ut.org
Marji Hanson marji.hanson@utahbklaw.com, marjih@yahoo.com;r51045@notify.bestcase.com
United States Trustee USTPRegion19.SK.ECF@usdoj.gov

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

/s/ Lauren Simonton
Lauren Simonton

On February 23, 2022, I served the foregoing documents described as Amended Proof of Claim on the following individuals by depositing true copies thereof in the United States mail at Santa Ana, California enclosed in a sealed envelope, with postage paid, addressed as follows:

| DEBTOR | JOINT DEBTOR |
|---|---|
| John F. Lauti | Heather D. Lauti |
| 1069 Arlington Way | 1069 Arlington Way |
| Bountiful, UT 84010 | Bountiful, UT 84010 |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

/s/ Lauren Simonton
Lauren Simonton